WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
**In re**                                               :        **Chapter 11**
:
**FUSION CONNECT, INC.,** *et al.*,          :        **Case No. 19-11811 (SMB)**
:
**Debtors.**[1]                              :        **(Jointly Administered)**
:
---------------------------------------------------------------X

## NOTICE OF HEARING
## OF DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) APPROVING (A) BIDDING PROCEDURES AND (B) ASSUMPTION
## AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**")[2],

of Fusion Connect, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma, LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The principal executive office of the Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

105, 363, and 365 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"),

Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules

for the Southern District of New York (the "**Local Rules**") (i) approving the Bidding Procedures,

substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**; (ii) authorizing

the Debtors to designate a Stalking Horse Bidder and offer such Stalking Horse Bidder certain bid

protections; (iii) setting the deadline for potential bidders to submit a proposal to purchase the

Debtors' business, authorizing and scheduling an auction, and scheduling a hearing with respect

to the approval of a proposed sale transaction; (iv) authorizing and approving the form and manner

of notice of the sale of the Debtors' business, the Auction, and the Confirmation Hearing,

substantially in the form attached to the Bidding Procedures Order as **Exhibit 2**; (v) approving the

procedures set forth in the Bidding Procedures Order for the assumption and assignment of the

Debtors' executory contracts and unexpired leases and the determination of the amount necessary

to cure any defaults thereunder; (vi) authorizing and approving the form and manner of notice to

each relevant non-Debtor counterparty to an executory contract or unexpired lease regarding the

Debtors' potential assumption and assignment of certain executory contracts and unexpired leases

of the Debtors and of the Debtors' calculation of the Cure Costs, substantially in the form attached

to the Bidding Procedures Order as **Exhibit 3**; and (vii) granting related relief, all as more fully

set forth in the Motion, will be held before the Honorable Stuart M. Bernstein, United States

Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York,

Courtroom 723, One Bowling Green, New York New York, 10004 (the "**Bankruptcy Court**") on

**July 1, 2019 at 2:00 p.m. (Prevailing Eastern Time)** (the "**Hearing**"), or as soon thereafter as

counsel may be heard.

WEIL:\97061298\1\47019.0003

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, so as to be filed and received no later than **June 24, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated:  June 4, 2019
      New York, New York

          __/s/ Sunny Singh_____
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York  10153
          Telephone:  (212) 310-8000
          Facsimile:  (212) 310-8007
          Gary T. Holtzer
          Sunny Singh

          *Proposed Attorneys for Debtors*
          *and Debtors in Possession*

WEIL:\97061298\1\47019.0003

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re                                                       :      **Chapter 11**
                                                            :
**FUSION CONNECT, INC.,** *et al.,*                         :      **Case No. 19-11811 (SMB)**
                                                            :
              **Debtors.**[1]                               :      **(Jointly Administered)**
                                                            :
------------------------------------------------------------X

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER**
**(I) APPROVING (A) BIDDING PROCEDURES AND (B) ASSUMPTION**
**AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully

represent as follows in support of this motion (the "**Motion**"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568);  Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The principal executive office of the Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

## Preliminary Statement[2]

1.       Following several months of good faith and arm's length negotiations, on June 3, 2019, (the "**Commencement Date**"), the Debtors commenced these chapter 11 cases to implement a value-maximizing restructuring with the support of the Debtors' first lien lenders holding in excess of 66 $^2/_3$% in the aggregate of the Debtors' first lien debt (the "**First Lien Consenting Creditors**") on the terms set forth in that certain Restructuring Support Agreement, dated as of June 3, 2019 (the "**RSA**").

2.       The RSA contemplates (i) a debt-to-equity recapitalization transaction, whereby holders of First Lien Claims will receive 100% of the New Common Stock of reorganized Fusion (the "**Reorganization Transaction**") and (ii) a simultaneous postpetition marketing process in which the Debtors will solicit bids for the potential sale of all or a portion of their business pursuant to a chapter 11 plan of reorganization.  In the event that the Debtors receive a Qualified Bid for their business that provides a higher or better value to the Debtors' creditors than the Reorganization Transaction (such transaction, a "**Sale Transaction**") and otherwise satisfies the terms of the RSA, the RSA permits the consummation of a Sale Transaction in lieu of the Reorganization Transaction.

3.       In support of the Debtors' postpetition marketing and potential sale process (the "**Postpetition Marketing Process**"), the Debtors and their advisors have developed bidding and auction procedures for the orderly and value-maximizing marketing and sale of the Debtors' business (the "**Bidding Procedures**").  Under the Bidding Procedures, parties may submit bids for the purchase and sale of the Debtors' business in accordance with the Bidding Procedures.

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration and the Bidding Procedures, each as defined herein.

WEIL:\97027735\11\47019.0003

The Bidding Procedures are designed to promote a competitive and robust bidding process, and are intended to generate the greatest level of interest in the Debtors' business.

4.       The Bidding Procedures are also intended to provide the Debtors with flexibility to solicit proposals, negotiate transactions, hold an auction, and, subject to the terms of the RSA, proceed to consummate a potential Sale Transaction, all while protecting the due process rights of all interested parties and ensuring that there is a full and fair opportunity to review and consider proposed transactions.  The Debtors propose to establish the following key dates and deadlines for the sale process:

| Key Event | Deadline |
|---|---|
| Deadline to Submit Non-Binding Indications of Interest | **July 16, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Deadline to Submit Bids | **September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | **September 12, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Auction, if necessary, to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 | **September 13, 2019 at 10:00 a.m. (prevailing Eastern Time)** |
| Deadline to File Notice of (a) Successful Bid and Back-Up Bid and (b) Identity of Successful Bidder and Back-Up Bidder | **1 business day following conclusion of the Auction** |
| Deadline to File Objections to (a) Sale Transaction, (b) Cure Costs, and (c) Adequate Assurance of Future Performance | **September 23, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Confirmation Hearing | **October 1, 2019 at [_]:00 a/p.m. (prevailing Eastern Time)***<br><br>*Subject to the Court's availability |

5.       Given the exigencies of the Debtors' business operations and financial condition, as well as the fact that the Debtors' business is regulated by the Federal Communications Commission ("**FCC**") and public utility commissions, it is vital that the Debtors exit chapter 11 in an efficient manner.  Accordingly, the Debtors request approval of a

3

comprehensive set of procedures that will facilitate a potential Sale Transaction in a timely and efficient manner.

## Background

6.     On the Commencement Date, each Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

7.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**").

8.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Keith Soldan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, sworn to on the Commencement Date (the "**First Day Declaration**"), sworn and filed on the Commencement Date (ECF No. 2).

## Jurisdiction

9.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

WEIL:\97027735\11\47019.0003

### Relief Requested

10.     By this Motion, pursuant to sections 105(a), 363, and 365 of the
Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Rules 6004-1,
6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the
"**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of Asset Sales Established
and Adopted by the United States Bankruptcy Court for the Southern District of New York*
(the "**Sale Guidelines**"), the Debtors request entry of the "**Bidding Procedures Order**,"
substantially in the form attached hereto as **Exhibit A**:

    i.      authorizing and approving the Bidding Procedures substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**;

    ii.      authorizing the Debtors to designate a stalking horse bidder (a "**Stalking Horse Bidder**" and, such bid, a "**Stalking Horse Bid**") and offer each such Stalking Horse Bidder certain bid protections;

    iii.      setting the deadline for potential bidders to submit a proposal to purchase the Debtors' business (the "**Bid Deadline**"), authorizing and scheduling an auction (the "**Auction**"), and scheduling a hearing with respect to the approval of a proposed sale transaction (the "**Confirmation Hearing**");

    iv.      authorizing and approving the form and manner of notice of the sale of the Debtors' business, the Auction, and the Confirmation Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**");

    v.      approving the procedures set forth in the Bidding Procedures Order (the "**Assumption and Assignment Procedures**") for the assumption and assignment of the Debtors' executory contracts and unexpired leases (the "**Assigned Contracts**") and the determination of the amount necessary to cure any defaults thereunder (the "**Cure Costs**");

    vi.      authorizing and approving the form and manner of notice to each relevant non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contract Counterparties**") regarding the Debtors' potential assumption and assignment of certain executory contracts and unexpired leases of the Debtors and of the Debtors' calculation of the Cure Costs, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "**Cure Notice**"); and

vii.    granting related relief.

**Prepetition Marketing Process**

11.    In February 2019, it became apparent to the Debtors that their revenue and

cash flow generating capacity would not be sufficient to service their outstanding debt, comply

with their secured loan financial covenants, and maintain the liquidity necessary to operate their

business and preserve their long-term viability and enterprise value.  The Debtors, with the

assistance of Weil, Gotshal & Manges LLP ("**Weil**"), PJT Partners, Inc. ("**PJT**"), and

FTI Consulting, Inc. ("**FTI**") began developing a comprehensive plan to restructure the Debtors'

balance sheet.

12.    As described in the declaration of John Singh, a Partner in the

Restructuring and Special Situations Group at PJT, filed contemporaneously herewith in support

of this Motion (the "**Singh Declaration**"), in May 2019, the Debtors and their advisors

conducted a prepetition marketing and sale process (the "**Prepetition Marketing Process**").

PJT, on behalf of the Debtors, contacted over forty (40) potential investors, with the aim of

attracting multiple proposals to either (i) provide a preferred or common equity investment or (ii)

acquire the Debtors' business on a cash-free, debt-free basis.  In connection with this solicitation,

the Debtors and their advisors prepared, among other things, a confidential information

memorandum ("**CIM**") and an electronic data room to provide potential investors and bidders

with adequate information upon which to make a proposal.  During this process, sixteen (16)

interested investors executed confidentiality agreements and were granted access to the CIM,

which contains significant diligence and other confidential information about the Debtors'

business.  The deadline for interested investors to submit initial bids was May 21, 2019.

Although no formal indications of interest ("**IOIs**") were received, several of these parties

indicated ongoing interest, and the Debtors and their advisors have continued to engage in

6

discussions with these parties, coordinate discussions with the Debtors' management team, and provide access to the electronic dataroom.

13.     Following extensive deliberations with their advisors and the Restructuring Committee, the Debtors determined that entry into the RSA with the Consenting First Lien Lenders (as defined in the RSA) provided the best means of maximizing value to the Debtors' estates because the RSA contemplates a debt-to-equity transaction while preserving the Debtors' ability to simultaneously continue marketing their business to attract the highest or otherwise best offer.  Singh Decl. ¶ 12.

### Need for a Timely Sale Process

14.     The Debtors believe that the time periods set forth in the Bidding Procedures are reasonable and will provide parties with sufficient time and information to submit a bid for the Debtors' business.  In formulating the procedures and time periods set forth therein, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process.  The Bidding Procedures are designed to encourage all prospective bidders to submit bids at the outset of these chapter 11 cases to provide the highest or otherwise best available recoveries to the Debtors' stakeholders.  The milestones in the RSA permit the Debtors to conduct the sale and auction process while simultaneously ensuring that the Debtors have a viable path forward if they do not receive any Qualified Bids (as defined in the Bidding Procedures).

15.     The Debtors' formulation of the Bidding Procedures was also informed by the Prepetition Marketing Process.  Potential bidders have had, and will, in accordance with the Bidding Procedures, continue to have access to comprehensive information prepared by the Debtors and their advisors that is compiled in an electronic data room.  In light of the foregoing,

WEIL:\97027735\11\47019.0003

the Debtors have determined that pursuing the Bidding Procedures is in the best interests of the Debtors' estates, will establish whether and to what extent a market exists for the Debtors' business, and provides interested parties with sufficient opportunity to participate.

### The Bidding Procedures

A.    **Overview**

16.    The Bidding Procedures are designed to promote a competitive and robust sale process for the Debtors' business.  If approved, the Bidding Procedures will allow the Debtors to solicit and identify bids from potential bidders that constitute the highest or otherwise best offers for the Debtors' business on a timeline that is consistent with the Debtors' solicitation timeline.  The Debtors believe that the time periods set forth in the Bidding Procedures are reasonable and appropriate.  Under the proposed timeline, there will be approximately 99 days and 111 days, respectively, between the filing of this Motion and the Bid Deadline and between the filing of this Motion and the Sale Objection Deadline.

17.    The Bidding Procedures are attached to the Bidding Procedures Order and therefore are not restated herein in their entirety.  Certain of the key terms of the Bidding Procedures are highlighted below.  The Debtors will have the ability to alter the Bidding Procedures based upon the exigencies of a given situation if the Debtors determine, in their business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the UCC and the Secured Parties, that it is reasonable to do so.

a.    **Designation of Stalking Horse Bidder**.  The Debtors may, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, and in consultation with the UCC, designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder.  To the extent the Debtors, after receiving the prior written consent of the Secured Parties, designate a Stalking Horse Bidder, the Debtors shall promptly upon execution of a Stalking Horse Agreement, and in no event more than one (1) calendar day following such execution, file with the Bankruptcy Court, serve on the Objection Notice Parties, and cause to be published on the website maintained by the

8

Debtors' claims and noticing agent in these chapter 11 cases, located at the Debtors' claims agent's website at https://restructuring.primeclerk.com/fusion, a notice that contains information about the Stalking Horse Bidder, the Stalking Horse Bid, and attaches the proposed Stalking Horse Agreement (the "**Notice of Stalking Horse Bidder**").

b.    **Bid Deadline**.    A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than **September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"); provided, that the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and the Stalking Horse Bidder, if any.

c.    **Proposed Agreement**. Each Bid must include an executed agreement (the "**Proposed Agreement**") for the acquisition of all or some of the assets of the Debtors or newly issued equity interests of the reorganized Debtors pursuant to the Debtors' chapter 11 plan (the "**Plan**"), together with a redline comparing the Proposed Agreement to the form agreement distributed by the Debtors to Potential Bidders, which form shall be reasonably acceptable to the Secured Parties.

d.    **Form of Consideration**

1.    <u>Purchase Price</u>.  Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**"), which Purchase Price shall be paid in cash only or such other form of consideration acceptable to the Requisite First Lien Lenders in their sole discretion, with the exception for any Credit Bid.

2.    <u>Cash Requirements</u>.  Each Bid must provide cash consideration for the payment of any applicable Termination Payment in cash in full and cash in an amount not less than the Cash Consideration Amount (as defined in the RSA Term Sheet) or shall otherwise provide for an amount of cash or value acceptable to the Secured Parties in their sole discretion.  In furtherance of the foregoing requirement, any Credit Bid must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the Debtors' assets.

3.    <u>Assets / Business Purchased</u>.  Each Bid must, in the Proposed Agreement, clearly identify the particular assets/business the Potential Bidder seeks to acquire from the Debtors.  With respect to a Bid for acquiring the Debtors' U.S. Business and Canadian Business on a consolidated basis, the Bid must clearly state the allocation of the Purchase Price between the U.S. Business and the Canadian Business.

4.    <u>Assumed Liabilities</u>.  Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.

9

For the avoidance of doubt, a Qualified Bid may include a bid for less than all or substantially all of the Debtors' liabilities.

5.   <u>Credit Bid</u>.  Persons or entities holding a perfected security interest in the Debtors' assets may submit a credit bid (a "**Credit Bid**") on such assets, to the extent permitted by applicable law, any Bankruptcy Court orders and the documentation governing the Debtors' prepetition or postpetition secured credit facilities, and subject to any applicable limitations set forth in the Prepetition Intercreditor Agreements.

e.   **Good Faith Deposit**.  A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors in consultation with the Consultation Parties (the "**Escrow Agent**") pursuant to a customary and reasonable escrow agreement to be provided by the Debtors.  To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right, in consultation with the Consultation Parties, to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the enterprise value of the business to be purchased through the Bid, as implied by the Purchase Price.  If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

f.   **Financing Information**.

1.   A Qualified Bid must include:

a.   <u>Proof of Financial Ability to Perform</u>.  Each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a Sale Transaction including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' discretion in consultation with the Consultation Parties, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors or the Consultation Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such

10

Potential Bidder has the ability to consummate a Sale Transaction in a timely manner.

g.  **Selection of Qualified Bids**.  By no later than **September 12, 2019** (the "**Qualified Bid Deadline**"), the Debtors shall determine, in their reasonable business judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid.  The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

h.  **Auction**.  If the Debtors receive two or more Qualified Bids, the Debtors shall conduct the Auction on **September 13, 2019, beginning at 10:00 a.m. (prevailing Eastern Time) at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, or such other later date as may be determined by the Debtors in consultation with the Consultation Parties.** Only a Qualified Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith and in consultation with the Consultation Parties.  In addition, professionals and/or other representatives of the Debtors and the Consultation Parties shall be permitted to attend and observe the Auction.  Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

i.  **Auction Not Necessary**.  If no Qualified Bid (other than the Stalking Horse Bid, if any, which, for the avoidance of doubt, has been designated by the Debtors with the prior written consent of the Secured Parties and in consultation with the UCC) is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held.  The Debtors shall also publish such notice on the website of their claims and noticing agent, Prime Clerk LLC (https://cases.primeclerk.com/fusion).

j.  **Reservation of Rights**.  Except as otherwise set forth herein, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the UCC and the Secured Parties, to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order. All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline). All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis to

11

assert that the Debtors have violated these Bidding Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

**B.      Designation of Stalking Horse Bidder**

18.      The Debtors request authority, subject to the prior written consent of the Secured Parties, which may be withheld in their sole discretion and consultation rights of the UCC, as set forth in the Bidding Procedures and the Bidding Procedures Order, to (i) designate a Stalking Horse Bidder, (ii) enter into an investment agreement with the Stalking Horse Bidder (the "**Stalking Horse Agreement**"), and (iii) provide the Stalking Horse Bidder with Stalking Horse Bid Protections (as defined herein) where the Debtors determine, in the exercise of their reasonable business judgment, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, and in consultation with the UCC, that setting a floor for the Debtors' business is in the best interests of their estates and creditors.  Having the flexibility to designate a Stalking Horse Bidder will enhance the Debtors' ability to maximize value of the Debtors' business and, accordingly, is in the best interests of their estates.

19.      Specifically, the Debtors may (i) establish initial minimum overbid and subsequent bidding increment requirements, (ii) offer the Stalking Horse Bidder a break-up fee in an amount agreed to by the Debtors, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion (a "**Termination Payment**"), (iii) provide that, if the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price; and (iv) provide other appropriate and customary protections to the Stalking Horse Bidder that are reasonably acceptable to the Secured Parties (the Termination Payment and the other bid protections described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").

WEIL:\97027735\11\47019.0003

20.     Upon the designation of the Stalking Horse Bidder, the Debtors will file with the Court, serve on the Objection Notice Parties (as identified and defined in the Bidding Procedures Order), and cause to be published on the website maintained by Prime Clerk LLC, the Debtors' claims and noticing agent in these chapter 11 cases ("**Prime Clerk**"), located at https://restructuring.primeclerk.com/fusion (the "**Case Website**"), a notice that contains information about the Stalking Horse Bidder, the Stalking Horse Bid, and attaches the proposed Stalking Horse Agreement (the "**Notice of Stalking Horse Bidder**").  If the Stalking Horse Bidder has included as part of the applicable Stalking Horse Bid a Credit Bid of all or part of their claims for their collateral pursuant to section 363(k) of the Bankruptcy Code, such Credit Bid will also be described in the Notice of Stalking Horse Bidder.

21.     Parties in interest may file an objection to the designation of the Stalking Horse Bidder or any of the terms of the Stalking Horse Agreement, including to any of the Stalking Horse Bid Protections (each, a "**Stalking Horse Objection**") within seven (7) calendar days after service of the Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").  If a timely Stalking Horse Objection is filed and served in accordance with the Bidding Procedures, the proposed designation of a Stalking Horse Bidder and Stalking Horse Bid Protections provided for under such agreement will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, or by order of the Bankruptcy Court.  If no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Agreement in accordance with the Bidding Procedures, the Stalking Horse Bid Protections shall be deemed approved without further order of the Court upon the expiration of the Stalking Horse Objection Deadline.

13

22.    Given the Debtors' need to maximize value for creditors through a timely and efficient marketing and sale process, the ability to designate a Stalking Horse Bidder and offer such bidder Stalking Horse Bid Protections is justified, appropriate, and essential.

## Assumption and Assignment Procedures

23.    The Assumption and Assignment Procedures set forth in the Bidding Procedures Order will, among other things, govern the Debtors' provision of notice to all Contract Counterparties of Cure Costs in the event the Debtors decide to transfer the Assigned Contracts in connection with a Sale Transaction.  The Debtors will file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties at least ten (10) days before the Sale Objection Deadline.

24.    Objections to the Cure Costs set forth on the Cure Notice (a "**Cure Objection**") and provision of adequate assurance of future performance (an "**Adequate Assurance Objection**") must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served in accordance with General Order M-399 no later than the Sale Objection Deadline, and served upon the Objection Notice Parties.

14

**Approval of the Relief Requested Is Warranted and in
the Best Interests of the Debtors and Their Economic Stakeholders**

A.    **The Bidding Procedures are Fair and Reasonable**

25.    The Bidding Procedures are designed to promote the paramount goal of any proposed sale of property of a debtor's estate:  maximizing the value of sale proceeds received by the estate. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid protections "are important tools to encourage bidding and to maximize the value of the debtor's assets"), *appeal dismissed* 3 F. 3d 49 (2d Cir. 1993); *see also In re Metaldyne Corp.,* 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are granted when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer").  Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate. *See In re Integrated Res. Inc.*, 147 B.R. at 659 (observing that sale procedures "encourage bidding" and "maximize the value of the debtor's assets").

26.    The Bidding Procedures provide for an orderly, uniform, and competitive process through which interested parties may submit offers to purchase the Debtors' business.  The Debtors, with the assistance of their advisors, have structured the Bidding Procedures to promote active bidding by interested parties and to reach the highest or otherwise best offer reasonably available for the Debtors' business.  Additionally, the Bidding Procedures will allow the Debtors to conduct the Auction, if necessary, in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to timely consummate a Sale Transaction.  The Bidding Procedures provide the Debtors with an adequate opportunity to consider competing bids and to select the highest or otherwise best offers for the

15

potential completion of a Sale Transaction, while comparing such competing bids against the value of a Reorganization Transaction.

27.     Moreover, an orderly and expeditious sale process is critical to preserve and realize the Debtors' going concern value and maximize recoveries for the Debtors' stakeholders.  In formulating the Bidding Procedures, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process in parallel with a solicitation process.  The Bidding Procedures provide for the marketing of the Debtors' business and for the consummation of a Sale Transaction, to the extent such Sale Transaction represents a higher or better value than the Reorganization Transaction.

28.     Courts in this and other districts have approved procedures substantially similar to the proposed Bidding Procedures.  *See, e.g., In re Ditech Holding Corp.,* Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Apr. 23, 2019) (ECF No. 456); *In re Waypoint Leasing Holdings Ltd.*, Case No. 18-13648 (SMB) (Bankr. S.D.N.Y. Dec. 21, 2018) (ECF No. 159); *In re Sears Holdings Corp.,* Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 19, 2018) (ECF No. 816); *In re Cent. Grocers, Inc.* Case No. 17-10993 (LSS) (Bankr. D. Del. June 2, 2017) (ECF No. 338); *In re Angelica Corp.*, Case No. 17-10870 (JLG) (Bankr. S.D.N.Y. Apr. 28, 2017) (ECF No. 137); and *In re Aéropostale, Inc.*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. Jul. 29, 2016) (ECF No. 527).  Accordingly, the Bidding Procedures should be approved.

**B.     The Stalking Horse Bid Protections are Reasonable and Appropriate**

29.     The Bidding Procedures allow the Debtors to provide certain Stalking Horse Bid Protections for a designated Stalking Horse Bidder, such as the initial minimum overbid requirement, the subsequent bidding increments, and the Termination Payment.  Bidding incentives such as these Stalking Horse Bid Protections have become commonplace in

16

connection with sales under chapter 11.  Moreover, approval of break-up fees as administrative expense claims as a form of bidder protections in connection with a sale has become a recognized practice in chapter 11 cases because it enables a debtor to ensure a sale to a contractually committed buyer at a price the debtor believes is fair, while providing the debtor with the potential of obtaining an enhanced recovery through an auction process.

30.    Bankruptcy courts in this District analyze the appropriateness of bidding incentives such as the Stalking Horse Bid Protections under the "business judgment rule." Specifically, courts in this District consider whether:  (a) the relationship of the parties who negotiated the break-up fee was tainted by self-dealing or manipulation, (b) the fee encourages, rather than hampers, bidding, and (c) the amount of the fee is unreasonable relative to the proposed purchase price.  *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 465 (Bankr. S.D.N.Y 2014) (citing *In re Metaldyne Corp.,* 409 B.R. at 670); *see also In re Integrated Res., Inc.*, 147 B.R. at 657–58 (holding that in evaluating bid protections, courts should employ the business judgment rule, which proscribes judicial second-guessing of the corporate debtor's actions taken in good faith absent self-dealing and in the exercise of honest judgment).

31.    First, the Stalking Horse Bid Protections will only be provided after good faith, arm's length negotiations with the Debtors who are acting in the interest of their estates, consistent with their fiduciary duties.  Parties in interest will be given notice and an opportunity to object if they do not believe that the Stalking Horse Bid Protections are in the best interests of the Debtors' estates.

32.    Second, the Debtors will only provide Stalking Horse Bid Protections if it will promote the interests of the Debtors' estates to maximize value and after consultation with the Consultation Parties.  The Termination Payment, will promote more competitive bidding for

17

the Debtors' business by inducing the Stalking Horse Bidder to hold its offer open as a minimum

bid on which other bidders and the Debtors can rely.  In doing so, any Stalking Horse Bidder will

help lay the foundation for the Debtors' sale process and will serve as a catalyst for other

Qualified Bids.  Accordingly, the Termination Payment is appropriate and any Stalking Horse

Bidder is entitled to be compensated for the risk it is assuming and the substantial value it is

conferring on the Debtors' estates.

33.      Third, the Stalking Horse Bid Protections are reasonable in view of the

substantial benefits the Debtors would receive from having a Stalking Horse Bid serve as a floor

for potential bidders, which would confirm that the Debtors receive the highest and best offer for

their business.  Moreover, a Stalking Horse Bid will provide the Debtors with an opportunity to

move forward with a Sale Transaction that has a high likelihood of consummation with a

contractually committed party at a fair and reasonable purchase price.  Accordingly, the Stalking

Horse Bid Protections will not deter bidding and are reasonable, and their availability to the

Debtors will enable the Debtors to maximize the value of their estates.

### C.      Assumption and Assignment of Assigned Contracts Should be Approved

34.      Section 365(a) of the Bankruptcy Code provides that a debtor in

possession "subject to the court's approval, may assume or reject any executory contract or

unexpired lease of the debtor."  11 U.S.C. § 365(a).  Upon finding that a debtor has exercised its

sound business judgment in determining to assume an executory contract or unexpired lease,

courts will approve the assumption under section 365(a) of the Bankruptcy Code.  *See Nostas*

*Assocs. v. Costich* (*In re Klein Sleep Prods., Inc.*), 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures*

*Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.*), 4 F.3d 1095, 1099 (2d Cir.

1993).  The assumption of the Assigned Contracts in connection with a Sale Transaction is an

exercise of the Debtors' sound business judgment because the Assigned Contracts are necessary

18

to operate the Debtors' business and, as such, are essential to obtaining the highest or otherwise best offer for the Debtors' business. Moreover, the Assigned Contracts will be assumed and assigned in accordance with the Assumption and Assignment Procedures approved by the Court pursuant to the Bidding Procedures Order, which will be reviewed by the Debtors' key stakeholders. Accordingly, the Debtors' assumption of the Assigned Contracts is an exercise of sound business judgment and should be approved.

35.     The consummation of a Sale Transaction, which will involve the assignment of the Assigned Contracts, will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assigned Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. As set forth above, the Debtors propose to file with the Court and serve on each Contract Counterparty, the Cure Notice indicating the Debtors' calculation of the Cure Cost for each such contract. The Contract Counterparties will have the opportunity to file objections to the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder, including the proposed Cure Costs.

36.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2)(B). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440

19

(Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

37.    As set forth in the Bidding Procedures, for a bid to qualify as a "Qualified Bid," a Potential Bidder must include with its bid Adequate Assurance Information regarding its ability (and the ability of its designated assignee, if applicable) to perform under the Assigned Contracts.    The Debtors will provide Adequate Assurance Information to all counterparties to the Assigned Contracts and counterparties will have an opportunity to file an Adequate Assurance Objection in advance of the Confirmation Hearing.    Based on the foregoing, the Debtors' assumption and assignment of the Assigned Contracts satisfy the requirements under section 365 of the Bankruptcy Code and should be approved.

38.    In addition, to facilitate the assumption and assignment of the Assigned Contracts, the Debtors further request that the Court find that all anti-assignment provisions in the Assigned Contracts, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract or lease, to be unenforceable under section 365(f) of the Bankruptcy Code.[3]

---

[3]    Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract

## Notice

39.      Notice of this Motion has been provided to (a) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn:    Richard Morrissey, Esq. and Susan Arbeit, Esq.) (the "**U.S. Trustee**"); (b) the Debtors' forty (40) largest unsecured creditors on a consolidated basis; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of New York; (e) counsel to the First Lien Ad Hoc Group, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible, Esq. and Adam L. Shpeen, Esq.); (f) counsel to the Ad Hoc Group of Tranche A Term Loan / Revolving Lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attn: Sandeep Qusba, Esq., Soogy Lee, Esq. and Edward R. Linden, Esq.); (g) counsel to the Second Lien Lenders, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn: Charles A. Dale, Esq. and Jon M. English, Esq.); (h) counsel to Wilmington Trust, N.A., as DIP Agent, Prepetition Super Senior Agent, and Prepetition First Lien Agent, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602 (Attn: Michael D. Messersmith, Esq. and Sarah Gryll, Esq.); (i) GLAS Americas LLC and GLAS USA LLC, as Prepetition Second Lien Successor Agent, 3 Second Street, Suite 206, Jersey City, NJ 07311 (Attn: Michael Amato); (j) the Banks; (k) the Securities and Exchange Commission; (l) the Federal Communications Commission; and (m) all entities known or reasonably believed to have

---

or lease, the trustee may assign such contract or lease[.]"   11 U.S.C. § 365(f)(1).   Section 365(f)(3) further provides that, "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

WEIL:\97027735\11\47019.0003

asserted any lien, claim, encumbrance, or other interest in the Debtors' assets (collectively, the "**Notice Parties**"). The Debtors respectfully submit that no further notice is required.

40.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: June 4, 2019
      New York, New York

                                     /s/ Sunny Singh
                                     WEIL, GOTSHAL & MANGES LLP
                                     767 Fifth Avenue
                                     New York, New York  10153
                                     Telephone:  (212) 310-8000
                                     Facsimile:  (212) 310-8007
                                     Gary T. Holtzer
                                     Sunny Singh

                                     *Proposed Attorneys for Debtors and*
                                     *Debtors in Possession*

WEIL:\97027735\11\47019.0003

## **Exhibit A**

**Bidding Procedures Order**

WEIL:\97027735\11\47019.0003

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                              :
In re                                         :    **Chapter 11**
                                              :
**FUSION CONNECT, INC.**, *et al.*,           :    **Case No. 19-11811 (SMB)**
                                              :
        **Debtors.**[1]                       :    **(Jointly Administered)**
                                              :
-------------------------------------------------------------X

### ORDER (I) APPROVING (A) BIDDING PROCEDURES AND (B) ASSUMPTION AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF

Upon the motion, dated June 4, 2019 (ECF No. [___]) (the "**Motion**"),[2] of Fusion

Connect, Inc. and its debtor subsidiaries, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, and 365

of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004,

6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"), and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern

District of New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of*

*Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern*

*District of New York* (the "**Sale Guidelines**"), for entry of an order (i) approving the Bidding

Procedures, substantially in the form attached hereto as **Exhibit 1**; (ii) authorizing the Debtors to

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corp. (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568);  Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The chief executive office of the Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.

designate a stalking horse bidder (a "**Stalking Horse Bidder**" and such bid, a "**Stalking Horse Bid**") and offer such Stalking Horse Bidder certain bid protections; (iii) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' business (the "**Bid Deadline**"), authorizing and scheduling an auction (the "**Auction**"), and scheduling a hearing with respect to the approval of a proposed sale transaction (the "**Confirmation Hearing**"); (iv) authorizing and approving the form and manner of notice of the sale of the Debtors' business, the Auction, and the Confirmation Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**"); (v) approving the procedures set forth in the Bidding Procedures Order (the "**Assumption and Assignment Procedures**") for the assumption and assignment of the Debtors' executory contracts and unexpired leases (the "**Assigned Contracts**") and the determination of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving the form and manner of notice to each relevant non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contract Counterparties**") regarding the Debtors' potential assumption and assignment of certain executory contracts and unexpired leases of the Debtors and of the Debtors' calculation of the Cure Costs, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "**Cure Notice**"); and (vii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein as set forth in the affidavit of service filed with respect thereto (ECF No. __); and such notice

2

having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and the Singh Declaration filed contemporaneously therewith; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    <u>Jurisdiction and Venue</u>.    Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

B.    <u>Statutory and Legal Predicates</u>.    The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, Local Rules 6004-1, 6005-1, and 6006-1, and the Sale Guidelines.

C.    <u>Bidding Procedures</u>.    The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are fair, reasonable, and appropriate.  The Bidding Procedures are reasonably designed to promote a

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

competitive and robust bidding process to generate the greatest level of interest in the Debtors'

business resulting in the highest or otherwise best offer.  The Bidding Procedures comply with the

requirements of Local Rule 6004-1.

       D.     <u>Designation of Stalking Horse Bid</u>.  The Debtors have articulated good and

sufficient business reasons for the Court to authorize the Debtors to designate a Stalking Horse

Bidder and enter into a Stalking Horse Agreement in accordance with the Bidding Procedures.

       E.     <u>Stalking Horse Bid Protections</u>.  The Debtors have articulated good and

sufficient business reasons for the Court to authorize the Debtors to offer Stalking Horse Bid

Protections in accordance with the Bidding Procedures.

       F.     <u>Assumption and Assignment Procedures</u>.  The Debtors have articulated

good and sufficient business reasons for the Court to approve the Assumption and Assignment

Procedures.  The Assumption and Assignment Procedures, including the form of Sale Notice

attached hereto as **Exhibit 2** and the form Cure Notice attached hereto as **Exhibit 3**, are fair,

reasonable, and appropriate.  The Assumption and Assignment Procedures provide an adequate

opportunity for all Contract Counterparties to raise any objections to the proposed assumption and

assignment or to the proposed Cure Costs.  The Assumption and Assignment Procedures comply

with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

       G.     <u>Cure Notice</u>.  The Cure Notice, the form of which is attached hereto as

**Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely

and proper notice of the Assumption and Assignment Procedures, as well as any and all objection

deadlines related thereto, and no other or further notice shall be required for the Motion and the

procedures described therein, except as expressly required herein.

WEIL:\97049902\5\47019.0003

H.     <u>Notice</u>.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto. No further notice is required.

I.     <u>Relief is Warranted</u>.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     The Motion is granted as set forth herein.

2.     All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

**The Bidding Procedures**

3.     The Bidding Procedures, attached hereto as **<u>Exhibit 1</u>**, are hereby approved.

4.     The Bidding Procedures are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Debtors' business and the Auction.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

5.     The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and all parties in interest.

5

6.      The Debtors are authorized to take all reasonable actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Order and the Bidding Procedures.

### *Designation of a Stalking Horse Bidder*

7.      The Debtors are authorized to, in the exercise of their reasonable business judgment and with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, and in consultation with the UCC, designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement for the sale of their business, in accordance with the terms of this Order and the Bidding Procedures.

8.      Subject to the terms of this Order and the Bidding Procedures, the Debtors are authorized to (i) establish initial minimum overbid and subsequent bidding increment requirements, (ii) offer the Stalking Horse Bidder a break-up fee in an amount agreed to by the Debtors with the prior written consent of the Secured Parties, which may be withheld in their sole discretion (a "**Termination Payment**"), (iii) provide that, if the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price, and (iv) provide other appropriate and customary protections to the Stalking Horse Bidder that are reasonably acceptable to the Secured Parties (the Termination Payment and the other bid protections described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").  The Stalking Horse Bid Protections shall be described in detail, including the amount and calculation of such Stalking Horse Bid Protections, in the Notice of Stalking Horse Bidder.

9.      To the extent the Debtors designate a Stalking Horse Bidder, the Debtors shall promptly upon the execution of a Stalking Horse Agreement (and in no event more than one

WEIL:\97049902\5\47019.0003

(1) calendar day following such execution) (i) file with the Bankruptcy Court, (ii) serve on the parties listed below and such other parties as the Court may order (collectively, the "**Objection Notice Parties**"), and (iii) cause to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at the Debtors' claims and noticing agent's website (https://restructuring.primeclerk.com/fusion), a notice containing information about the Stalking Horse Bidder with the proposed Stalking Horse Agreement attached thereto (the "**Notice of Stalking Horse Bidder**").  The Objection Notice Parties include:

    a. The Debtors, Fusion Connect, Inc., 420 Lexington Avenue, Suite 1718, New York, New York 10170 (Attn: James P. Prenetta, Jr. Executive vice President and General Counsel);

    b. Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. and Sunny Singh, Esq.);

    c. William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Richard Morrisey, Esq. and Susan Arbeit, Esq.);

    d. Counsel to the Second Lien Lenders, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn: Charles A Dale., Esq. and Jon M. English, Esq.);

    e. Counsel to Wilmington Trust, N.A., as the DIP Agent, Prepetition Super Senior Agent and Prepetition First Lien Agent, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois, 60602 (Attn: Michael D. Messersmith, Esq.);

    f. Counsel to the First Lien Ad Hoc Group, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible and Adam L. Shpeen);

    g. Counsel to the Ad Hoc Group of Tranche A/Revolving Lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attn: Sandeep Qusba, Esq., Soogy Lee, Esq. and Edward R. Linden, Esq.);

    h. GLAS Americas LLC and GLAS USA LLC, as Prepetition Second Lien Successor Agent, 3 Second Street, Suite 206, Jersey City, New Jersey 07311 (Attn: Michael Amato); and

    i. Counsel to any official committee of unsecured creditors appointed in these chapter 11 cases, if any.

10.     Objections to the designation of a Stalking Horse Bidder or to any of the terms included in the Stalking Horse Agreement, including to any of the Stalking Horse Bid Protections (a "**Stalking Horse Objection**") must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served in accordance with the *Proposed Order Implementing Certain Notice and Case Management Procedures* (ECF No. __) (the "**Case Management Order**").

11.     In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received within seven (7) calendar days after the filing of the relevant Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").

12.     If a timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement, the proposed designation of a Stalking Horse Bidder and the Stalking Horse Bid Protections provided for under that agreement will not be deemed approved until either (i) the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors, with the prior written consent of the Secured Parties, which may be withheld in their sold discretion or (ii) by entry of an order by the Court resolving such objection.

WEIL:\97049902\5\47019.0003

13.     If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bidding Procedures, the Court may enter an Order approving the Stalking Horse Bid Protections upon the expiration of the Stalking Horse Objection Deadline.

14.     For all purposes under the Bidding Procedures, a Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid.  Subject to the other provisions of the Bidding Procedures, in the event that a Stalking Horse Bid is the only Qualified Bid received by the Debtors by the Bid Deadline, the Stalking Horse Bidder may be deemed the Successful Bidder.

### *Objections to Sale Transaction*

15.     If the Debtors elect to proceed with a Sale Transaction in accordance with the RSA pursuant to the Debtors' chapter 11 plan of reorganization (the "**Plan**"), the Debtors will seek the entry of an order authorizing and approving, among other things, the Sale Transaction in which all or some of the assets of the Debtors or the Debtors' business will be sold to the applicable Successful Bidder at a hearing before the Bankruptcy Court to be held on **October 1, 2019**[4] (the "**Confirmation Hearing**"), which may be adjourned by the Debtors in accordance with the terms of the Bidding Procedures.  The objection deadline for any Sale Transaction to be approved at the Confirmation Hearing will be **September 23, 2019 at 4:00 p.m. (prevailing Eastern Time)**.

16.     Objections to the Sale Transaction (each, a "**Sale Objection**"), must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate

---

[4] The proposed date is subject to the Court's availability.

WEIL:\97049902\5\47019.0003

such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served in accordance with the Case Management Order by the applicable deadline set in accordance with this Order.  In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by the objection date specified in the notice; provided that, the Debtors may extend such deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment and in consultation with the Consultation Parties.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Confirmation Hearing.

17.     Each Successful Bidder shall appear at the Confirmation Hearing and be prepared, if necessary, to have a representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

18.     Any party who fails to timely file with the Court and serve on the Objection Notice Parties a Sale Objection may be forever barred from asserting any Sale Objection to the applicable sale, or to the consummation and performance of a Sale Transaction contemplated by a purchase or investment agreement between the Debtors and a Successful Bidder, including the transfer of the Debtors' business to a Successful Bidder, free and clear of all claims and interests

10

pursuant to section 1141(c) of the Bankruptcy Code.  Failure to object shall constitute consent for the purposes of section 1141(c) of the Bankruptcy Code.

### Sale Notice

19.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved, and no other or further notice of the Sale Transaction, the Auction, the Confirmation Hearing or the Sale Objection Deadline shall be required if the Debtors serve and publish such notice, in the manner provided in the Bidding Procedures and this Order. The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

### Assumption and Assignment Procedures

20.     The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

21.     The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby approved.

22.     The Cure Notice is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' intent to assume and assign the Assigned Contracts in connection with a Sale Transaction and constitutes adequate notice thereof, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of the

11

Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Order.

23.     The Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties at least ten (10) days before the objection deadline to the Sale Transaction, which shall be specified in the Cure Notice.  Service of the Cure Notice in accordance with this Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts.  As soon as reasonably practicable after filing the Cure Notice, the Debtors shall post a copy of the Cure Notice on the website for the chapter 11 cases maintained by the Debtors' claims and noticing agent.

24.     Objections, if any, to any proposed Cure Costs (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served in accordance with the Case Management Order.  In addition to being filed with the Court, any such responses

12

or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by the objection deadline specified in the Cure Notice.

25.    Any Cure Objection or Adequate Assurance Objection in respect of an Assigned Contract must be filed and served within ten (10) calendar days of service of notice of the Debtors' intention to assume such Assigned Contract.  If a timely Cure Objection or Adequate Assurance Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at a hearing scheduled prior to any scheduled closing of a Sale Transaction.

26.    To the extent the Debtors identify, at any time after the Cure Notice is served, additional contracts to be assumed and assigned to a Successful Bidder, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "**Supplemental Cure Notice**," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Exhibit 3**).

27.    If no timely Cure Objection is filed and served in respect of an Assigned Contract, the Cure Cost identified on the Cure Notice or a Supplemental Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract.  Any party failing to timely file a Cure Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, and a Successful Bidder.

28.    If no timely Adequate Assurance Objection is filed and served with respect to an Assigned Contract or a Successful Bidder, the Debtors will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code.

WEIL:\97049902\5\47019.0003

29.     Further, if no timely Cure Objection or Adequate Assurance Objection is filed and served with respect to an Assigned Contract, the relevant Contract Counterparty shall be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder.

30.     Absent entry of an order approving the Sale Transaction, the Assigned Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

31.     The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

**General Provisions**

32.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

33.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

14

WEIL:\97049902\5\47019.0003

34.     The Debtors are authorized to take all reasonable steps necessary or appropriate to carry out this Order.

35.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:    _____, 2019
          New York, New York

          _____
          THE HONORABLE STUART M. BERNSTEIN
          UNITED STATES BANKRUPTCY JUDGE

15

## Exhibit 1

### Bidding Procedures

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X
                                       :
In re                                 :             **Chapter 11**
                                       :
**FUSION CONNECT, INC.,** *et al.*,      :             **Case No. 19-11811 (SMB)**
                                         :
              **Debtors.**[1]         :             **(Jointly Administered)**
                                         :
------------------------------------------------------------- X

## BIDDING PROCEDURES

### Overview

On June 3, 2019, Fusion Connect, Inc. ("**Fusion**") and its debtor subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). These chapter 11 cases have been consolidated for procedural purposes under the lead case: *In re Fusion Connect, Inc., et al.*, Case No 19-11811 (SMB).

On [_], 2019, the Bankruptcy Court entered an order (ECF No. __) (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Bidding Procedures**") for the consideration of the highest or otherwise best bid for the Debtors' business on the terms and conditions set forth herein.[2]

The Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Debtors' domestic business (the "**U.S. Business**"), Canadian business (the "**Canadian Business**") or the U.S. Business and the Canadian Business on a consolidated basis, pursuant to a plan of reorganization (or pursuant to an order of the Bankruptcy Court approving such potential Sale Transaction); (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a potential Sale Transaction at the Confirmation Hearing (each as defined herein).

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corp. (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478). The Debtors' principal offices are located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]    All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.

## Reservation of Rights

**Except as otherwise set forth herein, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the UCC and the Secured Parties, to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order. All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline). All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis to assert that the Debtors have violated these Bid Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.**

## Fiduciary Out

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor or non-debtor affiliate to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

Notwithstanding anything to the contrary or any other provision in these Bidding Procedures, (a) if any Successful Bid provides sufficient cash consideration (the "**Cash Consideration Amount**") to satisfy in full (i) all claims arising under the DIP Credit Agreement ("**DIP Claims**") (and any claims arising under or in connection with the Prepetition Super Senior Credit Agreement to the extent such claims do not become DIP Claims); (ii) all administrative claims, priority tax claims, or other priority claims; (iii) all other secured claims exclusive of the claims arising under or in connection with the Prepetition First Lien Credit Agreement and the Prepetition Second Lien Credit Agreement; (iv) all claims arising under or in connection with the Prepetition First Lien Credit Agreement; (v) the expected costs associated with the wind-down of the Debtors' estates in accordance with a wind-down budget acceptable to the Requisite First Lien Lenders, then the consent rights of the Secured Parties provided for herein shall automatically be deemed consultation rights and (b) the Debtors shall not designate a Stalking Horse Bid or select a Successful Bid or Back-Up Bid without the prior written consent of the Secured Parties unless such Bid provides cash consideration greater than the Cash Consideration Amount.

## Summary of Important Dates

| Key Event | Deadline |
|---|---|
| Deadline to Submit Non-Binding Indications of Interest | **July 16, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Deadline to Submit Bids | **September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | **September 12, 2019 at 4:00 p.m. (prevailing Eastern Time)** |

2

| | |
|---|---|
| Auction, if necessary, to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 | **September 13, 2019 at 10:00 a.m. (prevailing Eastern Time)** |
| Deadline to File Notice of (a) Successful Bid and Back-Up Bid and (b) Identity of Successful Bidder and Back-Up Bidder | **1 business day following conclusion of the Auction** |
| Deadline to File Objections to (a) Sale Transaction, (b) Cure Costs, and (c) Adequate Assurance of Future Performance | **September 23, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Confirmation Hearing | **October 1, 2019 at [_]:00 a/p.m. (prevailing Eastern Time)\*** *\*Subject to the Court's availability, on such date the Debtors request* |

### Fusion Segments to be Acquired

The Debtors' operations are comprised of the U.S. Business and the Canadian Business. Parties may submit bids for (i) the U.S. Business only, (ii) the Canadian Business only, or (iii) the U.S. Business and the Canadian Business on a consolidated basis, in accordance with the terms and conditions set forth herein.

### Due Diligence

The Debtors have posted copies of all material documents related to the Debtors' assets to the Debtors' confidential electronic data room (the "**Data Room**"). To access the Data Room, a party must submit to the Debtors' advisors:

(A)    an executed confidentiality agreement in form and substance that is customary and reasonably satisfactory to the Debtors (unless such party is already a party to an existing customary confidentiality agreement with the Debtors that is reasonably acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)    sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine, in their reasonable business judgment, that the interested party (i) has the financial wherewithal to consummate a Sale Transaction, and (ii) intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors shall be a "Potential Bidder." As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; provided, that such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, in consultation with Greenhill (as defined herein), including that a Potential Bidder does not become a Qualified Bidder, these Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement or the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading. The Debtors may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment and in consultation with the Secured Parties, that certain information in the Data Room is sensitive, proprietary or otherwise not appropriate for disclosure to such Potential Bidder.

3

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a Sale Transaction. All such information provided to the Debtors shall be furnished upon receipt to Greenhill and Davis Polk (each as defined herein).

Until the Bid Deadline, and except as otherwise provided herein, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bidding Procedures) that the Debtors believe in their reasonable business judgment to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors' investment bankers, PJT Partners, Inc. (Attn: Brent Herlihy (herlihy@pjtpartners.com), Meera Satiani (satiani@pjtpartners.com), and Joel Hanson (hanson@pjtpartners.com)). In the event that any such additional information is in written form and provided to a Potential Bidder, the Debtors shall simultaneously provide such additional information to all other Potential Bidders, as well as the Stalking Horse Bidder, if any, and Greenhill and Davis Polk. Unless prohibited by law or otherwise determined by the Debtors in consultation with the Secured Parties, the availability of additional due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder, (ii) the Potential Bidder submits a Bid, (iii) these Bidding Procedures are terminated, (iv) the Potential Bidder breaches any obligations under its confidentiality agreement or (v) the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors, in the reasonable business judgment of the Debtors after consulting with Greenhill.

### Designation of Stalking Horse Bidder

Designation of Stalking Horse Bidder. The Debtors may, with the prior written consent of the Secured Parties (as defined herein), which may be withheld in their sole discretion, and in consultation with the UCC (as defined herein), designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder. To the extent the Debtors, after receiving the prior written consent of the Secured Parties, designate a Stalking Horse Bidder, the Debtors shall promptly upon execution of a Stalking Horse Agreement, and in no event more than one (1) calendar day following such execution, file with the Bankruptcy Court, serve on the Objection Notice Parties, and cause to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at Debtors' claims agent's website at https://cases.primeclerk.com/fusionconnect, a notice that contains information about the Stalking Horse Bidder, the Stalking Horse Bid, and attaches the proposed Stalking Horse Agreement (the "**Notice of Stalking Horse Bidder**").

Stalking Horse Bid Protections. The Debtors may, in consultation with the Secured Parties and the UCC, (i) establish initial overbid minimum and subsequent bidding increment requirements; (ii) offer the Stalking Horse Bidder a break-up fee in an amount agreed to by the Debtors, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion (a "**Termination Payment**"); (iii) provide that, if the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price for the assets; and (iv) provide other appropriate and customary protections to a Stalking Horse Bidder that are reasonably acceptable to the Secured Parties (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**"). The Stalking Horse Bid

WEIL:\97057305\1\47019.0003

Protections shall be described in detail, including the amount and calculation of such Stalking Horse Bid Protections, in the Notice of Stalking Horse Bidder.

Objections to Designation of Stalking Horse Bidder.  Any objections (each, a "**Stalking Horse Objection**") to the designation of a Stalking Horse Bidder, including any Stalking Horse Bid Protections pursuant to the terms and provisions of a Stalking Horse Agreement, must (i) be in writing; (ii) state the name and address of the objecting party (unless such party is the U.S. Trustee or a Consultation Party); and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties[3] within seven (7) calendar days after the filing of the Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed designation of a Stalking Horse Bidder and Stalking Horse Bid Protections will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, or by order of the Bankruptcy Court.

If no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Agreement in accordance with the Bidding Procedures, the Stalking Horse Bid Protections shall be deemed approved without further order of the Court upon the expiration of the Stalking Horse Objection Deadline.

For all purposes under the Bidding Procedures, a Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid.  Subject to the other provisions of these Bidding Procedures, in the event that a Stalking Horse Bid is the only Qualified Bid received by the Debtors by the Bid Deadline, the Stalking Horse Bidder may be deemed the Successful Bidder.

## **Non-Binding Indications of Interest**

Parties interested in purchasing the Debtors' businesses are encouraged to submit an indication of interest to the Debtors by **July 16, 2019 at 4:00 p.m. (prevailing Eastern Time)** in writing (each a "**Non-Binding Indication of Interest**").  Non-Binding Indications of Interest should be sent to the Debtors' investment bankers, PJT Partners, Inc. (Attn: Michael O'Hara (ohara@pjtpartners.com), John Singh

---

[3]    As defined in the Bidding Procedures Order, the Objection Notice Parties include: (a) The Debtors, Fusion Connect, Inc., 420 Lexington Avenue, Suite 1718, New York, New York 10170 (Attn: James Prenetta); (b) Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer; Sunny Singh; and Gaby Smith); (c) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Richard Morrissey, Esq. and Susan Arbeit, Esq.); (d) Counsel to Wilmington Trust, N.A., as the DIP Agent, Prepetition Bridge Agent and Prepetition First Lien Agent, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois, 60602 (Attn: Michael D. Messersmith); (e) Counsel to the Ad Hoc Group of First Lien Lenders, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible and Adam L. Shpeen); and (f) Counsel to an official committee of unsecured creditors appointed in these chapter 11 cases, if any.

WEIL:\97057305\1\47019.0003

(singhj@pjtpartners.com), Brent Herlihy (herlihy@pjtpartners.com), Meera Satiani (satiani@pjtpartners.com), and Joel Hanson (hanson@pjtpartners.com)).

Submitting a Non-Binding Indication of Interest by the deadline listed herein does not obligate the interested party to consummate a transaction, submit a formal bid or to participate in the bidding process, nor does it cause such party to be deemed to be a Potential Bidder. It also does not exempt such party from having to submit a Qualified Bid by the Bid Deadline (as defined below) or comply with these Bidding Procedures to participate in any subsequent Auction, all as described below. For the avoidance of doubt, a party that does not submit a Non-Binding Indication of Interest is not precluded from submitting a Qualified Bid by the Bid Deadline.

## Bid Deadline

A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than **September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"); provided, that the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and the Stalking Horse Bidder, if any. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.** Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the following Debtor representatives:

| Weil, Gotshal & Manges LLP | PJT Partners, Inc. |
|---|---|
| Fusionbids@weil.com | Michael O'Hara |
| Gary T. Holtzer | (Ohara@pjtpartners.com) |
| (Gary.Holtzer@weil.com) | John Singh |
| Howard Chatzinoff | (Singhj@pjtpartners.com) |
| (Howard.Chatzinoff@weil.com) | Brent Herlihy |
| Sunny Singh | (Herlihy@pjtpartners.com) |
| (Sunny.Singh@weil.com) | Meera Satiani |
| Naomi Munz | (Satiani@pjtpartners.com |
| (Naomi.Munz@weil.com) | Joel Hanson |
| Gaby Smith | (Hanson@pjtpartners.com) |
| (Gaby.Smith@weil.com) | |

## Consultation Parties

Throughout the bidding process, the Debtors and their advisors will regularly and timely consult with the (i) Davis Polk & Wardwell LLP ("**Davis Polk**") and Greenhill & Co., LLC ("**Greenhill**"), as advisors to the Ad Hoc Group of First Lien Lenders (the "**Secured Parties**"); and (ii) the advisors to the Official Committee of Unsecured Creditors, if any (the "**UCC**", together with the Secured Parties, the "**Consultation Parties**").

The Debtors shall promptly provide copies of all Bids (as defined below) and Non-Binding Indications of Interest received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after such Bid or Non-Binding Indications of Interest is received; provided, that the Consultation Parties must treat such Bids or Non-Binding Indications of Interest and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable Bidder.

WEIL:\97057305\1\47019.0003

For the avoidance of doubt, any consultation rights (but, for the avoidance of doubt, not any consent rights) afforded to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment.  Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not be affected by these Bidding Procedures or the Bidding Procedures Order.  All rights of the Secured Parties with respect to any potential Sale Transaction, the Restructuring Support Agreement, or the DIP Financing are fully reserved.

<u>**Form and Content of Qualified Bid**</u>

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "**Bid**").  To constitute a "**Qualified Bid**" a Bid must include, at a minimum, the following:[4]

      i.    <u>Proposed Agreement</u>.  Each Bid must include an executed agreement (the "**Proposed Agreement**") for the acquisition of all or some of the assets of the Debtors or newly issued equity interests of the reorganized Debtors pursuant to the Debtors' chapter 11 plan (the "**Plan**"), together with a redline comparing the Proposed Agreement to the form agreement distributed by the Debtors to Potential Bidders, which form shall be reasonably acceptable to the Secured Parties.

      ii.    <u>Purchase Price; Form of Consideration; Cash Requirements; Assumed Liabilities; Credit Bid</u>.  Each Bid must clearly set forth, as applicable:

          (a)    <u>Purchase Price</u>.   Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**"), which Purchase Price shall be paid in cash only or such other form of consideration acceptable to the Requisite First Lien Lenders in their sole discretion, with the exception for any Credit Bid (as defined herein).

          (b)    <u>Cash Requirements</u>.  Each Bid must provide cash consideration for the payment of any applicable Termination Payment in cash in full and cash in an amount not less than the Cash Consideration Amount (as defined in the RSA) or shall otherwise provide for an amount of cash or value acceptable to the Secured Parties in their sole discretion.  In furtherance of the foregoing requirement, any Credit Bid (as defined herein) must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the Debtors' assets.

          (c)    <u>Assets / Business Purchased</u>: Each Bid must, in the Proposed Agreement, clearly identify the particular assets/business the Potential Bidder seeks to acquire from the Debtors.  With respect to a Bid for acquiring the Debtors' U.S. Business and Canadian

---

[4]    Except as otherwise set forth herein, the Debtors may, in consultation with the Consultation Parties waive any of the following requirements for a Bid to constitute a Qualified Bid; <u>provided</u>, that any waiver of the requirements set forth in sections ii(a) or ii(b) below shall require the consent of the Secured Parties, which may be withheld in their sole discretion.

WEIL:\97057305\1\47019.0003

Business on a consolidated basis, the Bid must clearly state the allocation of Purchase Price between the U.S. Business and the Canadian Business.

(d)     Assumed Liabilities: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume. For the avoidance of doubt, a Qualified Bid may include a bid for less than all or substantially all of the Debtors' liabilities.

(e)     Credit Bid.  Persons or entities holding a perfected security interest in the Debtors' assets may submit a credit bid (a "**Credit Bid**") on such assets, to the extent permitted by applicable law, any Bankruptcy Court orders and the documentation governing the Debtors' prepetition or postpetition secured credit facilities, and subject to any applicable limitations set forth in the Prepetition Intercreditor Agreements.[5]

iii.     Unconditional Offer / Contingencies.  A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of a Sale Transaction.  A Bid may not be materially less favorable than the terms of the Stalking Horse Agreement, if any.

iv.     Proof of Financial Ability to Perform.  Each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a Sale Transaction including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' discretion in consultation with the Consultation Parties, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors or the Consultation Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate a Sale Transaction in a timely manner.

---

[5] "**Prepetition Intercreditor Agreements**" means that certain Super Senior Intercreditor Agreement, dated as of May 9, 2019 among Wilmington Trust, National Association, as super senior representative and Wilmington Trust, National Association, as first lien representative and that certain Intercreditor Agreement, dated as of May 4, 2018 among Wilmington Trust, National Association, as super senior representative and an additional first lien obligations representative, Wilmington Trust, National Association, as first lien representative and Wilmington Trust, National Association, as second lien representative.

v.    <u>Designation of Contracts and Leases</u>.  Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing a Sale Transaction; <u>provided</u>, that the Bid may allow for the Potential Bidder to remove executory contracts and unexpired leases from the list of contracts to be assumed and assigned any time prior to the closing of a Sale Transaction; <u>provided</u> <u>further</u>, that to the extent the Debtors identify any additional executory contracts or unexpired leases after the Bid is submitted, the Bid may allow for the Potential Bidder to add such executory contracts and unexpired leases to the list of contracts to be assumed and assigned any time from and after the Bid is submitted.  As soon as reasonably practicable, the Debtors shall provide notice to the applicable contract counterparties of such removal and/or addition of such counterparty's executory contracts and unexpired leases.

vi.   <u>Required Approvals</u>.  A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (ii) of the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iii) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors and the Secured Parties.  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel and counsel to the Secured Parties to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

vii.  <u>Disclosure of Identity and Corporate Authorization</u>.  Each Bid must (i) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transaction), and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bidding Procedures.

viii. <u>No Entitlement to Expense Reimbursement or Other Amounts</u>.  With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

ix.   <u>Disclosure of Connections</u>.  Each Bid must fully disclose any connections or agreements with the Debtors, any other known Potential Bidder and/or any officer or director of the Debtors.

9

x.      <u>Joint Bids</u>. The Debtors may approve, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, joint Bids in their reasonable discretion on a case-by-case basis.

xi.      <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

    a.      a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable assets prior to submitting its Bid;

    b.      a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

    c.      a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable assets;

    d.      a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

    e.      a statement that all proof of financial ability to consummate a Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

    f.      a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

xii.      a cash deposit in the amount of ten percent (10%) of the enterprise value of the business to be purchased through the Bid, as implied by the Purchase Price (a "**Good Faith Deposit**"), unless otherwise agreed to by the Debtors, in consultation with the Consultation Parties, and a Potential Bidder; <u>provided</u>, that a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid;

xiii.      the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

xiv.      a covenant to cooperate with the Debtors and the Consultation Parties to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

10

## Good Faith Deposit

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors in consultation with the Consultation Parties (the "Escrow Agent") pursuant to a customary and reasonable escrow agreement to be provided by the Debtors.  To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right, in consultation with the Consultation Parties, to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the enterprise value of the business to be purchased through the Bid, as implied by the Purchase Price.  If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

## Review of Bids; Designation of Qualified Bids

The Debtors, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their reasonable business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "**Qualified Bid**" and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "**Qualified Bidder**."

By no later than **September 12, 2019** (the "**Qualified Bid Deadline**"), the Debtors shall determine, in their reasonable business judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid.  The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Debtors may take into consideration the following non-exhaustive factors:

1.  the amount of the purchase price and Credit Bid, as applicable, set forth in the Bid (provided that for purposes of evaluating competing bids, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2.  the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

3.  the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

4.  any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

5.  the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6.  the impact on employees and employee claims against the Debtors;

WEIL:\97057305\1\47019.0003

7.    the impact on trade creditors; and

8.    any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

The Debtors reserve the right, after consulting with the Consultation Parties, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Without the written consent of the Debtors after consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; provided, that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

For the avoidance of doubt, in the event of a Bid by or on behalf of the DIP Lenders (as defined in the DIP Order)[6] or any of them, the DIP Agent (at the direction of the DIP Requisite Lenders (as defined in the DIP Order)) shall be allowed, to the maximum extent permitted by section 363(k) of the Bankruptcy Code, to "credit bid" up to the full amount of all of the Debtors' DIP Obligations (as defined in the DIP Order). In addition, any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates and the right under applicable nonbankruptcy law to credit bid claims secured by such liens, which, for the avoidance of doubt, includes the Prepetition Super Senior Lenders and the Prepetition First Lien Lenders (each as defined in the DIP Order), shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured.

### Failure to Receive Qualified Bids Other Than Stalking Horse Bid

If no Qualified Bid (other than the Stalking Horse Bid, if any, which, for the avoidance of doubt, has been designated by the Debtors with the prior written consent of the Secured Parties and in consultation with the UCC) is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held. The Debtors shall also publish such notice on the website of their claims and noticing agent, Prime Clerk LLC (https://cases.primeclerk.com/fusionconnect).

### Auction Procedures

If the Debtors receive two or more Qualified Bids, the Debtors shall conduct the Auction on **September 13, 2019, beginning at 10:00 a.m. (prevailing Eastern Time) at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, or such other later date as may be determined by the Debtors in consultation with the Consultation Parties**. Only a Qualified Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith and in consultation with the Consultation Parties. In addition, professionals and/or other representatives of the Debtors and the Consultation Parties shall be permitted to attend and observe the Auction. Each

---

[6]    The "**DIP Order**" means the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* (ECF No. _).

Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

The Debtors shall adopt rules for the Auction (the "**Auction Rules**"), which shall be reasonably acceptable to the Secured Parties, to promote a spirited and robust auction.  The Auction Rules shall provide that all bids in the Auction will be made and received on an open basis, and all other bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders.  Each Qualified Bidder will be permitted what the Debtors, in consultation with the Consultation Parties, reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction.  The Auction will be conducted openly and shall be transcribed or recorded.

The Auction Rules adopted by the Debtors, in consultation with the Consultation Parties, shall explicitly prohibit round-skipping as described herein.  To remain eligible to participate in the Auction for a particular asset or business, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such asset or business; provided, that the Debtors may, in consultation with the Consultation Parties, utilize Auction procedures other than the foregoing procedure for any round of bidding.  To the extent the Debtors conduct multiple auctions for different subgroupings of the Debtors' assets/businesses (each, a "**Sub-Auction**") at any Auction and a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of assets/businesses that may include specific assets/businesses which were the subject of an earlier Sub-Auction.

If no Qualified Bid exists for acquiring only the U.S. Business or only the Canadian Business, the Debtors shall conduct an Auction for the Debtors' U.S. Business and Canadian Business on a consolidated basis pursuant to the Auction Rules.  The Debtors may, in the exercise of their reasonable business judgment, in consultation with the UCC and with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, identify the highest or otherwise best Qualified Bid as the successful bid (a "**Successful Bid**" and the bidder submitting such bid, a "**Successful Bidder**"); provided, however, that the Debtors may identify a Successful Bid without the prior written consent of the Secured Parties if the Successful Bid contemplates cash consideration greater than the Cash Consideration Amount.  The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid as a back-up bid (a "**Back-Up Bid**" and the bidder submitting such bid, a "**Back-Up Bidder**").

If one or more Qualified Bid(s) exist for acquiring only the U.S. Business or only the Canadian Business, then the Debtors shall first conduct a Sub-Auction for each of these businesses that has at least one Qualified Bid pursuant to the Auctions Rules.  The Debtors may, in the exercise of their reasonable business judgment, in consultation with the UCC and with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "**Reserve Sub-Auction Bid**" and the bidder submitting such bid, a "**Reserve Sub-Auction Bidder**").  The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction as a back-up bid (each, a "**Back-Up Sub-Auction Bid**" and the bidder submitting such bid, a "**Back-Up Sub-Auction Bidder**").  After the designation of any

13

Reserve Sub-Auction Bid, the Debtors shall conduct an Auction for the Debtors' U.S. Business and Canadian Business on a consolidated basis pursuant to the Auction Rules. If, upon the completion of such Auction, the Debtors, in the exercise of their reasonable business judgment, based on the evaluation metrics provided herein, in consultation with the UCC and with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, determine that pursuing a Sale Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result a higher or otherwise better value of the Debtors' businesses than pursuing a Sale Transaction pursuant to the highest or otherwise best Bid received in the Auction of the Debtors' U.S. Business and Canadian Business on a consolidated basis, then the Debtors may, in the exercise of their reasonable business judgment, in consultation with the UCC and with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, declare the Reserve Sub-Auction Bid(s) as Successful Bid(s) (and the Reserve Sub-Auction Bidder(s) as Successful Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)). In the event that the Debtors, in the exercise of their reasonable business judgment, in consultation with the UCC and with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, pursue a Sale Transaction based on a Reserve Sub-Auction Bid the Debtors declared as the Successful Bid that contemplates the Successful Bidder's purchase of only the Debtors' Canadian Business, then the Debtors may reorganize around the U.S. Business pursuant to a plan of reorganization.

Within one (1) business day after the Auction, each Successful Bidder shall submit to the Debtors and the Secured Parties fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted. A Successful Bid may not be assigned to any party without the consent of the Debtors and in consultation with the Secured Parties.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors, in consultation with the Secured Parties, reserve the right to and may reject such Qualified Bid(s) if such Qualified Bid(s), in the Debtors' reasonable business judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Debtors and their estates.

### Post-Auction Process

Within one (1) business day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Bankruptcy Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

Within seven (7) business days after the Auction, the Debtors shall direct the Escrow Agent to return the deposit of any bidder, together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder. Within five (5) business days after the Back-Up Bid Expiration Date, the Debtors shall direct the Escrow Agent to return the deposit of each Back-Up Bidder, together with interest accrued thereon (if any). Upon the authorized return of any such deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

Each Successful Bidder's deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of a Sale Transaction.

In addition to the foregoing, the deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate a Sale Transaction according to these Bidding Procedures.

14

## Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Confirmation Hearing

Objections to the Sale Transaction (each, a "**Sale Objection**"), shall (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties (as defined in the in the Bidding Procedures Order) by **September 23, 2019 at 4:00 p.m.** (the "**Sale Objection Deadline**"); provided, that the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment and in consultation with the Consultation Parties. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Confirmation Hearing.

Each Successful Bidder shall appear at the Confirmation Hearing and be prepared to have a representative(s) testify in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed transaction.

Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Confirmation Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Sale Transaction contemplated by a purchase or investment agreement between the Debtors and each Successful Bidder, including the transfer of assets to such Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 1141(c) of the Bankruptcy Code.

For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in these Bidding Procedures shall, or shall be construed to, in any way amend, impair, prejudice, alter or otherwise modify the terms of any DIP Document or the rights of the DIP Agent or any DIP Lender thereunder (each as defined in the DIP Order).

## Consent to Jurisdiction and Authority as Condition to Bidding

All bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the

15

Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

16

**<u>Exhibit 2</u>**

**Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

                                   :

In re                              :            **Chapter 11**

                                   :

**FUSION CONNECT, INC.,** *et al.*,      :            **Case No. 19-11811 (SMB)**

                                   :

               **Debtors.**[1]     :            **(Jointly Administered)**

                                   :

----------------------------------------------------------------X

## NOTICE OF SALE, BIDDING
## PROCEDURES, AUCTION, AND CONFIRMATION HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

       On June 4, 2019, Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. [__]) (the "**Motion**") for the entry of (i) an order (the "**Bidding Procedures Order**")[2] (a) approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**; (ii) authorizing the Debtors to designate a stalking horse bidder ("**Stalking Horse Bidder**," and such bidder's bid, a "**Stalking Horse Bid**") and offer such bidder certain bid protections identified in the Motion (the "**Stalking Horse Bid Protections**"); (iii) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' business (the "**Bid Deadline**"), scheduling an auction (the "**Auction**"), and scheduling the hearing with respect to the approval of the sale (the "**Confirmation Hearing**"); (iv) authorizing and approving the form and manner of the Sale Notice; (v) authorizing and approving the Cure Notice to the Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corp. (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568);  Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The chief executive office of the Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable.  Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (vii) granting related relief.

On _____, 2019, the Bankruptcy Court entered the Bidding Procedures Order (ECF No. ____).

### Important Dates and Deadlines

- **Non-Binding Indication of Interest Deadline**. Any person or entity interested in participating in the Auction must submit a Non-Binding Indication of Interest on or **before July 16, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Non-Binding Indication of Interest Deadline**").

- **Bid Deadline**. Any person or entity interested in participating in the Auction must submit a Qualified Bid on or **before September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

- **Auction**. An Auction has been scheduled for **September 13, 2019 at 10:00 a.m. (prevailing Eastern Time)**.

- **Sale Objection Deadlines**. Objections to the Sale Transaction, including any objection to the sale of the Debtors' business free and clear of all claims and interests pursuant to section 1141(c) of the Bankruptcy Code must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties by no later than **September 23, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- *__Confirmation Hearing__*. A hearing to approve the Sale Transaction shall be held before the Bankruptcy Court before the Honorable Stuart M. Bernstein on **October 1, 2019 at [____] (prevailing Eastern Time)** (the "**Confirmation Hearing**").

### Additional Information

Any party interested in submitting a bid should contact the Debtors' investment banker, PJT Partners, Inc., 280 Park Avenue, New York, New York 10017 (Attn: Michael O'Hara (ohara@pjtpartners.com), John Singh (singhj@pjtpartners.com), Brent Herlihy (herlihy@pjtpartners.com), Meera Satiani (satiani@pjtpartners.com), and Joel Hanson (hanson@pjtpartners.com)).

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/fusion.

### Reservation of Rights

Except as otherwise set forth herein and in the Bidding Procedures, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the UCC and the Secured Parties, to modify the Bidding Procedures; waive terms and conditions set forth therein with respect to all Potential

Bidders; extend the deadlines set forth therein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth therein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with the Bidding Procedures and the Bidding Procedures Order. All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline). All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis to assert that the Debtors have violated the Bid Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTION, THE PROPOSED SALE TRANSACTION, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated  _____

                                    _____
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007
                                    Gary T. Holtzer
                                    Sunny Singh

                                    *Proposed Attorneys for Debtors and Debtors in Possession*

**Exhibit 3**

**Cure Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                              :
In re                                                         :        **Chapter 11**
                                                              :
**FUSION CONNECT, INC.,** *et al.*,                           :        **Case No. 19-11811 (SMB)**
                                                              :
                          **Debtors.**[1]                     :        **(Jointly Administered)**
                                                              :
--------------------------------------------------------------X

## NOTICE OF CURE COSTS AND POTENTIAL
## ASSUMPTION AND ASSIGNMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On June 4, 2019, Fusion Connect, Inc. and its debtor affiliates, , as debtors and debtors in
possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the
United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**")
a motion (ECF No. [__]) (the "**Motion**")[2] (a) approving the Bidding Procedures, substantially in the form attached to the Bidding
Procedures Order as **Exhibit 1**; (ii) authorizing the Debtors to designate a stalking horse bidder
("**Stalking Horse Bidder**," and such bidder's bid, a "**Stalking Horse Bid**") and offer such bidder
certain bid protections identified in the Motion (the "**Stalking Horse Bid Protections**");
(iii) setting the deadline for potential bidders to submit a proposal to purchase the Debtors'
business (the "**Bid Deadline**"), scheduling the auction (the "**Auction**"), and scheduling the hearing
with respect to the approval of the sale (the "**Confirmation Hearing**"); (iv) authorizing and
approving the form and manner of the Sale Notice; (v) authorizing and approving the Cure Notice
to the Contract Counterparties regarding the Debtors' potential assumption and assignment of the
Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults
thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
       number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS
       Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corp. (3066); Fusion MPHC Group, Inc.
       (1529); Fusion Cloud Company LLC (5568);  Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc.
       (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc.
       (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom
       of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion
       Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The chief executive office of the
       Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the
       Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable.  Any summary of the Bidding
       Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and
       conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and
       conditions, the actual terms and conditions shall control.

assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (vii) granting related relief.

Each of the Assigned Contracts that may be assumed and assigned in connection with a Sale Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

The inclusion of any contract or lease on **Exhibit A** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Notwithstanding the inclusion of any lease or contract on **Exhibit A**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease at any time prior to the consummation of a Sale Transaction.

## Objections

### A.  Cure Objections.

Any objection to the proposed assumption, assignment, or potential designation of an Assigned Contract identified on **Exhibit A**, the subject of which objection is the Debtors' proposed Cure Costs must:

(a)     be in writing;

(b)     state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

(c)     state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d)     conform to the Bankruptcy Rules and the Local Rules;

(e)     be filed with the Court together with proof of service either (i) electronically or (ii) conventionally, as noted below:

   (i)     *Electronic Filing*:  The filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov).

   (ii)    *Conventional Filing*:  The filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, One Bowling Green, New York, NY 10004; the hard copy of the response or

> objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF).

(iii)    *All filers:* Those filing electronically as well as those filing conventionally – must provide Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and

(f)    be served upon the Objection Notice Parties listed below so as to be received no later than [_____] **at 4:00 p.m. (prevailing Eastern Time)**:

i.    The Debtors, Fusion Connect, Inc., 420 Lexington Avenue, Suite 1718, New York, New York 10170 (Attn: James P. Prenetta, Jr. Executive vice President and General Counsel);

ii.    Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. and Sunny Singh, Esq.);

iii.    William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Richard Morrissey, Esq. and Susan Arbeit, Esq.);

iv.    Counsel to Wilmington Trust, N.A., as the DIP Agent, Prepetition Super Senior Agent and Prepetition First Lien Agent, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois, 60602 (Attn: Michael D. Messersmith, Esq.);

v.    Counsel to the First Lien Ad Hoc Group, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible and Adam L. Shpeen);

vi.    Counsel to the Ad Hoc Group of Tranche A/Revolving Lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attn: Sandeep Qusba, Esq., Soogy Lee, Esq. and Edward R. Linden, Esq.);

vii.    GLAS Americas LLC and GLAS USA LLC, as Prepetition Second Lien Successor Agent, 3 Second Street, Suite 206, Jersey City, NJ 07311 (Attn: Michael Amato); and

viii.    Counsel to an official committee of unsecured creditors appointed in these chapter 11 cases, if any.

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION,**

**THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE ASSIGNED CONTRACT.  THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE ASSIGNED CONTRACT UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B.  Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of any Assigned Contracts identified on **Exhibit A** to a Successful Bidder must be filed in accordance with the preceding paragraph by **[_____] at 4:00 p.m. (prevailing Eastern Time).**

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE ASSIGNED CONTRACT. THE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE ASSIGNED CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT OR ANY OTHER DOCUMENT.**

### Confirmation Hearing

The Debtors will seek to assume and assign the Assigned Contracts at a hearing to approve the Sale Transaction (the "**Confirmation Hearing**") that is scheduled to commence on **[_____] at [____] (prevailing Eastern Time)** before the Honorable Stuart M. Bernstein, in Room 723 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004.  Objections, if any, that cannot otherwise be resolved by the parties, will be heard at a hearing scheduled prior to any scheduled closing of the Sale Transaction, as determined by the Debtors in accordance with the Bidding Procedures Order.

**<u>Additional Information</u>**

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, located at https://restructuring.primeclerk.com/fusion.


Dated     _____


          _____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Proposed Attorneys for Debtors and Debtors in Possession*