UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                                  :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FUSION CONNECT, INC., *et al.*, | : | Case No. 19-11811 (SMB) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

---------------------------------------------------------------- X

## JOINT CHAPTER 11 PLAN
## OF FUSION CONNECT, INC., AND ITS SUBSIDIARY DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Gary T. Holtzer
Sunny Singh
Gaby Smith
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Counsel for Debtors
and Debtors in Possession*

Dated:    July 1, 2019
             New York, New York

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma, LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The Debtors' principal offices are located at 210 Interstate North Parkway, Suite 300, Atlanta, Georgia 30339.

# Table of Contents

Page

**ARTICLE I**   DEFINITIONS AND INTERPRETATION. ................................................................. 1
A.   Definitions. ................................................................................................................. 1
B.   Interpretation; Application of Definitions and Rules of Construction. ................................. 13
C.   Reference to Monetary Figures. ................................................................................... 14
D.   Controlling Document. ............................................................................................... 14
E.   Certain Consent Rights. .............................................................................................. 14

**ARTICLE II**   ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS. ................................ 14
2.1.   Administrative Expense Claims. ............................................................................ 14
2.2.   Fee Claims. ......................................................................................................... 14
2.3.   Priority Tax Claims. ............................................................................................. 15
2.4.   DIP Claims. ........................................................................................................ 15
2.5.   Restructuring Expenses. ....................................................................................... 16

**ARTICLE III**   CLASSIFICATION OF CLAIMS AND INTERESTS. ..................................... 16
3.1.   Classification in General. ..................................................................................... 16
3.2.   Summary of Classification. ................................................................................... 16
3.3.   Special Provision Governing Unimpaired Claims. ................................................... 17
3.4.   Elimination of Vacant Classes. ............................................................................. 17

**ARTICLE IV**   TREATMENT OF CLAIMS AND INTERESTS. ........................................... 17
4.1.   Priority Non-Tax Claims (Class 1) ......................................................................... 17
4.2.   Other Secured Claims (Class 2). ........................................................................... 18
4.3.   First Lien Claims (Class 3). ................................................................................... 18
4.4.   Second Lien Claims (Class 4). .............................................................................. 19
4.5.   General Unsecured Claims (Class 5) ...................................................................... 19
4.6.   Intercompany Claims (Class 6). ............................................................................ 20
4.7.   Intercompany Interests (Class 7). .......................................................................... 20
4.8.   Parent Equity Interests (Class 8). .......................................................................... 20
4.9.   Subordinated Securities Claims (Class 9) ............................................................... 21

**ARTICLE V**   MEANS FOR IMPLEMENTATION ............................................................. 21
5.1.   No Substantive Consolidation ............................................................................... 21
5.2.   Compromise and Settlement of Claims, Interests, and Controversies ......................... 21
5.3.   Sources of Consideration for Plan Distributions ...................................................... 22
5.4.   Sale Transaction. ................................................................................................. 22
5.5.   Reorganization Transaction. ................................................................................. 24
5.6.   FCC Licenses. ..................................................................................................... 26
5.7.   Employee Matters. ............................................................................................... 26
5.8.   Effectuating Documents; Further Transactions. ...................................................... 27
5.9.   Section 1145 Exemption. ...................................................................................... 28
5.10.   Cancellation of Existing Securities and Agreements. ............................................. 28

i

Table of Contents
(continued)

| | | |
|---|---|---:|
| 5.11. | Cancellation of Liens. | 30 |
| 5.12. | Subordination Agreements. | 30 |
| 5.13. | Nonconsensual Confirmation. | 30 |
| 5.14. | Closing of Chapter 11 Cases. | 30 |
| 5.15. | Notice of Effective Date. | 31 |
| 5.16. | Separability. | 31 |
| **ARTICLE VI** | **DISTRIBUTIONS.** | **31** |
| 6.1. | Distributions Generally. | 31 |
| 6.2. | Distribution Record Date. | 31 |
| 6.3. | Date of Distributions. | 31 |
| 6.4. | Disbursing Agent. | 32 |
| 6.5. | Rights and Powers of Disbursing Agent. | 32 |
| 6.6. | Expenses of Disbursing Agent. | 32 |
| 6.7. | No Postpetition Interest on Claims. | 32 |
| 6.8. | Delivery of Distributions. | 33 |
| 6.9. | Distributions after Effective Date. | 33 |
| 6.10. | Unclaimed Property. | 33 |
| 6.11. | Time Bar to Cash Payments. | 34 |
| 6.12. | Manner of Payment under Plan. | 34 |
| 6.13. | Satisfaction of Claims. | 34 |
| 6.14. | Fractional Stock and Notes. | 34 |
| 6.15. | Minimum Cash Distributions. | 34 |
| 6.16. | Setoffs and Recoupments. | 34 |
| 6.17. | Allocation of Distributions between Principal and Interest. | 35 |
| 6.18. | No Distribution in Excess of Amount of Allowed Claim. | 35 |
| 6.19. | Withholding and Reporting Requirements. | 35 |
| 6.20. | Hart-Scott-Rodino Antitrust Improvements Act. | 35 |
| **ARTICLE VII** | **PROCEDURES FOR DISPUTED CLAIMS.** | **36** |
| 7.1. | Objections to Claims. | 36 |
| 7.2. | Resolution of Disputed Claims. | 36 |
| 7.3. | Payments and Distributions with Respect to Disputed Claims. | 36 |
| 7.4. | Distributions after Allowance. | 36 |
| 7.5. | Disallowance of Claims. | 36 |
| 7.6. | Estimation of Claims. | 37 |
| 7.7. | No Distributions Pending Allowance. | 37 |
| 7.8. | Claim Resolution Procedures Cumulative. | 37 |
| 7.9. | Interest. | 37 |
| 7.10. | Insured Claims. | 37 |

WEIL:\97098143\1\47019.0003

Table of Contents
(continued)

**ARTICLE VIII**        EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ............. 37

    8.1.    General Treatment. .................................................................................. 37
    8.2.    Determination of Assumption Disputes and Deemed Consent. ................................... 38
    8.3.    Rejection Damages Claims. .................................................................................. 39
    8.4.    Insurance Policies. .................................................................................. 39
    8.5.    Intellectual Property Licenses and Agreements. ........................................................ 40
    8.6.    Tax Agreements. .................................................................................. 40
    8.7.    Assignment. .................................................................................. 40
    8.8.    Modifications, Amendments, Supplements, Restatements, or Other
            Agreements. .................................................................................. 41
    8.9.    Reservation of Rights. .................................................................................. 41

**ARTICLE IX**    CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND
               EFFECTIVE DATE. .................................................................................. 41

    9.1.    Conditions Precedent to Confirmation of Plan. ........................................................ 41
    9.2.    Conditions Precedent to Effective Date. .................................................................. 42
    9.3.    Waiver of Conditions Precedent. ............................................................................ 43
    9.4.    Effect of Failure of a Condition. ............................................................................ 43

**ARTICLE X**    EFFECT OF CONFIRMATION OF PLAN. ............................................. 44

    10.1.    Vesting of Assets. .................................................................................. 44
    10.2.    Binding Effect. .................................................................................. 44
    10.3.    Discharge of Claims and Termination of Interests. ................................................... 44
    10.4.    Term of Injunctions or Stays. ................................................................................ 44
    10.5.    Injunction. .................................................................................. 45
    10.6.    Releases. .................................................................................. 46
    10.7.    Exculpation. .................................................................................. 47
    10.8.    Subordinated Claims. .................................................................................. 48
    10.9.    Retention of Causes of Action/Reservation of Rights. .............................................. 48
    10.10.    Solicitation of Plan. .................................................................................. 48
    10.11.    Corporate and Limited Liability Company Action. .................................................. 48

**ARTICLE XI**    RETENTION OF JURISDICTION. ........................................................ 49

    11.1.    Retention of Jurisdiction. .................................................................................. 49
    11.2.    Courts of Competent Jurisdiction. ......................................................................... 50

**ARTICLE XII**    MISCELLANEOUS PROVISIONS. ....................................................... 51

    12.1.    Payment of Statutory Fees. .................................................................................. 51
    12.2.    Substantial Consummation of the Plan. .................................................................. 51
    12.3.    Plan Supplement. .................................................................................. 51
    12.4.    Request for Expedited Determination of Taxes. ........................................................ 51
    12.5.    Exemption from Certain Transfer Taxes. ................................................................. 51

<u>Table of Contents</u>
(continued)

| | | |
|---|---|---|
| 12.6. | Amendments. | 52 |
| 12.7. | Effectuating Documents and Further Transactions. | 52 |
| 12.8. | Revocation or Withdrawal of Plan. | 52 |
| 12.9. | Dissolution of Statutory Committees. | 52 |
| 12.10. | Severability of Plan Provisions. | 53 |
| 12.11. | Governing Law. | 53 |
| 12.12. | Time. | 53 |
| 12.13. | Dates of Actions to Implement the Plan. | 53 |
| 12.14. | Immediate Binding Effect. | 53 |
| 12.15. | Deemed Acts. | 53 |
| 12.16. | Successor and Assigns. | 54 |
| 12.17. | Entire Agreement. | 54 |
| 12.18. | Exhibits to Plan. | 54 |
| 12.19. | Notices. | 54 |

WEIL:\97098143\1\47019.0003

Each of Fusion Connect, Inc., Fusion BCHI Acquisition LLC, Fusion NBS Acquisition Corp., Fusion LLC, Fusion MPHC Holding Corporation, Fusion MPHC Group, Inc., Fusion Cloud Company LLC, Fusion Cloud Services, LLC, Fusion CB Holdings, Inc., Fusion Communications, LLC, Fusion Telecom, LLC, Fusion Texas Holdings, Inc., Fusion Telecom of Kansas, LLC, Fusion Telecom of Oklahoma, LLC, Fusion Telecom of Missouri, LLC, Fusion Telecom of Texas Ltd., L.L.P., Bircan Holdings, LLC, Fusion Management Services LLC, and Fusion PM Holdings, Inc. (each, a "**Debtor**" and, collectively, the "**Debtors**") propose the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Article I.A.

## ARTICLE I    DEFINITIONS AND INTERPRETATION.

A.    **Definitions.**

The following terms shall have the respective meanings specified below:

1.1    *Accepting Class* means a Class that votes to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

1.2    *Administrative Expense Claim* means any Claim for costs or expenses of administration incurred during the Chapter 11 Cases of a kind specified under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Fee Claims; (c) Restructuring Expenses; and (d) the DIP Claims.

1.3    *Affiliates* means "Affiliates" as such term is defined in section 101(2) of the Bankruptcy Code.

1.4    *Allowed* means, with reference to any Claim or Interest, a Claim or Interest (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection has been determined in favor of the holder of the Claim or Interest by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable; (c) as to which the liability of the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder; provided, however, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan, if any.

1.5    *Amended Organizational Documents* means the forms of certificates of incorporation, certificates of formation, limited liability company agreements, partnership agreements or other forms of organizational documents and bylaws, as applicable, of the Reorganized Debtors, to be amended in connection with the Reorganization Transaction, substantially final forms of which shall be contained in the Plan Supplement to the extent they contain material changes to the existing forms.

1.6     *Asset* means all of the right, title, and interest of the Debtors in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

1.7     *Assumption Dispute* means a pending objection relating to assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.8     *Assumption Schedule* means the schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to the Plan that will be included in the Plan Supplement.

1.9     *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.10     *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of New York.

1.11     *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local bankruptcy rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.12     *Benefit Plans* means each (a) "employee benefit plan," as defined in section 3(3) of ERISA and (b) all other pension, retirement, bonus, incentive, health, life, disability, group insurance, vacation, holiday and fringe benefit plan, program, contract, or arrangement (whether written or unwritten) maintained, contributed to, or required to be contributed to, by the Debtors for the benefit of any of its current or former employees or independent contractors, other than those that entitle employees to, or that otherwise give rise to, Interests or consideration based on the value of Interests, in the Debtors.

1.13     *Bidding Procedures* means the procedures governing the auction and sale process relating to any potential Sale Transaction, as approved by the Bankruptcy Court pursuant to the Bidding Procedures Order and as may be amended from time to time in accordance with their terms and otherwise in accordance with the Bidding Procedures Order and the RSA.

1.14     *Bidding Procedures Motion* means the *Motion of Debtors for Entry of an Order (I) Approving (A) Bidding Procedures and (B) Assumption and Assignment Procedures and (II) Granting Related Relief* (ECF No. 36).

1.15     *Bidding Procedures Order* means the order entered by the Bankruptcy Court approving the Bidding Procedures Motion.

1.16     *Business Day* means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.17     *Cash* means legal tender of the United States of America.

1.18     *Causes of Action* means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any

WEIL:\97098143\1\47019.0003

kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes:  (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any claims under any state law or foreign law, including, without limitation, any fraudulent transfer or similar claims.

1.19    *Chapter 11 Cases* means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Commencement Date in the Bankruptcy Court styled *In re Fusion Connect, Inc., et al.,* Case No. 19-11811 (SMB).

1.20    *Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.21    *Class* means any group of Claims or Interests classified under the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.22    *Commencement Date* means June 3, 2019.

1.23    *Communications Act* means chapter 5 of title 47 of the United States Code, 47 U.S.C. §§ 151-622, as now in effect or hereafter amended, or any other successor federal statute, and the rules and regulations promulgated thereunder.

1.24    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.25    *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.26    *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.27    *Consenting First Lien Lenders* means the Prepetition First Lien Lenders that are or become party to the RSA together with their respective successors and permitted assigns.

1.28    *Contingent DIP Obligations* means all of the Debtors' obligations under the DIP Documents and the DIP Order that are contingent and/or unliquidated, other than DIP Claims that are paid in full in Cash on or prior to the Effective Date and contingent indemnification obligations as to which a Claim has been asserted on or prior to the Effective Date.

1.29    *Creditors' Committee* means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

1.30    *Cure Amount* means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary pursuant to section

WEIL:\97098143\1\47019.0003

365(b)(1)(A) of the Bankruptcy Code to permit the Debtors to assume an executory contract or unexpired lease.

1.31    *Debtor or Debtors* has the meaning set forth in the introductory paragraph of the Plan.

1.32    *Debtors in Possession* means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.33    *Declaratory Ruling* means a declaratory ruling adopted by the FCC granting the relief requested in a Petition for Declaratory Ruling.

1.34    *Definitive Documents* means the documents (including any related orders, agreements, instruments, schedules or exhibits) that are necessary or desirable to implement, or otherwise relate to the Reorganization Transaction or the Sale Transaction, including, but not limited to: (a) the Plan; (b) the Bidding Procedures Order; (c) the Disclosure Statement; (d) the Disclosure Statement Motion, (e) the Disclosure Statement Order; (f) each of the documents comprising the Plan Supplement; (g) the Confirmation Order; and (h) any purchase and sale agreement in connection with the Sale Transaction.

1.35    *DIP Agent* means the "DIP Agent" as defined in the DIP Order.

1.36    *DIP Claims* means all Claims held by the DIP Lenders on account of, arising under or relating to the DIP Documents or the DIP Order, which, for the avoidance of doubt, shall include all "DIP Obligations" as such term is defined in the DIP Order.

1.37    *DIP Credit Agreement* means the "DIP Credit Agreement" as defined in the DIP Order.

1.38    *DIP Documents* means the "DIP Documents" as defined in the DIP Order.

1.39    *DIP Lenders* means the "DIP Lenders" as defined in the DIP Order.

1.40    *DIP Motion* means the *Motion of Debtors for (I) Authorization (A) To Obtain Postpetition Financing, (B) To Use Cash Collateral, (C) To Grant Liens and Provide Superpriority Administrative Expense Status, (D) To Grant Adequate Protection, (E) To Modify the Automatic Stay; (F) To Schedule a Final Hearing and (II) Related Relief* (ECF No. 17).

1.41    *DIP Order* means the interim order approving the DIP Motion (ECF No. 57) and, upon entry, the final order approving the DIP Motion.

1.42    *Disallowed* means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.43    *Disbursing Agent* means (a) solely with respect to the Reorganization Transaction, the Reorganized Debtors; and (b) solely with respect to the Sale Transaction, the Plan Administrator.

1.44    *Disclosure Statement* means the disclosure statement filed by the Debtors in support of the Plan, as amended, supplemented or modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.45    *Disclosure Statement Motion* means the motion of the Debtors seeking entry of an order approving the Disclosure Statement and authorizing solicitation of the Plan.

WEIL:\97098143\1\47019.0003

1.46    ***Disclosure Statement Order*** means the order entered by the Bankruptcy Court granting the Disclosure Statement Motion.

1.47    ***Disputed*** means with respect to a Claim or Interest, any Claim or Interest that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; or (b) the Debtors or any parties in interest have interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order. If the Debtors dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors do not dispute, and Disputed as to the balance of such Claim.

1.48    ***Distribution Record Date*** means the Effective Date.

1.49    ***Effective Date*** means the date that is the first Business Day on which all conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived in accordance with the terms of the Plan.

1.50    ***Employee Arrangements*** shall have the meaning ascribed to such term in Section 5.8 of the Plan.

1.51    ***Entity*** means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.52    ***Equity Allocation Mechanism*** means the methodology for allocating the New Equity Interests among the holders of Allowed First Lien Claims set forth on Exhibit A to the Plan.

1.53    ***ERISA*** means the Employee Retirement Income Security Act of 1974, as amended.

1.54    ***Estate or Estates*** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.55    ***Exculpated Parties*** means collectively, each solely in their capacities as such, the (a) Debtors; (b) Reorganized Debtors; (c) Wind Down Co (if applicable); (d) Consenting First Lien Lenders; (e) Prepetition First Lien Administrative Agent; (f) DIP Agent, (g) DIP Lenders; (h) the New First Lien Lenders; (i) the New First Lien Agent; (j) the New Exit Facility Lenders; (k) the New Exit Facility Agent; (l) the Creditors' Committee; and (m) Related Parties for each of the foregoing; provided, that, notwithstanding anything herein to the contrary, any person or Entity identified on the Non-Released Parties Schedule shall not be an "Exculpated Party" under the Plan.

1.56    ***FCC*** means the Federal Communications Commission, including any official bureau or division thereof acting on delegated authority, and any successor governmental agency performing functions similar to those performed by the Federal Communications Commission on the Effective Date.

1.57    ***FCC Applications*** means, collectively, each requisite application, petition, or other request filed or to be filed with the FCC in connection with the Reorganization Transaction and this Plan, including the FCC Long Form Applications.

1.58    ***FCC Approval*** means the FCC's grant of the FCC Long Form Applications; provided that, subject to the consent of the Requisite First Lien Lenders, the possibility that an appeal, request for stay, or petition for rehearing or review by a court or administrative agency may be filed with respect to

5

such grant, or that the FCC may reconsider or review such grant on its own authority, shall not prevent such grant from constituting FCC Approval for purposes of the Plan.

1.59    ***FCC Licenses*** means licenses, authorizations, waivers, and permits that are issued from time to time by the FCC.

1.60    ***FCC Long Form Applications*** means the applications filed with the FCC seeking FCC consent to the Transfer of Control.

1.61    ***FCC Ownership Procedures Order*** means an order entered by the Bankruptcy Court establishing procedures for, among other things, completion and submission of the Ownership Certifications, which order shall be in form and substance reasonably acceptable to the Requisite First Lien Lenders.

1.62    ***FCI*** means Fusion Connect, Inc.

1.63    ***Fee Claim*** means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtors or the Creditors' Committee by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Cases.

1.64    ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and is in full force and effect, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.65    ***First Lien Claims*** means all Claims arising under or in connection with the Prepetition First Lien Credit Agreement.

1.66    ***First Lien Lender Equity Distribution*** means, solely with respect to a Reorganization Transaction, a distribution of New Equity Interests and/or Special Warrants, which New Equity Interests shall constitute one hundred percent (100%) of all of the issued and outstanding New Equity Interests issued on the Effective Date, subject to dilution by the Special Warrants and the Management Incentive Plan, and to be allocated among the holders of Allowed First Lien Claims pursuant to, and subject to the terms and conditions of, the Equity Allocation Mechanism.

1.67    ***First Lien Lender Group*** means the ad hoc group of Consenting First Lien Lenders represented by Davis Polk & Wardwell LLP and Greenhill & Co., LLC.

1.68    ***General Unsecured Claim*** means any Claim against the Debtors (other than any Intercompany Claims) as of the Commencement Date that is neither secured by collateral nor entitled to

WEIL:\97098143\1\47019.0003

priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court, including any deficiency claim under section 506(a) of the Bankruptcy Code. For the avoidance of doubt, the Prepetition Subordinated Notes Claim shall be deemed a General Unsecured Claim.

1.69    *Impaired* means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.70    *Insured Claims* means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

1.71    *Intercompany Claim* means any pre- or postpetition Claim against a Debtor held by another Debtor.

1.72    *Intercompany Interest* means an Interest in a Debtor held by another Debtor. For the avoidance of doubt, an Intercompany Interest shall exclude a Parent Equity Interest.

1.73    *Interests* means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, preferred stock, units, membership interest, partnership interest, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.74    *Key Employee Agreements* shall mean the key employee retention agreements entered into by FCI and certain key employees of FCI on or about May 30, 2019.

1.75    *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.76    *Management Incentive Plan* means, solely with respect to the Reorganization Transaction, a post-emergence management incentive plan, under which up to ten percent (10%) of the New Equity Interests (after taking into account the shares to be issued under the Management Incentive Plan) will be reserved for issuance as awards on terms and conditions as agreed to by the New Board.

1.77    *Net Cash Proceeds* means (a) all Cash of the Debtors or Wind Down Co (as applicable) realized from their business operations and the Sale Transaction Proceeds less (b) the amount of Cash (i) necessary to pay holders of Allowed (or reserve for Disputed) Administrative Expense Claims, Fee Claims, Priority Tax Claims, DIP Claims, Priority Non-Tax Claims, and Other Secured Claims and (ii) estimated and reserved by the Debtors or the Plan Administrator, with the consent of the Requisite First Lien Lenders, to adequately fund the Wind Down of the Estates.

1.78    *New Board* means, solely with respect to the Reorganization Transaction, the new board of directors of Reorganized FCI selected in accordance with Section 5.5 of the Plan.

1.79    *New Equity Interests* means, solely with respect to the Reorganization Transaction, the new equity interests to be issued by Reorganized FCI on the Effective Date or upon exercise of the Special Warrants, authorized pursuant to the Amended Organizational Documents of Reorganized FCI.

1.80    *New Exit Facility* means, solely with respect to the Reorganization Transaction, the facility arising pursuant to the New Exit Facility Credit Agreement.

WEIL:\97098143\1\47019.0003

1.81     *New Exit Facility Agent* means the administrative agent under the New Exit Facility Credit Agreement.

1.82     *New Exit Facility Credit Agreement* means, solely with respect to the Reorganization Transaction, the agreement to be entered into by the Reorganized Debtors, the New Exit Facility Agent and the New Exit Facility Lenders on the Effective Date that shall govern the New Exit Facility.

1.83     *New Exit Facility Documents* means, collectively, the New Exit Facility Credit Agreement and all other documents required to be delivered by any of the Reorganized Debtors pursuant to the New Exit Facility Credit Agreement.

1.84     *New Exit Facility* means, solely with respect to the Reorganization Transaction, the facility arising pursuant to the New Exit Facility Credit Agreement.

1.85     *New Exit Facility Lenders* means the Persons party to the New Exit Facility Credit Agreement as "Lenders" thereunder, each in its capacity as such, and each of their respective successors and permitted assigns.

1.86     *New First Lien Agent* means the administrative agent under the New First Lien Credit Agreement.

1.87     *New First Lien Credit Agreement* means, solely with respect to the Reorganization Transaction, the agreement to be entered into by the Reorganized Debtors, the New First Lien Agent, and the New First Lien Lenders on the Effective Date that shall govern the New First Lien Credit Facility.

1.88     *New First Lien Credit Facility* means, solely with respect to the Reorganization Transaction, the facility arising pursuant to the New First Lien Credit Agreement, on terms consistent with the New First Lien Term Sheet.

1.89     *New First Lien Documents* means, collectively, the New First Lien Credit Agreement and all other documents required to be delivered by any of the Reorganized Debtors pursuant to the New First Lien Credit Agreement.

1.90     *New First Lien Lenders* means the Persons party to the New First Lien Credit Agreement as "Lenders" thereunder, each in its capacity as such, and each of their respective successors and permitted assigns.

1.91     *New First Lien Term Sheet* means the term sheet attached as Schedule 2 to the Restructuring Term Sheet attached as Exhibit A to the RSA.

1.92     *Non-Released Parties Schedule* means a schedule listing the Entities that are not "Exculpated Parties", "Released Parties" or "Related Parties" under this Plan.

1.93     *Other Secured Claim* means a Secured Claim, other than an Administrative Expense Claim, a DIP Claim, a Priority Tax Claim, a First Lien Claim, or a Second Lien Claim.

1.94     *Ownership Certification* means a written certification, in the form attached to the FCC Ownership Procedures Order, which shall, among other things, be sufficient to enable the Debtors or Reorganized Debtors, as applicable, to determine the extent to which direct and indirect voting and equity interests of the certifying party are held by non-U.S. Persons, as determined under section 310(b) of the Communications Act, as interpreted and applied by the FCC.

WEIL:\97098143\1\47019.0003

1.95    **Ownership Certification Deadline** means the deadline set forth in the FCC Ownership Procedures Order for returning Ownership Certifications.

1.96    **Parent Equity Interests** means any Interest in FCI.

1.97    **Person** means any individual, corporation, partnership, limited liability company, association, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

1.98    **Petition for Declaratory Ruling** means a filing that shall be submitted to the FCC by the Debtors or Reorganized Debtors, as applicable, pursuant to 47 C.F.R. §§ 1.5000 *et seq.* for Reorganized FCI to exceed the twenty five percent (25%) indirect foreign ownership benchmark contained in 47 U.S.C. § 310(b)(4).

1.99    **Plan** means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the RSA, the provisions of the Bankruptcy Code and the terms hereof.

1.100    **Plan Administrator** means, solely with respect to the Sale Transaction, a Person or Entity selected by the Debtors and the Requisite First Lien Lenders to serve as plan administrator for each of the Debtors and their Estates.

1.101    **Plan Supplement** means a supplemental appendix to the Plan containing, among other things, forms of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court, including, but not limited to, the following: (a) Amended Organizational Documents (to the extent such Amended Organizational Documents reflect material changes from the Debtors' existing organizational documents and bylaws); (b) New First Lien Credit Agreement; (c) New Exit Facility Credit Agreement; (d) Stockholders Agreement; (e) Special Warrant Agreement; (f) Assumption Schedule; (g) the Non-Released Parties Schedule; (h) the Wind Down Co Organizational Documents (if applicable); (i) the Wind Down Budget (if any); and (j) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; provided, that through the Effective Date, the Debtors shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan and the RSA. The Plan Supplement shall be filed with the Bankruptcy Court no later than seven (7) calendar days prior to the deadline to object to the Plan. The Debtors shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date in accordance with the terms of the Plan (including, for the avoidance of doubt, to reflect the terms and conditions of the Sale Transaction).

1.102    **Prepetition First Lien Administrative Agent** means Wilmington Trust, in its capacity as administrative agent under the Prepetition First Lien Credit Agreement, and its successors and assigns.

1.103    **Prepetition First Lien Credit Agreement** means that certain First Lien Credit and Guaranty Agreement, dated as of May 4, 2018, by and among FCI, as borrower, certain subsidiaries of FCI, as guarantor subsidiaries, Wilmington Trust, as administrative agent and collateral agent, and the Prepetition First Lien Lenders, as amended, restated, modified or supplemented from time to time prior to the Commencement Date.

1.104    **Prepetition First Lien Credit Documents** means, collectively, each "Credit Document" as defined in the Prepetition First Lien Credit Agreement.

9

1.105   **Prepetition First Lien Lenders** means any lender party to the Prepetition First Lien Credit Agreement, each in its capacity as such.

1.106   **Prepetition First Lien Loans** means "Loans" as defined in the Prepetition First Lien Credit Agreement.

1.107   **Prepetition Intercreditor Agreement** means that certain Intercreditor Agreement, dated as of May 4, 2018, among Wilmington Trust, as First Lien representative, and GLAS Americas LLC (as successor to Wilmington Trust), as Second Lien representative.

1.108   **Prepetition Second Lien Administrative Agent** means GLAS Americas LLC and GLAS USA LLC, in its capacity as successor administrative agent under the Prepetition Second Lien Credit Agreement, and its successors and assigns.

1.109   **Prepetition Second Lien Credit Agreement** means that certain Second Lien Credit and Guaranty Agreement, dated as of May 4, 2018, by and among FCI, as borrower, certain subsidiaries of FCI, as guarantor subsidiaries, GLAS Americas LLC (as successor to Wilmington Trust), as administrative agent and collateral agent, and the Prepetition Second Lien Lenders, as amended, restated, modified or supplemented from time to time prior to the Commencement Date.

1.110   **Prepetition Second Lien Lenders** means any lender under the Prepetition Second Lien Credit Agreement, each in its capacity as such.

1.111   **Prepetition Subordinated Notes** means, collectively, the subordinated unsecured note, dated as of May 4, 2018, in favor of Holcombe T. Green, Jr. (or an entity majority-owned and controlled by Holcombe T. Green, Jr. or his heirs, beneficiaries, trusts or estate) and the subordinated unsecured notes, each dated as of October 28, 2016, as amended and restated as of May 4, 2018, in favor of Holcombe T. Green, Jr., R. Kirby Godsey and the Holcombe T. Green, Jr. 2013 Five-Year Annuity Trust.

1.112   **Prepetition Subordinated Notes Claims** means all Claims on account of, arising under, or relating to the Prepetition Subordinated Notes.

1.113   **Prepetition Super Senior Credit Agreement** means that certain Super Senior Secured Credit Agreement, dated as of May 9, 2019, by and among FCI, as borrower, certain subsidiaries of FCI, as guarantor subsidiaries, Wilmington Trust, National Association, as administrative agent and collateral agent, and the lenders party thereto, as amended by that certain Incremental Amendment and Amendment No. 1 thereto, dated as of May 28, 2019, and as further amended, restated, modified or supplemented from time to time prior to the Commencement Date.

1.114   **Prepetition Super Senior Credit Documents** means, collectively, each "Credit Document" as defined in the Prepetition Super Senior Credit Agreement.

1.115   **Priority Non-Tax Claim** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.116   **Priority Tax Claim** means any Claim of a governmental unit as defined in section 101(27) of the Bankruptcy Code of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.117    ***Pro Rata*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.118    ***Reinstate, Reinstated, or Reinstatement*** means leaving a Claim Unimpaired under the Plan.

1.119    ***Related Parties*** means with respect to any Exculpated Party or any Released Party, such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, managers, limited partners, principals, stockholders (and any fund managers, fiduciaries or other agents of stockholders with any involvement related to the Debtors), members, partners, managers, employees, subcontractors agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, investment managers, investment advisors, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees; provided that, notwithstanding anything to the contrary herein, any person or Entity identified on the Non-Released Parties Schedule shall not be a "Related Party" under the Plan.

1.120    ***Released Parties*** means collectively the: (a) Debtors; (b) Reorganized Debtors; (c) Wind Down Co (if applicable); (d) Consenting First Lien Lenders; (e) Prepetition First Lien Administrative Agent; (f) DIP Agent; (g) DIP Lenders; and (h) Related Parties for each of the foregoing; provided that, notwithstanding anything to the contrary herein, any person or Entity identified on the Non-Released Parties Schedule shall not be a "Released Party" under the Plan.

1.121    ***Reorganization Transaction*** means, collectively, (a) issuance of the New Equity Interests; (b) entry into the New First Lien Credit Documents; (c) entry into the New Exit Facility Documents; (d) entry into the Special Warrant Agreement; (e) execution of the Amended Organizational Documents; (f) vesting of the Debtors' assets in the Reorganized Debtors, in each case, in accordance with the Plan; and (g) the other transactions that the Debtors and the Requisite First Lien Lenders reasonably determine are necessary or appropriate to implement the foregoing, in each case, in accordance with the Plan and the RSA.

1.122    ***Reorganized Debtors*** means, the Debtors, as reorganized pursuant to and under the Plan on and after the Effective Date.

1.123    ***Reorganized FCI*** means, FCI, as reorganized pursuant to and under the Plan on or after the Effective Date

1.124    ***Requisite First Lien Lenders*** means, as of the date of determination, Consenting First Lien Lenders holding at least a majority in aggregate principal amount outstanding of the Prepetition First Lien Loans held by the Consenting First Lien Lenders as of such date.

1.125    ***Restructuring Expenses*** means the reasonable and documented fees and expenses incurred by the Consenting First Lien Lenders in connection with the Chapter 11 Cases, including the fees and expenses of (i) Davis Polk & Wardwell LLP, (ii) Greenhill & Co., LLC, (iii) Altman Vilandrie & Company and its sub-contractors, (iv) Wiley Rein LLP, (v) one firm acting as local counsel (if any), and (vi) any other advisors retained by the Requisite First Lien Lenders, payable in accordance with the terms of any applicable engagement or fee letters executed with such parties and without the requirement for the filing of retention applications, fee applications, or any other application in the Chapter 11 Cases, which

11

shall be Allowed as Administrative Expense Claims upon incurrence and shall not be subject to any offset, defense, counterclaim, reduction, or credit.

1.126    **RSA** means that certain Restructuring Support Agreement, dated as of June 3, 2019, by and among the Debtors and the Consenting First Lien Lenders (as may be amended, supplemented, or modified from time to time in accordance with the terms thereof) annexed to the Disclosure Statement as Exhibit B.

1.127    **Sale Transaction** means the sale of all or substantially all of the Debtors' assets or Interests in the Debtors owning all or substantially all of the Debtors' assets, contemplated by the Successful Bid.

1.128    **Sale Transaction Proceeds** means the cash and non-cash proceeds of a Sale Transaction.

1.129    **SEC** means the U.S. Securities and Exchange Commission and any successor agency.

1.130    **Second Lien Claims** means any Claims arising from or in connection with the Prepetition Second Lien Credit Agreement.

1.131    **Secured Claim** means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.132    **Security** has the meaning set forth in section 101(49) of the Bankruptcy Code.

1.133    **Special Warrant** means a warrant, issued by Reorganized FCI pursuant to the Plan, the Equity Allocation Mechanism, and the Special Warrant Agreement, to purchase New Equity Interests, the terms of which will provide that it will not be exercisable unless such exercise complies with applicable law, which shall be in form and substance acceptable to the Debtors and the Requisite First Lien Lenders.

1.134    **Special Warrant Agreement** means the warrant agreement, to be effective on the Effective Date, governing the Special Warrants to be issued by Reorganized FCI, the form of which shall be included in the Plan Supplement.

1.135    **Stockholders Agreement** means, solely with respect to the Reorganization Transaction, that certain stockholders agreement substantially in the form included as an exhibit to the Plan Supplement.

1.136    **Subordinated Securities Claims** means a Claim subject to subordination under section 510(b) of the Bankruptcy Code.

1.137    **Successful Bid** means one or more bids to purchase or acquire all or substantially all of the Debtors' assets or Interests in the Debtors owning all or substantially all of the Debtors' assets, that the Debtors determine, in an exercise of their business judgment and subject to the RSA, constitutes the highest or best bid.

1.138    **Successful Bidder** means the bidder(s) who submit(s) a Successful Bid.

1.139    **Tax Code** means the Internal Revenue Code of 1986, as amended.

WEIL:\97098143\1\47019.0003

1.140    ***Transfer of Control*** means the transfer of control of the FCC Licenses held by any of FCI or its subsidiaries as a result of the issuance of the New Equity Interests and/or Special Warrants to holders of First Lien Claims after the FCC grants the FCC Long Form Applications.

1.141    ***Unimpaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(2) and 1124 of the Bankruptcy Code.

1.142    ***U.S. Trustee*** means the United States Trustee for the Southern District of New York.

1.143    ***Voting Deadline*** means the date by which all persons or Entities entitled to vote on the Plan must vote to accept or reject the Plan.

1.144    ***Wilmington Trust*** means Wilmington Trust, National Association.

1.145    ***Wind Down*** means, following the closing of the Sale Transaction, the process to wind down, dissolve and liquidate the Estates and distribute any proceeds of the Sale Transaction and remaining assets in accordance with the Plan (including, if applicable, through use of a Wind Down Co).

1.146    ***Wind Down Budget*** means an amount set forth in the Plan Supplement to be agreed between the Debtors and the Requisite First Lien Lenders for the purpose of effectuating the Wind Down.

1.147    ***Wind Down Co*** means an Entity that, in the discretion of Debtors, with the consent of the Requisite First Lien Lenders, which consent shall not be unreasonably withheld, may be established on the Effective Date for the benefit of holders of Claims against the Debtors (which Entity may be a liquidating trust) in connection with the distribution of proceeds from the Sale Transaction and any other assets of the Debtors (as determined by the Debtors or in accordance with the Successful Bid).

1.148    ***Wind Down Co Organizational Documents*** means any organizational documents of Wind Down Co, substantially final forms of which will be contained in the Plan Supplement.

B.    **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

13

C.      **Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

D.      **Controlling Document.**

In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan (including any other Definitive Document), or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; provided, however, that, in the event of a conflict between the Confirmation Order, on the one hand, and any of the Plan, the Plan Supplement, the other Definitive Documents, on the other hand, the Confirmation Order shall govern and control in all respects.

E.      **Certain Consent Rights.**

Notwithstanding anything in the Plan to the contrary, any and all consent rights of the parties to the RSA and the DIP Agent as set forth in the RSA and the DIP Documents with respect to the form and substance of the Plan, the Plan Supplement, and any Definitive Document, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein.

## ARTICLE II   ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

2.1.    *Administrative Expense Claims.*

Except as otherwise set forth herein, and except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim, a DIP Claim, or a Restructuring Expense) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any course of dealing or agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2.    *Fee Claims.*

(a)      All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Debtors or the Creditors' Committee, as applicable, the U.S. Trustee, and counsel to the First Lien Lender Group, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Commencement Date through the Effective Date.

14

Objections to any Fee Claims must be filed and served on counsel to the Debtors, counsel to the First Lien Lender Group, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors or the Reorganized Debtors, as applicable, and the party requesting compensation of a Fee Claim).

(b)    Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable.  Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court may be paid at the times and in the amounts authorized pursuant to such orders.

(c)    On or about the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtors, and the Debtors or Reorganized Debtors, as applicable, shall escrow such estimated amounts for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim.  When all such Allowed Fee Claims have been paid in full, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Reorganized Debtors without any further action or order of the Bankruptcy Court.

(d)    The Reorganized Debtors or the Plan Administrator, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the sole option of the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, that the Debtor reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Commencement Date.

2.4.    *DIP Claims.*

As of the Effective Date, the DIP Claims shall be Allowed in the full amount outstanding under the DIP Credit Agreement, including principal, interest, fees, and expenses.  On the Effective Date, in full and final satisfaction of the DIP Claims, such claims shall be (a) paid in full in Cash upon the consummation of the Sale Transaction if the Sale Transaction occurs or (b) paid in full in Cash from the proceeds of the New Exit Facility if the Reorganization Transaction occurs.  Notwithstanding anything to

the contrary in the Plan or the Confirmation Order, (i) the Contingent DIP Obligations shall survive the Effective Date and shall not be discharged or released pursuant to the Plan or the Confirmation Order, and (ii) the DIP Documents shall continue in full force and effect after the Effective Date with respect to any obligations thereunder governing (1) the Contingent DIP Obligations and (2) the relationships among the DIP Agents and the DIP Lenders.

On the later of (1) the Effective Date and (2) the date on which such fees, expenses, or disbursements would be required to be paid under the terms of the DIP Order, the Debtors or Reorganized Debtors (as applicable) shall pay all fees, expenses, and disbursements of the DIP Agent and DIP Lenders, in each case that have accrued and are unpaid as of the Effective Date and are required to be paid under or pursuant to the DIP Order. After the Effective Date, the Reorganized Debtors shall continue to reimburse the DIP Agent and the DIP Lenders for the reasonable fees and expenses (including reasonable and documented legal fees and expenses) incurred by the DIP Agent and the DIP Lenders after the Effective Date in accordance with the terms thereof and/or the DIP Order. The Reorganized Debtors shall pay all of the amounts that may become payable to the DIP Agents or any of the DIP Lenders on account of any Contingent DIP Obligations in accordance with the terms of the DIP Documents and the DIP Order.

2.5.    *Restructuring Expenses.*

During the period commencing on the Commencement Date through the Effective Date, the Debtors will promptly pay in full in Cash any Restructuring Expenses in accordance with the terms of the RSA. Without limiting the foregoing, to the extent that any Restructuring Expenses remain unpaid as of the Business Day prior to the Effective Date, on the Effective Date, the Reorganized Debtors, or Plan Administrator, as applicable, shall pay in full in Cash any outstanding Restructuring Expenses that are invoiced without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court review or approval. For the avoidance of doubt, any Restructuring Expenses invoiced after the Effective Date shall be paid promptly, but no later than ten (10) business days of receiving an invoice.

**ARTICLE III  CLASSIFICATION OF CLAIMS AND INTERESTS.**

3.1.    *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2.    *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) deemed to accept or reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

| Class | Designation | Treatment | Entitled to Vote |
|:---:|:---|:---:|:---:|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | First Lien Claims | Impaired | Yes |
| 4 | Second Lien Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Intercompany Claims | Unimpaired | No (Presumed to accept) |
| 7 | Intercompany Interests | Unimpaired | No (Presumed to accept) |
| 8 | Parent Equity Interests | Impaired | No (Deemed to reject) |
| 9 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |

3.3.    *Special Provision Governing Unimpaired Claims.*

Nothing under the Plan shall affect the rights of the Debtors or the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.4.    *Elimination of Vacant Classes.*

Any Class of Claims against or Interests in the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

## ARTICLE IV  TREATMENT OF CLAIMS AND INTERESTS.

4.1.    *Priority Non-Tax Claims (Class 1).*

(a)    *Classification*:  Class 1 consists of Priority Non-Tax Claims.

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Non-Tax Claim, at the sole option of the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable:  (i) each such holder shall receive payment in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable; (ii) such holder's Allowed Priority Non-Tax Claim shall be Reinstated; or (iii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

WEIL:\97098143\1\47019.0003

4.2.    *Other Secured Claims (Class 2)*.

(a)    *Classification*:  Class 2 consists of the Other Secured Claims.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim will receive, on account of such Allowed Claim, at the sole option of the Debtors, Reorganized Debtors, or the Plan Administrator, as applicable:  (i) Cash in an amount equal to the Allowed amount of such Claim; (ii) Reinstatement of such holder's Allowed Other Secured Claim; (iii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired; or (iv) return of the applicable collateral in satisfaction of the Allowed amount of such Other Secured Claim.

(c)    *Voting*:  Class 2 is Unimpaired, and holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

4.3.    *First Lien Claims (Class 3)*.

(a)    *Classification*:  Class 3 consists of First Lien Claims.

(b)    *Allowance*:  The First Lien Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against the Debtors in the aggregate principal amount of $585,481,310.80 consisting of (i) $545,150,569.10 in aggregate outstanding principal amount of term loans, (ii) $39,818,694.44 in aggregate outstanding principal amount of revolving loans, and (iii) $512,047.00 in aggregate outstanding face amount of letters of credit issued, in each case, under the Prepetition First Lien Credit Agreement, plus accrued and unpaid prepetition interest, accrued and unpaid post-petition interest, fees, expenses and other amounts arising under the Prepetition First Lien Credit Agreement.

(c)    *Treatment*:  Except to the extent that a holder of a First Lien Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such First Lien Claim, each such holder thereof (or, with respect to any New Equity Interests to be issued pursuant to the First Lien Lender Equity Distribution, such holder's permitted designee) shall receive:

(i)    **If the Sale Transaction occurs**, on the Effective Date, such holder's Pro Rata share of Net Cash Proceeds (or a beneficial interest in Wind Down Co entitling the holder to its Pro Rata share of Net Cash Proceeds from Wind Down Co) until all Allowed First Lien Claims are satisfied in full in Cash.  On the Effective Date, the Prepetition First Lien Credit Agreement shall be deemed cancelled (except as set forth in Section 5.10 hereof).

(ii)    **If the Reorganization Transaction occurs**, on the Effective Date, such holder's Pro Rata share of (a) the First Lien Lender Equity Distribution; provided, that notwithstanding anything herein to the contrary, the distribution of the First Lien Lender Equity Distribution shall be made pursuant to, and subject to the terms and conditions of,

18

the Equity Allocation Mechanism, *less* any New Equity Interests and/or Special Warrants distributable to other classes of Claims in order for the Bankruptcy Court to determine that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code; (b) the loans under the New First Lien Credit Facility; and (c) cash or other proceeds, if any, from the sale of the Debtors' Canadian business.

(d)      *Voting*:  Class 3 is Impaired, and holders of First Lien Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.4.      *Second Lien Claims (Class 4).*

(a)      *Classification*:  Class 4 consists of Second Lien Claims in the aggregate principal amount of $85,000,000 of term loans issued under the Prepetition Second Lien Credit Agreement, plus interest, fees, expenses and other amounts arising under the Prepetition Second Lien Credit Agreement.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Second Lien Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed Second Lien Claim, each such holder thereof shall receive:

(i)      **If the Sale Transaction occurs**, on the Effective Date, such holder's Pro Rata share of Net Cash Proceeds (or a beneficial interest in Wind Down Co entitling the holder to its Pro Rata share of Net Cash Proceeds from Wind Down Co) after the First Lien Claims are satisfied in full in Cash, until all Allowed Second Lien Claims are satisfied in full in Cash.

(ii)      **If the Reorganization Transaction occurs**, each holder of Second Lien Claims will either (x) not receive or retain any property or interest in property on account of such Claim or (y) receive its *pro rata* share of the percentage of the New Equity Interests and/or Special Warrants in accordance with the Equity Allocation Mechanism, as determined by the Bankruptcy Court to satisfy section 1129(a)(7) of the Bankruptcy Code as to holders of Second Lien Claims.

(iii)      **If either the Sale Transaction or the Reorganization Transaction occurs**, on the Effective Date, the Prepetition Second Lien Credit Agreement shall be deemed cancelled (except as set forth in Section 5.10 hereof) without further action by or order of the Bankruptcy Court.

(c)      *Voting*:  Class 4 is Impaired, and holders of Second Lien Claims are entitled to vote to accept or reject the Plan.

4.5.      *General Unsecured Claims (Class 5).*

(a)      *Classification*:  Class 5 consists of General Unsecured Claims.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed General Unsecured Claim, each such holder thereof shall receive:

(i)      **If the Sale Transaction occurs**, on the Effective Date, such holder's Pro Rata share of Net Cash Proceeds (or a beneficial interest in Wind Down Co entitling the holder to its Pro Rata share of Net Cash Proceeds from Wind Down Co) after the First

WEIL:\97098143\1\47019.0003

Lien Claims and Second Lien Claims are satisfied in full in Cash until all Allowed General Unsecured Claims are satisfied in full in Cash.

(ii)     **If the Reorganization Transaction occurs**, each holder of General Unsecured Claims shall either (x) not receive or retain any property under the Plan on account of such Claim or (y) receive its *pro rata* share of the percentage of New Equity Interests and/or Special Warrants in accordance with the Equity Allocation Mechanism, as determined by the Bankruptcy Court to satisfy section 1129(a)(7) of the Bankruptcy Code as to holders of General Unsecured Claims

(c)     *Voting*:  Class 5 is Impaired, and holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.6.    *Intercompany Claims (Class 6).*

(a)     *Classification*: Class 6 consists of Intercompany Claims.

(b)     *Treatment*:  On or after the Effective Date, all Intercompany Claims will be adjusted, continued, settled, reinstated, discharged, or eliminated as determined by the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, and the Requisite First Lien Lenders, in their respective reasonable discretion, but not paid in Cash.

(c)     *Voting*:  Class 6 is Unimpaired, and holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

4.7.    *Intercompany Interests (Class 7).*

(a)     *Classification*: Class 7 consists of Intercompany Interests.

(b)     *Treatment:*  On or after the Effective Date, all Intercompany Interests shall be cancelled, reinstated, or receive such other treatment as determined by the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, and the Requisite First Lien Lenders, in their respective reasonable discretion.

(c)     *Voting:*  Class 7 is Unimpaired, and holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Interests.

4.8.    *Parent Equity Interests (Class 8).*

(a)     *Classification*: Class 8 consists of Parent Equity Interests.

(b)     *Treatment*:  Except to the extent that a holder of Parent Equity Interests agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for Parent Equity Interests, each such holder thereof shall receive:

(i)     **If either the Sale Transaction or the Reorganization Transaction occurs**, on the Effective Date, all Parent Equity Interests shall be deemed cancelled

20

without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise.  On or promptly after the Effective Date, the Reorganized Debtors or the Wind Down Co, as applicable, shall file with the SEC a Form 15 for the purpose of terminating the registration of any of FCI's publicly traded securities.

(c)      *Voting*:    Class 8 is Impaired, and holders of Parent Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Parent Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Parent Equity Interests.

4.9.      *Subordinated Securities Claims (Class 9).*

(a)      *Classification*: Class 9 consists of Subordinated Securities Claims.

(b)      *Treatment*:  Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims.  On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

(c)      *Voting*:    Class 9 is Impaired, and the holders of Subordinated Securities Claims are conclusively deemed to have rejected the Plan.  Therefore, holders of Subordinated Securities Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders of Subordinated Securities Claims will not be solicited.

## ARTICLE V    MEANS FOR IMPLEMENTATION.

5.1.      *No Substantive Consolidation.*

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor.  The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

5.2.      *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Claim or Interest or any distribution to be made on account of an Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

5.3.     *Sources of Consideration for Plan Distributions.*

(a)     ***Sale Transaction***.  In the event that the Debtors pursue the Sale Transaction, the Debtors shall fund distributions and satisfy applicable Allowed Claims and Allowed Interests under the Plan using Cash on hand and the Sale Transaction Proceeds.

(b)     ***Reorganization Transaction***.  In the event that the Debtors pursue the Reorganization Transaction, the Debtors shall fund distributions and satisfy applicable Allowed Claims and Allowed Interests under the Plan with Cash on hand, the proceeds of the New Exit Facility, loans under the New First Lien Credit Facility, the New Equity Interests and the Special Warrants.

5.4.     *Sale Transaction.*

(a)     ***Closing of Sale Transaction (If Any).***

(i)     On the Effective Date, the Debtors shall be authorized to consummate the Sale Transaction contemplated by the Successful Bid and, among other things, the Debtors' Interests and/or assets (including executory contracts and unexpired leases assumed and assigned to the Successful Bidder pursuant to Article VIII hereof), as applicable, shall be transferred to and vest in the applicable Successful Bidder free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the terms of the applicable purchase agreement and Confirmation Order (or such other applicable order of the Bankruptcy Court).

(b)     ***Wind Down and Dissolution of the Debtors.***

(i)     The Plan Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:  (a) except to the extent Claims have been Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors; (b) make distributions to holders of Allowed Claims in accordance with the Plan; (c) prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors; (d) retain professionals to assist in performing its duties under the Plan; (e) maintain the books, records, and accounts of the Debtors; (f) complete and file, as necessary, all final or otherwise required federal, state, and local tax returns for the Debtors; (g) determine whether to create a liquidating trust for the assets of a Debtor and which assets to transfer to such liquidating trust; and (h) perform other duties and functions that are consistent with the implementation of the Plan.

(ii)     After the Effective Date, pursuant to the Plan, the Plan Administrator shall wind down, sell, liquidate, and may operate, use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action remaining with the Debtors' Estates after consummation of the Sale Transaction contemplated by the Successful Bid without approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

WEIL:\97098143\1\47019.0003

(iii)    Each of the Debtors shall indemnify and hold harmless the Plan Administrator solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence, willful misconduct, or criminal conduct.

(iv)    Subject to Section 6.3(b) of the Plan, the Debtors shall make an initial distribution on the Effective Date and thereafter, the Plan Administrator shall, in an expeditious but orderly manner, make timely distributions pursuant to the Plan and the Confirmation Order.

(v)    The Plan Administrator shall be authorized to file on behalf of the Debtors and any non-Debtor subsidiaries, certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or board of directors or similar governing body of the Debtors.

(vi)    The Plan Administrator shall effectuate the Wind Down with the amounts reserved in the Wind Down Budget.

(c)    ***Establishment of Wind Down Co (if Applicable)***

(i)    On or before the Effective Date, in furtherance of the Sale Transaction, the Debtors, with the consent of the Requisite First Lien Lenders, which shall not be unreasonably withheld, shall have the authority and right to establish Wind Down Co. The Debtors, with the consent of the Requisite First Lien Lenders, which shall not be unreasonably withheld, shall determine the form of entity that Wind Down Co will be, e.g., a corporation, a limited liability company or a liquidating trust, among others, if applicable.  In the event it is determined that Wind Down Co shall take the form of a liquidating trust, (a) the terms of the liquidating trust shall be set forth in a liquidating trust agreement (which agreement shall be in form and substance satisfactory to the Requisite First Lien Lenders, in their reasonable discretion), (b) Wind Down Co shall be structured to qualify as a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code to the holders of Claims, consistent with the terms of the Plan, (c) the sole purpose of Wind Down Co shall be the liquidation and distribution of the assets transferred to Wind Down Co in accordance with Treas. Reg. § 301.7701-4(d), including the resolution of Claims, with no objective to continue or engage in the conduct of a trade or business, (d) all parties (including the Debtors, holders of Claims, the Creditors' Committee, and the trustee of the liquidating trust) shall report consistently with such treatment (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the holders of Allowed Claims, as applicable, followed by the deemed transfer of such assets to Wind Down Co), (e) all parties shall report consistently with the valuation of the assets transferred to Wind Down Co as determined by the trustee of the liquidating trust (or its designee), (f) the trustee of the liquidating trust shall be responsible for filing returns for the trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a), and (g) the trustee of the liquidating trust shall annually send to each holder of an interest in the liquidating trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes.  Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including

WEIL:\97098143\1\47019.0003

the receipt by the trustee of the liquidating trust of a private letter ruling if the trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the trustee), the trustee of the liquidating trust, with the consent of the Requisite First Lien Lenders, which shall not be unreasonably withheld, may timely elect to (i) treat the any portion of the liquidating trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Debtors, holders of Claims, the Creditors' Committee, and the trustee of the liquidating trust) shall report for United States federal, state, and local income tax purposes consistently with the foregoing.

5.5.    *Reorganization Transaction.*

(a)    If the Debtors pursue the Reorganization Transaction, the Debtors shall implement the Reorganization Transaction as set forth herein.

(b)    *New First Lien Credit Facility*.

(i)    On the Effective Date, the New First Lien Credit Agreement shall be executed and delivered, and the Reorganized Debtors shall be authorized to execute, deliver and enter into, the New First Lien Credit Documents, without the need for any further corporate, limited liability partnership or limited liability company action and without further action by the holders of Claims or Interests.

(ii)    The obligations arising under the New First Lien Credit Agreement shall be secured by a senior priority perfected security interest (junior to the liens securing the New Exit Facility Credit Agreement) in substantially all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Reorganized Debtors, wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Reorganized Debtors, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, subject to any exceptions and materiality thresholds reasonably acceptable to the Requisite New First Lien Lenders (as defined in the New First Lien Term Sheet).

(iii)    The Reorganized Debtors shall be authorized to execute, deliver, and enter into and perform under the New First Lien Credit Agreement without the need for any further corporate, limited liability partnership or limited liability company action and without further action by the holders of Claims or Interests.

(c)    *New Exit Facility*.

On the Effective Date, the Reorganized Debtors shall be authorized to execute, deliver, enter into and perform under the New Exit Facility Credit Agreement without the need for any further corporate, limited liability partnership or limited liability company action and without further action by the holders of Claims or Interests.

24

(d)     *Authorization and Issuance of New Equity Interests*.

(i)     On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, are authorized to issue or cause to be issued and shall issue the New Equity Interests and Special Warrants in accordance with the terms of the Plan, the Amended Organizational Documents, the Special Warrant Agreement, and the Equity Allocation Mechanism without the need for any further corporate or stockholder action.  All of the New Equity Interests issuable under the Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable, and the Special Warrants issued pursuant to the Plan shall be duly authorized and validly issued.  For the avoidance of doubt, the acceptance of New Equity Interests and/or Special Warrants by a holder of an Allowed First Lien Claim shall be deemed as such holder's agreement to the Amended Organizational Documents and/or the Special Warrant Agreement, as applicable, as each may be amended or modified from time to time following the Effective Date in accordance with the terms of such documents.

(ii)     The distribution of the New Equity Interests and Special Warrants pursuant to the Plan may be made by means of book-entry registration on the books of a transfer agent for shares of New Equity Interests and Special Warrants or by means of book-entry exchange through the facilities of a transfer agent reasonably satisfactory to the Debtors, in accordance with the customary practices of such agent, as and to the extent practicable.

(e)     *Continued Corporate Existence*.

(i)     The Debtors shall continue to exist after the Effective Date as Reorganized Debtors as a private company in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Organizational Documents unless otherwise determined in accordance with Section 5.10 of the Plan.

(ii)     On or after the Effective Date, the Reorganized Debtors may take such reasonable action that may be necessary or appropriate as permitted by applicable law and the Amended Organizational Documents, as the Reorganized Debtors may reasonably determine is reasonable and appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, including, without limitation, taking necessary steps to dissolve or merge out of existence any of the Reorganized Debtors that are reasonably determined to be unnecessary for the continued successful performance of the Reorganized Debtors.

(f)     *Officers and Board of Directors*.

(i)     Upon the Effective Date, the New Board shall consist of seven (7) directors.  Six (6) directors shall be selected by the First Lien Lender Group (at least one of which shall be independent) and one (1) director shall be the chief executive officer of Reorganized FCI.   If known, the identities of the directors and officers of the Reorganized Debtors shall be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

(ii)     Except to the extent that a member of the board of directors, managers, or limited partners, as applicable, of a Debtor continues to serve as a director, manager,

25

or limited partner of such Debtor on and after the Effective Date, the members of the board of directors, managers, or limited partners of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director, manager or limited partner will be deemed to have resigned or shall otherwise cease to be a director, manager or limited partner of the applicable Debtor on the Effective Date.

(g)    ***Reorganized Debtors' Authority.***

(i)    The Reorganized Debtors shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:  (a) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors; (b) make distributions to holders of Allowed Claims in accordance with the Plan; (c) prosecute all Causes of Action on behalf of the Debtors (including, for the avoidance of doubt, any Causes of Action against parties set forth on the Non-Released Parties Schedule), elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action; (d) retain professionals to assist in performing their duties under the Plan; (e) maintain the books, records, and accounts of the Debtors; (f) complete and file, as necessary, all final or otherwise required federal, state, and local tax returns for the Debtors; and (g) perform other duties and functions that are consistent with the implementation of the Plan.

(ii)    After the Effective Date, the Reorganized Debtors may operate the Debtors' business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.6.    ***FCC Licenses.***

The required FCC Long Form Applications shall be filed as promptly as practicable during these Chapter 11 Cases.  After such filing is made, any Entity that thereafter acquires a First Lien Claim may be issued Special Warrants in lieu of any New Equity Interests that would otherwise be issued to such Entity under the Plan.  In addition, the Debtors may request that the Bankruptcy Court implement restrictions on trading of Claims and Interests that might adversely affect the FCC Approval process.  The Petition for Declaratory Ruling shall be filed as promptly as practicable following the Effective Date.  The Debtors or the Reorganized Debtors, as applicable, shall diligently prosecute the FCC Long Form Applications and the Petition for Declaratory Ruling and shall promptly provide such additional documents or information requested by the FCC in connection with its review of the foregoing.

5.7.    ***Employee Matters.***

(a)    Subject to Section 5.7(c) of the Plan, on the Effective Date, solely with respect to the Reorganization Transaction, the Reorganized Debtors shall be deemed (i) to have assumed all Benefit Plans and (ii) to have rejected any employment agreements, offer letters, or award letters to which the Debtors are a party (collectively, the "***Employee Arrangements***"), unless set forth on the Assumption Schedule.  With respect to any Benefit Plan and Employee Arrangement that is set forth on the Assumption Schedule, upon the Effective Date such Benefit Plan and Employee Arrangement shall be deemed to be amended where applicable to provide and clarify that the consummation of the

26

Reorganization Transaction and any associated organizational changes shall not constitute a "Change in Control," be considered a "Good Reason" event, or serve as a basis to trigger any rights or benefits under such Benefit Plan or Employee Arrangement. To the extent that the Benefit Plans or any Employee Arrangements set forth on the Assumption Schedule are executory contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless an Assumption Dispute is timely filed and properly served, each of them will be deemed assumed (as modified or terminated) as of the Effective Date with a Cure Amount of zero dollars. However, notwithstanding anything else herein, the assumed Benefit Plans and Employee Arrangements, if any, shall be subject to modification in accordance with the terms thereof at the discretion of the Reorganized Debtors.

(b)    Following the Effective Date, solely with respect to the Reorganization Transaction, the applicable Reorganized Debtors shall enter into the Management Incentive Plan. All awards issued under the Management Incentive Plan will be dilutive of all other New Equity Interests issued pursuant to the Plan (including those issued upon the exercise of any Special Warrants).

(c)    For the avoidance of doubt, if an Employee Arrangement or a Benefit Plan provides for an award or potential award of Interests or consideration based on the value of Interests prior to the Effective Date, such Interest shall be treated in accordance with Section 4.8 of the Plan and cancelled notwithstanding assumption of the applicable Employee Arrangement or Benefit Plan. Notwithstanding anything to the contrary in Section 5.7(a), the consummation of the Restructuring Transactions and any associated organizational changes shall constitute a "Change of Control" under all prepetition Key Employee Retention Arrangements.

(d)    On the Effective Date, whether in a Reorganization Transaction or a Sale Transaction, the Reorganized Debtors shall be deemed to have assumed all prepetition key employee retention arrangements.

5.8.    ***Effectuating Documents; Further Transactions.***

(a)    On or as soon as practicable after the Effective Date, the Reorganized Debtors, or the Plan Administrator, as applicable, shall take such reasonable actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution and the Amended Organizational Documents pursuant to applicable state law; (iv) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule; and (v) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or to reincorporate in another jurisdiction, subject, in each case, to the Amended Organizational Documents.

(b)    Each officer, manager, limited partner or member of the board of directors of the Debtors is (and each officer, manager, limited partner or member of the board of directors of the Reorganized Debtors and the Plan Administrator, as applicable, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other

27

agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and, in the event that the Debtors pursue the Reorganization Transaction, the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors or Wind Down Co, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders, limited partners, directors or managers of the Debtors, the Reorganized Debtors, or Wind Down Co) except for those expressly required pursuant to the Plan.

(c)     In order to preserve the Reorganized Debtors' or Wind Down Co's ability to utilize certain tax attributes that exist as of the Effective Date, the charter, bylaws, and other organizational documents may restrict certain transfers of the New Equity Interests.

(d)     The Reorganization Transaction or Sale Transaction, as applicable, shall be conducted in a manner that, in the business judgment of the Debtors, with the consent of the Requisite First Lien Lenders (which consent shall not be unreasonably withheld), ensures that the Reorganized Debtors or Wind Down Co, as applicable, receive favorable and efficient tax treatment, given the totality of the circumstances.

(e)     All matters provided for herein involving the corporate structure of the Debtors, Reorganized Debtors, or Wind Down Co, to the extent applicable, or any corporate or related action required by the Debtors, Reorganized Debtors, or Wind Down Co in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, limited partners, directors or managers of the Debtors or Reorganized Debtors, and with like effect as though such action had been taken unanimously by the stockholders, members, limited partners, directors, managers, or officers, as applicable, of the Debtors, Reorganized Debtors, or Wind Down Co.

5.9.    *Section 1145 Exemption.*

(a)     In the event that the Debtors pursue the Reorganization Transaction, the offer, issuance, and distribution of the New Equity Interests hereunder to holders of the First Lien Claims under Section 4.3 of the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under (i) the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of Securities.

(b)     The New Equity Interests shall be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933; (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (iii) any reasonable restrictions, to the extent necessary for the Debtors to preserve their ability to utilize certain tax attributes that exist as of the Effective Date, on the transferability and ownership of New Equity Interests; (iv) applicable regulatory approval; (v) the Stockholders Agreement; and (vi) any other applicable law.

5.10.   *Cancellation of Existing Securities and Agreements.*

(a)     Solely with respect to the Reorganization Transaction, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Reorganized Debtors, and subject in all respects to the Prepetition Intercreditor Agreement (as applicable), on the Effective

Date, all agreements, instruments, and other documents evidencing or issued pursuant to the DIP Documents, the Prepetition First Lien Credit Documents, the Prepetition Second Lien Credit Agreement and any other "Credit Document" as defined therein, the Prepetition Subordinated Notes, or any indebtedness or other obligations thereunder, and any Interest in any of the Debtors (other than Intercompany Interests), or any other certificate, share, note, bond, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document of any character directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged, and of no force or effect, and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

(b)     Notwithstanding such cancellation and discharge, the DIP Documents, the Prepetition First Lien Credit Documents and the Prepetition Second Lien Credit Agreement, the Prepetition Subordinated Notes and any other indenture or agreement that governs the rights of a holder of an Allowed Claim shall continue in effect to the extent necessary (i) to allow the holders of such Claims to receive distributions under the Plan; (ii) to allow the Debtors, the Reorganized Debtors, the DIP Agent, the Prepetition First Lien Administrative Agent, and the Prepetition Second Lien Administrative Agent to make post-Effective Date distributions or take such other action pursuant to the Plan on account of such Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims; (iii) to allow holders of Claims to retain their respective rights and obligations vis-à-vis other holders of Claims pursuant to any applicable loan document or other agreement; (iv) to allow the DIP Agent, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent to enforce their rights, claims, and interests vis-à-vis any party other than the Debtors, including any rights with respect to priority of payment and/or to exercise charging liens; (v) to preserve any rights of the DIP Agent, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent to payment of fees, expenses, and indemnification obligations as against any money or property distributable to lenders under the DIP Documents, the Prepetition First Lien Credit Agreement and the Prepetition Second Lien Credit Agreement, as applicable, including any rights to priority of payment and/or to exercise charging liens; (vi) to allow the DIP Agent, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent to enforce any obligations owed to it under the Plan; (vii) to allow the DIP Agent, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent to exercise rights and obligations relating to the interests of lenders under the DIP Documents, the Prepetition First Lien Credit Agreement and the Prepetition Second Lien Credit Agreement, as applicable; (viii) to permit the DIP Agent, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent to perform any function necessary to effectuate the foregoing; and (ix) to allow the DIP Agent, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the DIP Documents, the Prepetition First Lien Credit Agreement or the Prepetition Second Lien Credit Agreement; provided that, nothing in this Section 5.10 shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan.

(c)     Except for the foregoing, subsequent to the performance by the DIP Agent of its obligations pursuant to the Plan, the DIP Agent and its agents shall be relieved of all further duties and responsibilities related to the DIP Documents. Nothing in this Section 5.10 shall in any way affect or diminish the rights of the DIP Agent to exercise any charging lien against distributions to holders of DIP Claims with respect to any unpaid fees.

(d)     Except for the foregoing, subsequent to the performance by the Prepetition First Lien Administrative Agent of its obligations pursuant to the Plan, the Prepetition First Lien

WEIL:\97098143\1\47019.0003

Administrative Agent and its agents shall be relieved of all further duties and responsibilities related to the Prepetition First Lien Credit Agreement. Nothing in this Section 5.10 shall in any way affect or diminish the rights of the Prepetition First Lien Administrative Agent to exercise any charging lien against distributions to holders of First Lien Claims with respect to any unpaid fees.

(e)    Except for the foregoing, subsequent to the performance by the Prepetition Second Lien Administrative Agent of its obligations pursuant to the Plan, the Prepetition Second Lien Administrative Agent and its agents shall be relieved of all further duties and responsibilities related to the Prepetition Second Lien Credit Agreement. Nothing in this Section 5.10 shall in any way affect or diminish the rights of the Prepetition Second Lien Administrative Agent to exercise any charging lien against distributions to holders of Second Lien Claims with respect to any unpaid fees.

(f)    Notwithstanding anything to the contrary herein, all rights under the Prepetition First Lien Credit Agreement and the Prepetition Second Lien Credit Agreement shall remain subject to the Prepetition Intercreditor Agreement.

(g)    Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or unexpired lease to the extent such executory contract or unexpired lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

5.11.    *Cancellation of Liens.*

Except as otherwise specifically provided herein, on the Effective Date, any Lien securing an Allowed Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors.

5.12.    *Subordination Agreements.*

Pursuant to section 510(a) of the Bankruptcy Code, all subordination agreements, including but not limited to, the Prepetition Intercreditor Agreement, governing Claims or Interests shall be enforced in accordance with such agreement's terms.

5.13.    *Nonconsensual Confirmation.*

The Debtors intend to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

5.14.    *Closing of Chapter 11 Cases.*

After an Estate has been fully administered, the Reorganized Debtors or Plan Administrator shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

WEIL:\97098143\1\47019.0003

5.15.    *Notice of Effective Date.*

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.16.    *Separability.*

Notwithstanding the combination of the separate plans of reorganization for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtors, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

# ARTICLE VI  DISTRIBUTIONS.

6.1.    *Distributions Generally.*

One or more Disbursing Agents shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

6.2.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests.  The Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, shall have no obligation to recognize any transfer or designation of such Claims or Interests occurring after the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure Amounts or assumption disputes, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

6.3.    *Date of Distributions.*

(a)    Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as otherwise determined in accordance with the Plan, including, without limitation, the treatment provisions of Article IV of the Plan, or as soon as practicable thereafter; provided, that the Disbursing Agent shall from time to time determine subsequent distribution dates to the extent they determine them to be appropriate.

(b)    In the event that the Debtors pursue the Sale Transaction, the Plan Administrator shall reserve an amount sufficient to pay holders of Disputed Administrative Expense Claims and Disputed Priority Tax Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  After the resolution of all Disputed Administrative Expense Claims and Disputed Priority Tax Claims, the Plan Administrator shall treat any amounts that were reserved for Disputed Administrative Expense Claims and Disputed Priority Tax Claims that do not become Allowed Claims as Net Cash Proceeds.

31

6.4.    ***Disbursing Agent.***

All distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Reorganized Debtors or Plan Administrator shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Reorganized Debtors or Plan Administrator) with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtors', Reorganized Debtors', or Wind Down Co's, as applicable, books and records.  The Reorganized Debtors or Plan Administrator shall cooperate in good faith with the applicable Disbursing Agent (if other than the Reorganized Debtors or Plan Administrator) to comply with the reporting and withholding requirements outlined in Section 6.19 of the Plan.

6.5.    ***Rights and Powers of Disbursing Agent.***

(a)    From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against and Interests in the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.  No holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.

(b)    A Disbursing Agent shall be empowered to (i) effect all reasonable actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

6.6.    ***Expenses of Disbursing Agent.***

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' and other professional fees and expenses) on or after the Effective Date shall be paid in Cash.

6.7.    ***No Postpetition Interest on Claims.***

Except as otherwise provided in the Plan, the Confirmation Order, the DIP Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Commencement Date; provided, that if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

6.8.    *Delivery of Distributions.*

(a)    Subject to Bankruptcy Rule 9010, all distributions to any holder or permitted designee, as applicable, of an Allowed Claim or Interest shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims or Interests on behalf of the Debtors. A holder of a First Lien Claim may designate an affiliated designee or a designee under common management to receive any New Equity Interests to be issued to such holder pursuant to the First Lien Claim Equity Distribution. In the event that any distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until such Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest. Nothing herein shall require the Disbursing Agent to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, assist such holders or permitted designees, as applicable, in complying with Section 6.19 of the Plan.

(b)    Notwithstanding the foregoing, all distributions of Cash on account of First Lien Claims or Second Lien Claims, if any, shall be deposited with the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent, as applicable, for distribution to holders of First Lien Claims or Second Lien Claims in accordance with the terms of the Prepetition Credit Agreement, the Prepetition Second Lien Credit Agreement and the Prepetition Intercreditor Agreement. All distributions other than of Cash on account of First Lien Claims or Second Lien Claims, if any, may, with the consent of the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent, be made by the Disbursing Agent directly to holders of First Lien Claims and Second Lien Claims in accordance with the terms of the Plan, the Prepetition First Lien Credit Agreement, the Prepetition Second Lien Credit Agreement and the Prepetition Intercreditor Agreement. To the extent the Prepetition First Lien Administrative Agent or the Prepetition Second Lien Administrative Agent effectuates, or is requested to effectuate, any distributions hereunder, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent shall be deemed a "Disbursing Agent" for purposes of the Plan.

6.9.    *Distributions after Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.10.    *Unclaimed Property.*

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtors until such time as a distribution becomes deliverable or holder accepts distribution, or such distribution reverts back to the Debtors, Reorganized Debtors, or Wind Down Co, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of three hundred and sixty-five (365) days from the date of distribution. After such date all unclaimed property or interest in property shall revert to the Reorganized Debtors or Wind Down Co, as applicable, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

6.11.    *Time Bar to Cash Payments.*

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors or Wind Down Co, as applicable, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

6.12.    *Manner of Payment under Plan.*

Except as otherwise specifically provided in the Plan, at the option of the Debtors, the Reorganized Debtors, or Plan Administrator, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

6.13.    *Satisfaction of Claims.*

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.14.    *Fractional Stock and Notes.*

If any distributions of New Equity Interests pursuant to the Plan would result in the issuance of a fractional share of New Equity Interests, then the number of shares of New Equity Interests to be issued in respect of such distribution will be calculated to one decimal place and rounded up or down to the closest whole share (with a half share or greater rounded up and less than a half share rounded down). The total number of shares of New Equity Interests to be distributed in connection with the Plan shall be adjusted as necessary to account for the rounding provided for in this Section 6.14. No consideration shall be provided in lieu of fractional shares that are rounded down. Neither the Reorganized Debtors, nor the Disbursing Agent shall have any obligation to make a distribution that is less than one (1) share of New Equity Interests.

6.15.    *Minimum Cash Distributions.*

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; provided, that if any distribution is not made pursuant to this Section 6.15, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

6.16.    *Setoffs and Recoupments.*

The Debtors, the Reorganized Debtors, or Wind Down Co, as applicable, or such entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors, the Reorganized Debtors, or the Wind Down Co may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or Reorganized Debtor or its successor of any

WEIL:\97098143\1\47019.0003

claims, rights, or Causes of Action that a Debtor or Reorganized Debtor or its successor or assign may possess against the holder of such Claim.

6.17.    ***Allocation of Distributions between Principal and Interest.***

Except as otherwise required by law (as reasonably determined by the Reorganized Debtors or Wind Down Co), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

6.18.    ***No Distribution in Excess of Amount of Allowed Claim.***

Except as provided in Section 6.7 of the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

6.19.    ***Withholding and Reporting Requirements.***

(a)    *Withholding Rights.*    In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms.*    Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by the Reorganized Debtors or Wind Down Co (which Entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Entity) Form W-8.  If such request is made by the Reorganized Debtors or Wind Down Co, the Disbursing Agent, or such other Entity designated by the Reorganized Debtors, Wind Down Co, or Disbursing Agent and the holder fails to comply before the earlier of (i) the date that is one hundred and eighty (180) days after the request is made and (ii) the date that is one hundred and eighty (180) days after the date of distribution, the amount of such distribution shall irrevocably revert to the applicable Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property.

6.20.    ***Hart-Scott-Rodino Antitrust Improvements Act.***

Any New Equity Interests to be distributed under the Plan to an Entity required to file a premerger notification and report form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976,

as amended, to the extent applicable, shall not be distributed until the notification and waiting periods applicable under such Act to such Entity have expired or been terminated.

## ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS.

7.1.    *Objections to Claims.*

The Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, shall exclusively be entitled to object to Claims. After the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed. Any objections to proofs of Claim shall be served and filed on or before the later of (a) one-hundred and eighty (180) days after the Effective Date, and (b) on such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, upon a motion by the Reorganized Debtors or Plan Administrator, as applicable, that is filed before the date that is one-hundred and eighty (180) days after the Effective Date. The expiration of such period shall not limit or affect the Debtors', the Reorganized Debtors', or the Plan Administrators', as applicable, rights to dispute Claims asserted in the ordinary course of business other than through a proof of Claim.

7.2.    *Resolution of Disputed Claims.*

On and after the Effective Date, the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court, other than with respect to Fee Claims.

7.3.    *Payments and Distributions with Respect to Disputed Claims.*

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.4.    *Distributions after Allowance.*

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in this Plan, without interest, as provided in Section 7.9 of the Plan. Such distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

7.5.    *Disallowance of Claims.*

Except to the extent otherwise agreed to by the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, as determined by a Final Order, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable.

7.6.    *Estimation of Claims.*

The Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, may (a) determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court and (b) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim; provided, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

7.7.    *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

7.8.    *Claim Resolution Procedures Cumulative.*

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.9.    *Interest.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date, except as provided in Section 6.7 of the Plan.

7.10.    *Insured Claims.*

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies.  To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

## ARTICLE VIII    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

8.1.    *General Treatment.*

(a)    As of and subject to the occurrence of the Effective Date and solely with respect to the Reorganization Transaction, all executory contracts and unexpired leases to which any of the

WEIL:\97098143\1\47019.0003

Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in section 5.7(a) of the Plan; (v) is identified in section 8.4 of the Plan; or (vi) is identified for assumption on the Assumption Schedule included in the Plan Supplement. Solely with respect to the Sale Transaction, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, assumed and assigned, or rejected by the Successful Bidder in accordance with the applicable purchase and sale agreement and the Bidding Procedures Order.

(b)        Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Reorganized Debtors or the Successful Bidder, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Reorganized Debtors or the Successful Bidder, as applicable, in accordance with its terms, except as modified by the provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

8.2.    *Determination of Assumption Disputes and Deemed Consent.*

(a)        Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree. The Debtors or the Wind Down Co, as applicable, shall satisfy all Cure Amounts with the Sale Transaction Proceeds in the event of a Sale Transaction.

(b)        The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule. The Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any), in accordance with the Disclosure Statement Order. **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed and served in accordance with the Disclosure Statement Order**. Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor or any Reorganized Debtor under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor or any Reorganized Debtor, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 8.2(b), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any

38

Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective, provided, that the Debtors or the Reorganized Debtors, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such Assumption Dispute; provided, that the Debtors or the Reorganized Debtors reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Reorganized Debtor).

(e)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

8.3.    *Rejection Damages Claims.*

In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such executory contract or unexpired lease, any Claim for such damages shall be classified and treated in Class 5 (General Unsecured Claims). Such Claim shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective Estates, properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors or the Reorganized Debtors, as applicable, no later than forty-five (45) days after the filing and service of the notice of the occurrence of the Effective Date.

8.4.    *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all insurance policies pursuant to which the Debtors have any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Debtors, Reorganized Debtors or Wind Down Co, as applicable, and shall continue in full force and effect thereafter in accordance with their respective terms. All other insurance policies shall vest in the Reorganized Debtors.

8.5.    *Intellectual Property Licenses and Agreements.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall, with the consent of the Requisite First Lien Lenders (which consent shall not be unreasonably withheld), be assumed by the Debtors and Reorganized Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with Section 8.1 of the Plan. Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

8.6.    *Tax Agreements.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, any tax sharing agreements to which the Debtors are a party (of which the principal purpose is the allocation of taxes) in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and, to the extent the Debtors determine, with the consent of the Requisite First Lien Lenders (which consent shall not be unreasonably withheld), that such agreements are beneficial to the Debtors, shall be assumed by the Debtors and Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms, unless any such tax sharing agreement (of which the principal purpose is the allocation of taxes) otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with Section 8.1 of the Plan. Unless otherwise noted hereunder, all other tax sharing agreements to which the Debtors are a party (of which the principal purpose is the allocation of taxes) shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

8.7.    *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

WEIL:\97098143\1\47019.0003

8.8.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

8.9.    *Reservation of Rights.*

(a)    The Debtors, with the consent of the Requisite First Lien Lenders, which consent may not be unreasonably withheld, may amend the Assumption Schedule and any cure notice until the Business Day immediately prior to the commencement of the Confirmation Hearing in order to (i) add, delete, or reclassify any executory contract or unexpired lease or amend a proposed assignment and/or (ii) amend the proposed Cure Amount; provided, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, the Debtors' right to amend such schedules and notices shall be extended to the Business Day immediately prior to the adjourned date of the Confirmation Hearing, with such extension applying in the case of any and all subsequent adjournments of the Confirmation Hearing.  The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)    Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors, Reorganized Debtors, or Wind Down Co or their respective affiliates have any liability thereunder.

(c)    Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and the Reorganized Debtors under any executory or non-executory contract or any unexpired or expired lease.

(d)    Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

# ARTICLE IX  CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.

9.1.    *Conditions Precedent to Confirmation of Plan.*

The following are conditions precedent to entry of the Confirmation Order:

(a)    the Disclosure Statement Order shall have been entered and shall be in full force and effect and no stay thereof shall be in effect;

(b)    the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed;

(c)    the RSA shall not have been terminated and shall be in full force and effect; and

41

(d)      the DIP Order and the DIP Documents shall be in full force and effect in accordance with the terms thereof, and no event of default shall have occurred and be continuing thereunder.

9.2.    *Conditions Precedent to Effective Date.*

(a)      The following are conditions precedent to the Effective Date of the Plan with respect to both the Reorganization Transaction and the Sale Transaction:

(i)      the Confirmation Order shall have been entered and shall be in full force and effect and no stay thereof shall be in effect;

(ii)      no event of default under the DIP Documents shall have occurred or be continuing and an acceleration of the obligations or termination of the DIP Lenders' commitments under the DIP Documents shall not have occurred;

(iii)      all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(iv)      all applicable governmental, regulatory and/or third-party approvals and consents, including FCC approval and Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained (including approval of the FCC Long Form Applications), not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(v)      the RSA shall not have been terminated and shall be in full force and effect, and no notice shall have been delivered in accordance with the RSA that, upon expiration of a cure period, would give rise to a Lender Termination Event (as defined in the RSA; and

(vi)      all accrued and unpaid Restructuring Expenses shall have been paid in Cash to the extent invoiced at least two (2) business days prior to the Effective Date (or such shorter period as the Debtors may agree).

(b)      The following are additional conditions precedent to the Effective Date of the Plan solely with respect to the Reorganization Transaction:

(i)      the Amended Organizational Documents shall have been filed with the appropriate governmental authority, as applicable;

(ii)      the Special Warrant Agreement shall have been executed and delivered, and any conditions precedent to effectiveness contained therein have been satisfied or waived in accordance therewith; and

(iii)      the New First Lien Credit Documents and the New Exit Facility Credit Documents, shall (i) have been (or deemed) executed and delivered, and any conditions

42

precedent to effectiveness contained therein have been satisfied or waived in accordance therewith, (ii) be in full force and effect and binding upon the relevant parties; and (iii) contain terms and conditions consistent in all material respects with the RSA.

(c)    The following are additional conditions precedent to the Effective Date of the Plan solely with respect to the Sale Transaction:

(i)    the applicable purchase agreement(s) shall (i) have been executed and delivered, and any conditions precedent contained to effectiveness therein have been satisfied or waived in accordance therewith, (ii) be in full force and effect and binding upon the relevant parties; and (iii) contain terms and conditions consistent in all material respects with the RSA.

(d)    Notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the occurrence of the applicable conditions precedent to the Effective Date; provided, that to the extent a condition precedent (a "**Prerequisite Condition**") may be required to occur prior to another condition precedent (a "**Subsequent Condition**") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to a Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

9.3.    *Waiver of Conditions Precedent.*

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent in Section 9.1 and Section 9.2 of the Plan may be waived in writing by the Debtors with the prior written consent of the Requisite First Lien Lenders, which consent shall not be unreasonably withheld (and, solely with respect to the condition set forth in Section 9.1(d) and 9.2(a)(ii) of the Plan, with the consent of the DIP Agent, such consent not to be unreasonably withheld) without leave of or order of the Bankruptcy Court.  If the Plan is confirmed for fewer than all of the Debtors as provided for in Section 5.16 of the Plan, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur as to such Debtors.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

9.4.    *Effect of Failure of a Condition.*

If the conditions listed in Section 9.2 of the Plan are not satisfied or waived in accordance with Section 9.2(c)(i) of the Plan on or before the first Business Day that is more than sixty (60) days after the date on which the Confirmation Order is entered or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, the Requisite First Lien Lenders, or any other Entity.

## ARTICLE X    EFFECT OF CONFIRMATION OF PLAN.

10.1.    *Vesting of Assets.*

(a)    On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all remaining property of the Debtors' Estates shall vest in the Reorganized Debtors or the Wind Down Co, as applicable, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan, the Confirmation Order, the New First Lien Credit Documents, or the New Exit Facility Credit Documents. On and after the Effective Date, the Reorganized Debtors may take any action, including, without limitation, the operation of its businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

(b)    On the Effective Date and solely with respect to the Sale Transaction, all property of the Debtors' Estates shall vest in the Wind Down Co free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan, the Confirmation Order, and the applicable purchase agreement.

10.2.    *Binding Effect.*

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders (a) were Impaired or Unimpaired under the Plan; (b) were deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

10.3.    *Discharge of Claims and Termination of Interests.*

Upon the Effective Date, if the Reorganization Transaction occurs, and in consideration of the distributions to be made hereunder, except as otherwise expressly provided under the Plan, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interest, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors against the Debtors, the Reorganized Debtors, or any of their Assets or property, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

10.4.    *Term of Injunctions or Stays.*

Unless otherwise provided under the Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall

remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.5. ***Injunction.***

(a) **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim or Interest extinguished, discharged, or released pursuant to the Plan.**

(b) **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, or the Wind Down Co, or the property of any of the Debtors, the Reorganized Debtors, or the Wind Down Co; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, or the Wind Down Co, or the property of any of the Debtors, the Reorganized Debtors, or the Wind Down Co; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Wind Down Co, or the property of any of the Debtors, the Reorganized Debtors, or the Wind Down Co; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Reorganized Debtors, or the Wind Down Co, or against property or interests in property of any of the Debtors, the Reorganized Debtors, or the Wind Down Co, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c) **Each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.**

(d) **The injunctions in this Section 10.5 shall extend to any successors of the Debtors, the Reorganized Debtors and the Wind Down Co, and their respective property and interests in property.**

45

10.6.    *Releases.*

(a)    **Estate Releases**.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties will be deemed expressly, conclusively, absolutely, unconditionally, irrevocably and forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Wind Down Co, the Reorganized Debtors, and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co or Reorganized Debtors (as the case may be), or the Estates, or their respective successors, predecessors, assigns, and representatives and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, contract, tort, by statute, violations of federal or state securities law, or otherwise, that the Debtors, the Wind Down Co or Reorganized Debtors (as the case may be), or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date from, in whole or in part, the Debtors, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Prepetition First Lien Credit Documents, the Prepetition Super Senior Credit Documents, the Forbearance Agreement (as defined in the RSA), the DIP Documents, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the RSA, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation of any documents or transactions in connection with any of the foregoing, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 10.6(a) shall be construed to release the Released Parties from gross negligence, willful misconduct, or fraud as determined by a Final Order; provided, further, that nothing in this Section 10.6(a) shall be construed to release the obligations of Vector SPV (as defined in the Prepetition First Lien Credit Agreement) arising under the Vector Subordinated Note (as defined in the Prepetition First Lien Credit Agreement).  The Debtors, the Reorganized Debtors and their Estates, and the Wind Down Co shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 10.6(a) against each of the Released Parties.

(b)    **Consensual Releases by Holders of Impaired Claims**.

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect or becomes effective after the Effective Date or (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released

WEIL:\97098143\1\47019.0003

Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed expressly, conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by:

      (i)      the holders of Impaired Claims who voted to accept the Plan;

      (ii)      the Consenting First Lien Lenders; and

      (iii)      with respect to any Entity in the foregoing clauses (i) and (ii), such Entity's (x) predecessors, successors and assigns, (y) subsidiaries, affiliates, managed accounts or funds, managed or controlled by such Entity and (z) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing entities are providing releases.

in each case, from any and all Claims, Interests, or Causes of Action whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, contract, tort, by statute, violation of federal or state securities law, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising prior to the Effective Date from, in whole or in part, the Debtors, the restructuring, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Prepetition First Lien Credit Documents, the Prepetition Super Senior Credit Documents, the Forbearance Agreement (as defined in the RSA), the DIP Documents, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the RSA, the Definitive Documents, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from gross negligence, willful misconduct, or fraud as determined by a Final Order.  The Persons and Entities in (i) through (iii) of this Section 10.6(b) shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 10.6(b) against each of the Released Parties.

      10.7.    *Exculpation.*

      To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors; the negotiation and pursuit of the Disclosure Statement, the RSA, the Reorganization Transaction or the Sale Transaction, as applicable, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of Securities under or in connection with the Plan; or the transactions in furtherance of any of the foregoing; provided, that nothing in this Section 10.7 shall be construed to release or exculpate an Exculpated Party from gross negligence, willful misconduct, or fraud as determined

WEIL:\97098143\1\47019.0003

by a Final Order; **provided, further,** that nothing in this Section 10.7 shall be construed to release the obligations of Vector SPV (as defined in the Prepetition First Lien Credit Agreement) arising under the Vector Subordinated Note (as defined in the Prepetition First Lien Credit Agreement).

10.8.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right, with the consent of the Required First Lien Lenders, which consent shall not be unreasonably withheld, to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

10.9.    *Retention of Causes of Action/Reservation of Rights.*

Except as otherwise provided in Sections 10.5, 10.6, and 10.7 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of their Estates or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtors including actions arising under chapter 5 of the Bankruptcy Code.  Except as provided in any order entered by the Bankruptcy Court, the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.  Notwithstanding the foregoing, the Debtors and the Reorganized Debtors shall not retain any Claims or Causes of Action released pursuant to the Plan against the Released Parties.

10.10.    *Solicitation of Plan.*

As of and subject to the occurrence of the Confirmation Date:  (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) the Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

10.11.    *Corporate and Limited Liability Company Action.*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (a) those set forth in Sections 5.5 and 5.6 of the Plan; (b) the performance of the RSA; and (c) all other actions contemplated by the Plan (whether to occur before, on,

or after the Effective Date), in each case, in accordance with and subject to the terms hereof.  All matters provided for in the Plan involving the corporate, limited liability company or partnership structure of the Debtors or the Reorganized Debtors, and any corporate, limited liability company or partnership action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors, managers, limited partners or officers of the Debtors or the Reorganized Debtors.  On or (as applicable) before the Effective Date, the authorized officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name and on behalf of the Reorganized Debtors, including, but not limited to: (i) the Amended Organizational Documents; (ii) the New First Lien Credit Agreement; (iii) the New Exit Facility Credit Agreement; (iv) any purchase and sale agreement in connection with the Sale Transaction; and (v) any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Section 10.11 shall be effective notwithstanding any requirements under non-bankruptcy law.

## ARTICLE XI  RETENTION OF JURISDICTION.

11.1.    *Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(d)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)    to resolve disputes concerning Disputed Claims or the administration thereof;

(f)    to hear and determine all Fee Claims and Restructuring Expenses;

(g)    to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code;

(h)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(j)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(k)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(m)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)     to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(p)     to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

(q)     to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(r)     to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

(s)     to enter one or more final decrees closing the Chapter 11 Cases; and

(t)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

11.2.    ***Courts of Competent Jurisdiction.***

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

WEIL:\97098143\1\47019.0003

## ARTICLE XII MISCELLANEOUS PROVISIONS.

12.1.    *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Reorganized Debtors shall pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code with the Chapter 11 Cases, or until such time as a final decree is entered closing the Chapter 11 Cases, a Final Order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Chapter 11 Cases is entered.

12.2.    *Substantial Consummation of the Plan.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.3.    *Plan Supplement.*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Documents included in the Plan Supplement will be posted at the website of the Debtors' notice, claims, and solicitation agent.

12.4.    *Request for Expedited Determination of Taxes.*

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the dissolution of the Debtors.

12.5.    *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust, or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan (whether to one or more of the Reorganized Debtors or otherwise), (d) the grant of collateral under the New Exit Facility and the New First Lien Credit Facility, and (e) the issuance, renewal, modification, or securing of indebtedness  by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

12.6.    *Amendments.*

(a)      *Plan Modifications.*  Subject to the terms of the RSA, (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtors may, upon order of the Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to this Plan and subject to the reasonable consent of the Requisite First Lien Lenders, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)      *Other Amendments.*  Subject to the terms of the RSA, before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

12.7.    *Effectuating Documents and Further Transactions.*

Each of the officers, managers, limited partners or members of the Reorganized Debtors is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such reasonable actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.8.    *Revocation or Withdrawal of Plan.*

Subject to the terms of the RSA, the Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date.  If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtors or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission of any sort by the Debtors, any Consenting First Lien Lenders, or any other Entity.  This provision shall have no impact on the rights of the Consenting First Lien Lenders or the Debtors, as set forth in the RSA, in respect of any such revocation or withdrawal.

12.9.    *Dissolution of Statutory Committees.*

On the Effective Date, any statutory committee (a "**Committee**") formed in these Chapter 11 Cases shall dissolve and, on the Effective Date, each member (including each officer, director, employee, or agent thereof) of such Committee and each professional retained by such Committee shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on such Committee, the Plan, or the Chapter 11 Cases, except with respect to any matters concerning any Fee Claims held or asserted by any professional retained by such Committee.

WEIL:\97098143\1\47019.0003

12.10.  *Severability of Plan Provisions.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors (as the case may be), and (c) nonseverable and mutually dependent.

12.11.  *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof; provided, however, that corporate or entity governance matters relating to any Debtors or Reorganized Debtors shall be governed by the laws of the state of incorporation or organization of the applicable Debtors or Reorganized Debtors.

12.12.  *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.13.  *Dates of Actions to Implement the Plan.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.14.  *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtors.

12.15.  *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

WEIL:\97098143\1\47019.0003

12.16.  *Successor and Assigns.*

        The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.17.  *Entire Agreement.*

        On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.18.  *Exhibits to Plan.*

        All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.19.  *Notices.*

        All notices, requests, and demands hereunder to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered as follows:

    (a)       If to the Debtors or the Reorganized Debtors:

        Fusion Connect, Inc.,
        210 Interstate North Parkway, Suite 300,
        Atlanta, Georgia 30339
        Attn: James P. Prenetta, Jr., Executive Vice President and General Counsel
        Email: JPrenetta@fusionconnect.com

           -and-

        Weil, Gotshal & Manges LLP
        767 Fifth Avenue
        New York, New York 10153
        Attn:   Gary T. Holtzer
               Sunny Singh
               Gaby Smith
        Telephone: (212) 310-8000
        Email:  gary.holtzer@weil.com
                sunny.singh@weil.com
                gaby.smith@weil.com

    (b)       If to the Consenting First Lien Lenders:

        Davis Polk & Wardwell LLP
        450 Lexington Avenue
        New York, NY 10017

Attn: Damian S. Schaible
Adam L. Shpeen
Email: damian.schaible.davispolk.com
adam.shpeen@davispolk.com

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors, Reorganized Debtors, and Wind Down Co, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

WEIL:\97098143\1\47019.0003

Dated:    July 1, 2019

**FUSION CONNECT, INC.**
**FUSION BCHI ACQUISITION LLC**
**FUSION NBS ACQUISITION CORP.**
**FUSION LLC**
**FUSION MPHC HOLDING CORPORATION**
**FUSION MPHC GROUP, INC.**
**FUSION CLOUD COMPANY LLC**
**FUSION CLOUD SERVICES, LLC**
**FUSION CB HOLDINGS, INC.**
**FUSION COMMUNICATIONS, LLC**
**FUSION TELECOM, LLC**
**FUSION TEXAS HOLDINGS, INC.**
**FUSION TELECOM OF KANSAS, LLC**
**FUSION TELECOM OF OKLAHOMA, LLC**
**FUSION TELECOM OF MISSOURI, LLC**
**BIRCAN HOLDINGS, LLC**
**FUSION MANAGEMENT SERVICES LLC**
**FUSION PM HOLDINGS, INC.**

By: */s/ James P. Prenetta, Jr.*
     Name: James P. Prenetta, Jr.
     Title:   Executive Vice President and
     General Counsel

**FUSION TELECOM OF TEXAS LTD., L.L.P.**

**BY: FUSION TEXAS HOLDINGS, INC., AS**
**LIMITED PARTNER**

By: */s/ James P. Prenetta, Jr.*
     Name: James P. Prenetta, Jr.
     Title:   Executive Vice President and
     General Counsel

**<u>Exhibit A</u>**

**Equity Allocation Mechanism**

***To Be Filed Separately***