**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                               :

In re                                 :        **Chapter 11**
                                 :

**FUSION CONNECT, INC.,** *et al.*,    :        **Case No. 19-11811 (SMB)**
                                 :

           **Debtors.**[1]          :        **(Jointly Administered)**
                                 :

---------------------------------------------------------------X

### ORDER (I) APPROVING (A) BIDDING PROCEDURES AND (B) ASSUMPTION AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF

Upon the motion, dated June 4, 2019 (ECF No. 36) (the "**Motion**"),[2] of Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, and 365 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York* (the "**Sale Guidelines**"), for entry of an order (i) approving the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**; (ii) authorizing the Debtors to

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corp. (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568);  Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The chief executive office of the Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.

designate a stalking horse bidder (a "**Stalking Horse Bidder**" and such bid, a "**Stalking Horse Bid**") and offer such Stalking Horse Bidder certain bid protections; (iii) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' business (the "**Bid Deadline**"), authorizing and scheduling an auction (the "**Auction**"), and scheduling a hearing with respect to the approval of a proposed sale transaction (the "**Sale Hearing**"); (iv) authorizing and approving the form and manner of notice of the sale of the Debtors' business, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**"); (v) approving the procedures set forth in the Bidding Procedures Order (the "**Assumption and Assignment Procedures**") for the assumption and assignment of the Debtors' executory contracts and unexpired leases (the "**Assigned Contracts**") and the determination of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving the form and manner of notice to each relevant non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contract Counterparties**") regarding the Debtors' potential assumption and assignment of certain executory contracts and unexpired leases of the Debtors and of the Debtors' calculation of the Cure Costs, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "**Cure Notice**"); and (vii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein as set forth in the affidavit of service filed with respect thereto (ECF No. 65); and such notice having been adequate and appropriate

2

under the circumstances, and it appearing that no other or further notice need be provided; and the

Court having reviewed the Motion and the Singh Declaration filed contemporaneously therewith;

and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**");

and upon the record of the Hearing; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that

the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and

all parties in interest; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.     Jurisdiction and Venue.    Consideration of the Motion and the relief

requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

B.     Statutory and Legal Predicates.    The statutory and legal predicates for the

relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004, and 6006, Local Rules 6004-1, 6005-1, and 6006-1, and the Sale Guidelines.

C.     Bidding Procedures.    The Debtors have articulated good and sufficient

business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are

fair, reasonable, and appropriate.  The Bidding Procedures are reasonably designed to promote a

competitive and robust bidding process to generate the greatest level of interest in the Debtors'

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To
the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the
extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

business resulting in the highest or otherwise best offer.  The Bidding Procedures comply with the requirements of Local Rule 6004-1.

D.        Designation of Stalking Horse Bid.  The Debtors have articulated good and sufficient business reasons for the Court to authorize the Debtors to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement, **subject to further Court approval,** in accordance with the Bidding Procedures.  **[SMB: 7/3/19]**

E.        Stalking Horse Bid Protections.  The Debtors have articulated good and sufficient business reasons for the Court to authorize the Debtors to offer Stalking Horse Bid Protections in accordance with the Bidding Procedures **subject, however, to further Court approval**. **[SMB: 7/3/19]**

F.        Assumption and Assignment Procedures.  The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures, including the form of Sale Notice attached hereto as **Exhibit 2** and the form Cure Notice attached hereto as **Exhibit 3**, are fair, reasonable, and appropriate.  The Assumption and Assignment Procedures provide an adequate opportunity for all Contract Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

G.        Cure Notice.  The Cure Notice, the form of which is attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

4

H.      <u>Notice</u>.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto. No further notice is required.

I.      <u>Relief is Warranted</u>.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is granted as set forth herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

**The Bidding Procedures**

3.      The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby approved.

4.      The Bidding Procedures are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Debtors' business and the Auction.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

5.      The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and all parties in interest.

5

6.      The Debtors are authorized to take all reasonable actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Order and the Bidding Procedures.

### *Objections to Sale Transaction*

7.      If the Debtors elect to proceed with a Sale Transaction pursuant to the Debtors' chapter 11 plan of reorganization (the "**Plan**"), the Debtors will seek the entry of an order authorizing and approving, among other things, the Sale Transaction in which all or some of the assets of the Debtors or the Debtors' business will be sold to the applicable Successful Bidder at a hearing before the Bankruptcy Court to be held on **October 1, 2019 at 10:00 a.m.** (the "**Sale Hearing**"), which may be adjourned by the Debtors in accordance with the terms of the Bidding Procedures.  The objection deadline for any Sale Transaction to be approved at the Sale Hearing will be **September 23, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

8.      Objections to the Sale Transaction (each, a "**Sale Objection**"), must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served in accordance with the Case Management

6

Order by the applicable deadline set in accordance with this Order.  In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by the objection date specified in the notice; provided that, the Debtors may extend such deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment and in consultation with the Consultation Parties.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.

9.      Each Successful Bidder shall appear at the Sale Hearing and be prepared, if necessary, to have a representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

10.     Any party who fails to timely file with the Court and serve on the Objection Notice Parties a Sale Objection may be forever barred from asserting any Sale Objection to the applicable sale, or to the consummation and performance of a Sale Transaction contemplated by a purchase or investment agreement between the Debtors and a Successful Bidder, including the transfer of the Debtors' business to a Successful Bidder, free and clear of all claims and interests pursuant to section 1141(c) of the Bankruptcy Code.  Failure to object shall constitute consent for the purposes of section 1141(c) of the Bankruptcy Code.

**Sale Notice**

11.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved, and no other or further notice of the Sale Transaction, the Auction, the Sale Hearing or the Sale Objection Deadline shall be required if the Debtors serve and publish such notice, in the

7

manner provided in the Bidding Procedures and this Order. The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

### Assumption and Assignment Procedures

12.     The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

13.     The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby approved.

14.     The Cure Notice is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' intent to assume and assign the Assigned Contracts in connection with a Sale Transaction and constitutes adequate notice thereof, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Order.

15.     The Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties at least twenty (20) days before the Sale Objection Deadline, which shall be specified in the Cure Notice.  Service of the Cure Notice in accordance with this Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts.  As soon as

WEIL:\97049902\8\47019.0003

reasonably practicable after filing the Cure Notice, the Debtors shall post a copy of the Cure Notice on the website for the chapter 11 cases maintained by the Debtors' claims and noticing agent.

16.    In accordance with the Bidding Procedures, each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a Sale Transaction including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party (such information, "**Adequate Assurance Information**").

17.    The Debtors shall provide or cause to be provided to applicable Contract Counterparties Adequate Assurance Information on a strictly confidential basis. Contract Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether the adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any Adequate Assurance Objection (as defined herein) filed by the Contract Counterparty; provided that, if a Contract Counterparty seeks to disclose confidential, non-public information included in the Adequate Assurance Information, it shall request Court authority to redact such information, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Assigned Contracts (if different from the Successful Bidder), or ordered by the Court.

18.    Objections, if any, to any proposed Cure Costs (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance**

9

**Objection**") must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served in accordance with the Case Management Order.  In addition to being filed with the Court, any such responses or objections must be served on the Objection Notice Parties, in addition to any such other parties as the Court may order, so as to be received by the objection deadline specified in the Cure Notice.

19.     Any Cure Objection or Adequate Assurance Objection in respect of an Assigned Contract must be filed and served by the Sale Objection Deadline.  If a timely Cure Objection or Adequate Assurance Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at a hearing scheduled prior to any scheduled closing of a Sale Transaction.

20.     To the extent the Debtors identify, at any time after the Cure Notice is served, additional contracts to be assumed and assigned to a Successful Bidder, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "**Supplemental Cure Notice**," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Exhibit 3**).  Any Cure Objection

WEIL:\97049902\8\47019.0003

with respect to Cure Costs set forth in a Supplemental Cure Notice must be filed within ten (10) days of service of that Supplemental Cure Notice.

21.    If no timely Cure Objection is filed and served in respect of an Assigned Contract, the Cure Cost identified on the Cure Notice or a Supplemental Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract.  Any party failing to timely file a Cure Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, and a Successful Bidder.

22.    If no timely Adequate Assurance Objection is filed and served with respect to an Assigned Contract or a Successful Bidder, the Debtors will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code.

23.    Further, if no timely Cure Objection or Adequate Assurance Objection is filed and served with respect to an Assigned Contract, the relevant Contract Counterparty shall be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder.

24.    Absent entry of an order approving the Sale Transaction, the Assigned Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

25.    The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure

11

Cost is due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

### General Provisions

26.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

27.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

28.     The Debtors are authorized to take all reasonable steps necessary or appropriate to carry out this Order.

29.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:    **July 3rd,** 2019
       New York, New York

                                      **/s/ STUART M. BERNSTEIN**
                                      THE HONORABLE STUART M. BERNSTEIN
                                      UNITED STATES BANKRUPTCY JUDGE

WEIL:\97049902\8\47019.0003

## **Exhibit 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------- X
                                            :
In re                                       :          Chapter 11
                                            :
FUSION CONNECT, INC., et al.,               :          Case No. 19-11811 (SMB)
                                            :
                Debtors.¹                    :          (Jointly Administered)
                                            :
---------------------------------------------------------------- X
```

## BIDDING PROCEDURES

### Overview

On June 3, 2019, Fusion Connect, Inc. ("**Fusion**") and its debtor subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). These chapter 11 cases have been consolidated for procedural purposes under the lead case: *In re Fusion Connect, Inc., et al.*, Case No 19-11811 (SMB).

On [_], 2019, the Bankruptcy Court entered an order (ECF No._) (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Bidding Procedures**") for the consideration of the highest or otherwise best bid for the Debtors' business on the terms and conditions set forth herein.[2]

The Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Debtors' domestic business (the "**U.S. Business**"), Canadian business (the "**Canadian Business**") or the U.S. Business and the Canadian Business on a consolidated basis, pursuant to a plan of reorganization (or pursuant to an order of the Bankruptcy Court approving such potential Sale Transaction); (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a potential Sale Transaction at the Sale Hearing (each as defined herein).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corp. (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478). The Debtors' principal offices are located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]    All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.

**Reservation of Rights**

**Except as otherwise set forth herein, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the UCC and the Secured Parties, to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; provided that the Debtors shall not be authorized to make material modifications of these Bidding Procedures without further order of the Court. The Debtors may, in consultation with the Consultation Parties, provide reasonable accommodations to any potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order. All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline). All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis to assert that the Debtors have violated these Bidding Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.**

**Fiduciary Out**

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law (the "**Fiduciary Out**").

Notwithstanding anything to the contrary or any other provision in these Bidding Procedures other than the Fiduciary Out, (a) if any Successful Bid provides sufficient cash consideration (the "**Cash Consideration Amount**") to satisfy in full (i) all claims arising under the DIP Credit Agreement ("**DIP Claims**") (and any claims arising under or in connection with the Prepetition Super Senior Credit Agreement to the extent such claims do not become DIP Claims); (ii) all administrative claims, priority tax claims, or other priority claims; (iii) all other secured claims exclusive of the claims arising under or in connection with the Prepetition First Lien Credit Agreement and the Prepetition Second Lien Credit Agreement; (iv) all claims arising under or in connection with the Prepetition First Lien Credit Agreement; (v) the expected costs associated with the wind-down of the Debtors' estates in accordance with a wind-down budget acceptable to the Requisite First Lien Lenders, then the consent rights of the Secured Parties provided for herein shall automatically be deemed consultation rights, and (b) the Debtors shall not designate a Stalking Horse Bid or select a Successful Bid or Back-Up Bid without the prior written consent of the Secured Parties unless such Bid provides cash consideration greater than the Cash Consideration Amount; provided, that, nothing in these Bidding Procedures shall prejudice the rights of the Prepetition First Lien Lenders to argue that they shall not be required to accept non-cash proceeds of any Sale Transaction in satisfaction of their claims arising under or in connection with the Prepetition First Lien Credit Agreement.

**Summary of Important Dates**

| Key Event | Deadline |
|---|---|
| Deadline to Submit Non-Binding Indications of Interest | **July 16, 2019 at 4:00 p.m. (prevailing Eastern Time)** |

2

| | |
|---|---|
| Deadline to Submit Bids | **September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | **September 12, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Auction, if necessary, to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 | **September 13, 2019 at 10:00 a.m. (prevailing Eastern Time)** |
| Deadline to File Notice of (a) Successful Bid and Back-Up Bid and (b) Identity of Successful Bidder and Back-Up Bidder | **1 business day following conclusion of the Auction** |
| Deadline to File Objections to (a) Sale Transaction, (b) Cure Costs, and (c) Adequate Assurance of Future Performance | **September 23, 2019 at 4:00 p.m. (prevailing Eastern Time)** |
| Sale Hearing | **October 1, 2019 at 10:00 a.m. (prevailing Eastern Time)** |

## **Fusion Segments to be Acquired**

The Debtors' operations are comprised of the U.S. Business and the Canadian Business. Parties may submit bids for (i) the U.S. Business only, (ii) the Canadian Business only,[3] or (iii) the U.S. Business and the Canadian Business on a consolidated basis, in accordance with the terms and conditions set forth herein.

## **Due Diligence**

The Debtors have posted copies of all material documents related to the Debtors' assets to the Debtors' confidential electronic data room (the "**Data Room**"). To access the Data Room, a party must submit to the Debtors' advisors:

(A)     an executed confidentiality agreement in form and substance that is customary and reasonably satisfactory to the Debtors (unless such party is already a party to an existing customary confidentiality agreement with the Debtors that is reasonably acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)     sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine, in their reasonable business judgment, that the interested party (i) has the financial wherewithal to consummate a Sale Transaction, and (ii) intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors shall be a "Potential Bidder." As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; provided, that such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, in consultation with Consultation Parties (as defined herein), including that a Potential Bidder does not become a Qualified Bidder, these Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement or the

---

[3] For the avoidance of doubt, a sale of the assets of any non-debtor entities will not be entitled to any relief under the Bankruptcy Code.

WEIL:\97057305\5\47019.0003

Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading. The Debtors may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment and in consultation with the Consultation Parties, that certain information in the Data Room is sensitive, proprietary or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a Sale Transaction.

Until the Bid Deadline, and except as otherwise provided herein, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bidding Procedures) that the Debtors believe in their reasonable business judgment to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors' investment bankers, PJT Partners, Inc. (Attn: Brent Herlihy (herlihy@pjtpartners.com), Meera Satiani (satiani@pjtpartners.com), and Joel Hanson (hanson@pjtpartners.com)). In the event that any such additional information is in written form and provided to a Potential Bidder, the Debtors shall simultaneously provide such additional information to all other Potential Bidders, as well as the Stalking Horse Bidder, if any, and Greenhill and Davis Polk. Unless prohibited by law or otherwise determined by the Debtors in consultation with the Consultation Parties, the availability of additional due diligence to a Potential Bidder may be terminated if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Bidding Procedures are terminated, (iii) the Potential Bidder breaches any obligations under its confidentiality agreement or (iv) the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors, in the reasonable business judgment of the Debtors after consulting with the Consultation Parties.

## Designation of Stalking Horse Bidder

Designation of Stalking Horse Bidder. The Debtors may, with the prior written consent of the Secured Parties (as defined herein), which may be withheld in their sole discretion, and in consultation with the UCC (as defined herein), designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder.  To the extent the Debtors, after receiving the prior written consent of the Secured Parties, designate a Stalking Horse Bidder, the Debtors shall promptly upon execution of a Stalking Horse Agreement, and in no event more than one (1) calendar day following such execution, file with the Bankruptcy Court, serve on the Objection Notice Parties, and cause to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at Debtors' claims agent's website at https://cases.primeclerk.com/fusionconnect, a notice that contains information about the Stalking Horse Bidder, the Stalking Horse Bid, and attaches the proposed Stalking Horse Agreement (the "**Notice of Stalking Horse Bidder**").

Stalking Horse Bid Protections.    The Debtors may, in consultation with the  Consultation Parties, **and subject to Court approval** (i) establish initial overbid minimum and subsequent bidding increment requirements; (ii) offer the Stalking Horse Bidder a break-up fee in an amount agreed to by the Debtors, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion (a "**Termination Payment**"); and (iii)

4

provide other appropriate and customary protections to a Stalking Horse Bidder that are reasonably acceptable to the Consultation Parties or otherwise approved by the Court (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**"). The Stalking Horse Bid Protections shall be described in detail, including the amount and calculation of such Stalking Horse Bid Protections, in the Notice of Stalking Horse Bidder.**[SMB: 7/3/19]**

<u>Objections to Designation of Stalking Horse Bidder</u>.  Any objections (each, a "**Stalking Horse Objection**") to the designation of a Stalking Horse Bidder, including any Stalking Horse Bid Protections pursuant to the terms and provisions of a Stalking Horse Agreement, must (i) be in writing; (ii) state the name and address of the objecting party (unless such party is the U.S. Trustee or a Consultation Party); and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties[4] within seven (7) calendar days after the filing of the Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**").

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed designation of a Stalking Horse Bidder and Stalking Horse Bid Protections will not be approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors, with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, or by order of the Bankruptcy Court.

If no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Agreement in accordance with the Bidding Procedures, the Debtors shall file a Certificate of No Objection and submit ~~an~~ **a proposed** Order approving the Stalking Horse Bid Protections to the Court.**[SMB: 7/3/19]**

For all purposes under the Bidding Procedures, a Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid. Subject to the other provisions of these Bidding Procedures, in the event that a Stalking Horse Bid is the only Qualified Bid received by the Debtors by the Bid Deadline, the Stalking Horse Bidder may be deemed the Successful Bidder.

## **Non-Binding Indications of Interest**

Parties interested in purchasing the Debtors' businesses are encouraged to submit an indication of interest to the Debtors by **July 16, 2019 at 4:00 p.m. (prevailing Eastern Time)** in writing (each a "**Non-Binding**

---

[4]  The Objection Notice Parties are: (a) The Debtors, Fusion Connect, Inc., 420 Lexington Avenue, Suite 1718, New York, New York 10170 (Attn: James Prenetta); (b) Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer; Sunny Singh; and Gaby Smith); (c) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Richard Morrissey, Esq. and Susan Arbeit, Esq.); (d) Counsel to Wilmington Trust, N.A., as the DIP Agent, Prepetition Bridge Agent and Prepetition First Lien Agent, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois, 60602 (Attn: Michael D. Messersmith); (e) Counsel to the Ad Hoc Group of First Lien Lenders, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible and Adam L. Shpeen); and (f) Cooley LLP, 55 Hudson Yards, New York, New York 1001-2157 (Attn: Cathy Hershcopf and Robert Winning).

WEIL:\97057305\5\47019.0003

Indication of Interest"). Non-Binding Indications of Interest should be sent to the Debtors' investment bankers, PJT Partners, Inc. (Attn: Michael O'Hara (ohara@pjtpartners.com), John Singh (singhj@pjtpartners.com), Brent Herlihy (herlihy@pjtpartners.com), Meera Satiani (satiani@pjtpartners.com), and Joel Hanson (hanson@pjtpartners.com)).

Submitting a Non-Binding Indication of Interest by the deadline listed herein does not obligate the interested party to consummate a transaction, submit a formal bid or to participate in the bidding process, nor does it cause such party to be deemed to be a Potential Bidder.  It also does not exempt such party from having to submit a Qualified Bid by the Bid Deadline (as defined below) or comply with these Bidding Procedures to participate in any subsequent Auction, all as described below. For the avoidance of doubt, a party that does not submit a Non-Binding Indication of Interest is not precluded from submitting a Qualified Bid by the Bid Deadline.

## **Bid Deadline**

A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than **September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"); provided, that the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and the Stalking Horse Bidder, if any.  **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.**  Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the following Debtor representatives:

| Weil, Gotshal & Manges LLP | PJT Partners, Inc. |
|---|---|
| Fusionbids@weil.com | Michael O'Hara |
| Gary T. Holtzer | (Ohara@pjtpartners.com) |
| (Gary.Holtzer@weil.com) | John Singh |
| Howard Chatzinoff | (Singhj@pjtpartners.com) |
| (Howard.Chatzinoff@weil.com) | Brent Herlihy |
| Sunny Singh | (Herlihy@pjtpartners.com) |
| (Sunny.Singh@weil.com) | Meera Satiani |
| Naomi Munz | (Satiani@pjtpartners.com |
| (Naomi.Munz@weil.com) | Joel Hanson |
| Gaby Smith | (Hanson@pjtpartners.com) |
| (Gaby.Smith@weil.com) | |

## **Consultation Parties**

Throughout the bidding process, the Debtors and their advisors will regularly and timely consult with the (i) Davis Polk & Wardwell LLP ("**Davis Polk**") and Greenhill & Co., LLC ("**Greenhill**"), as advisors to the Ad Hoc Group of First Lien Lenders (the "**Secured Parties**"); and (ii) Cooley LLP and AlixPartners, the advisors to the Official Committee of Unsecured Creditors (the "**UCC**", together with its advisors and the Secured Parties, the "**Consultation Parties**").

The Debtors shall promptly provide copies of all Bids (as defined below) and Non-Binding Indications of Interest received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after such Bid or Non-Binding Indications of Interest is received; provided, that the Consultation Parties must treat such Bids or Non-Binding Indications of Interest and any related information as confidential and

WEIL:\97057305\5\47019.0003

shall not publicly disclose such information without the written consent of the Debtors and the applicable Bidder.

For the avoidance of doubt, any consultation rights (but, subject to the Fiduciary Out, not any consent rights) afforded to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment. Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not be affected by these Bidding Procedures or the Bidding Procedures Order. All rights of the UCC and Secured Parties with respect to any potential Sale Transaction, the Restructuring Support Agreement, or the DIP Financing are fully reserved.

### Form and Content of Qualified Bid

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "**Bid**"). To constitute a "**Qualified Bid**" a Bid must include, at a minimum, the following:[5]

i.    Proposed Agreement. Each Bid must include an executed agreement (the "**Proposed Agreement**") for the acquisition of all or some of the assets of the Debtors or newly issued equity interests of the reorganized Debtors pursuant to the Debtors' chapter 11 plan (the "**Plan**"), together with a redline comparing the Proposed Agreement to the form agreement distributed by the Debtors to Potential Bidders, which form shall be reasonably acceptable to the Secured Parties.

ii.   Purchase Price; Form of Consideration; Cash Requirements; Assumed Liabilities; Credit Bid. Each Bid must clearly set forth, as applicable:

(a)    Purchase Price. Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**").

(b)    Cash Requirements. Each Bid must provide cash consideration for the payment of any applicable Termination Payment in cash in full and, with respect to any Credit Bid (as defined herein), must also include a cash component sufficient to pay all obligations secured by senior liens on the Debtors' assets.

(c)    Assets / Business Purchased: Each Bid must, in the Proposed Agreement, clearly identify the particular assets/business the Potential Bidder seeks to acquire from the Debtors. With respect to a Bid for acquiring the Debtors' U.S. Business and Canadian Business on a consolidated basis, the Bid must clearly state the allocation of Purchase Price between the U.S. Business and the Canadian Business.

(d)    Assumed Liabilities: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder

---

[5]    The Debtors may, in consultation with the Consultation Parties, waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction so long as any such waiver is not materially inconsistent with these Bidding Procedures.

seeks to assume. For the avoidance of doubt, a Qualified Bid may include a bid for less than all or substantially all of the Debtors' liabilities.

(e)     <u>Credit Bid</u>. Persons or entities holding a perfected security interest in the Debtors' assets may submit a credit bid (a "**Credit Bid**") on such assets, to the extent permitted by applicable law, any Bankruptcy Court orders and the documentation governing the Debtors' prepetition or postpetition secured credit facilities, and subject to any applicable limitations set forth in the Prepetition Intercreditor Agreements.[6]

iii.     <u>Unconditional Offer / Contingencies</u>. A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of a Sale Transaction. A Bid may not be materially less favorable than the terms of the Stalking Horse Agreement, if any.

iv.     <u>Proof of Financial Ability to Perform</u>. Each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a Sale Transaction including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' discretion in consultation with the Consultation Parties, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors or the Consultation Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate a Sale Transaction in a timely manner.

v.     <u>Designation of Contracts and Leases</u>. Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing a Sale Transaction; <u>provided</u>, that the Bid may allow for the Potential Bidder to remove executory contracts and unexpired leases from the list of contracts to be assumed and assigned any time prior to the closing of a Sale Transaction; <u>provided</u> <u>further</u>, that to the extent the Debtors identify any additional executory contracts or unexpired leases after the

---

[6] "**Prepetition Intercreditor Agreements**" means that certain Super Senior Intercreditor Agreement, dated as of May 9, 2019 among Wilmington Trust, National Association, as super senior representative and Wilmington Trust, National Association, as first lien representative and that certain Intercreditor Agreement, dated as of May 4, 2018 among Wilmington Trust, National Association, as super senior representative and an additional first lien obligations representative, Wilmington Trust, National Association, as first lien representative and Wilmington Trust, National Association, as second lien representative.

Bid is submitted, the Bid may allow for the Potential Bidder to add such executory contracts and unexpired leases to the list of contracts to be assumed and assigned any time from and after the Bid is submitted. As soon as reasonably practicable, the Debtors shall provide notice to the applicable contract counterparties of such removal and/or addition of such counterparty's executory contracts and unexpired leases.

vi.     Required Approvals. A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (ii) of the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iii) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel and counsel to the Secured Parties to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

vii.    Disclosure of Identity and Corporate Authorization. Each Bid must (i) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transaction), and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bidding Procedures.

viii.   No Entitlement to Expense Reimbursement or Other Amounts. With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

ix.     Disclosure of Connections. Each Bid must fully disclose any connections or agreements with the Debtors, any other known Potential Bidder and/or any officer or director of the Debtors.

x.      Joint Bids. The Debtors may, in consultation with the Consultation Parties, approve joint Bids in their reasonable discretion on a case-by-case basis.

xi.     Representations and Warranties. Each Bid must include the following representations and warranties:

9

a.      a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable assets prior to submitting its Bid;

b.      a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

c.      a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable assets;

d.      a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

e.      a statement that all proof of financial ability to consummate a Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

f.      a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

xii.      a cash deposit in the amount of five percent (5%) of the enterprise value of the business to be purchased through the Bid, as implied by the Purchase Price (a "**Good Faith Deposit**"), unless otherwise agreed to by the Debtors, in consultation with the Consultation Parties, and a Potential Bidder; provided, that a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid;

xiii.      the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

xiv.      a covenant to cooperate with the Debtors and the Consultation Parties to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

### **Good Faith Deposit**

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors in consultation with the Consultation Parties (the "Escrow Agent") pursuant to a customary and reasonable escrow agreement to be provided by the Debtors. To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right, in consultation with the Consultation Parties, to require that such Qualified Bidder increase its Good Faith Deposit so that it equals five percent

(5%) of the enterprise value of the business to be purchased through the Bid, as implied by the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

### Review of Bids; Designation of Qualified Bids

The Debtors, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their reasonable business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "**Qualified Bid**" and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "**Qualified Bidder**."

By no later than **September 12, 2019** (the "**Qualified Bid Deadline**"), the Debtors shall determine, in their reasonable business judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Debtors may take into consideration the following non-exhaustive factors:

1. the amount of the purchase price and Credit Bid, as applicable, set forth in the Bid (provided that for purposes of evaluating competing bids, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2. the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

3. the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

4. any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

5. the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6. the impact on employees and employee claims against the Debtors;

7. the impact on trade creditors; and

8. any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

11

The Debtors reserve the right, after consulting with the Consultation Parties, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Without the written consent of the Debtors after consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; provided, that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

For the avoidance of doubt, in the event of a Bid by or on behalf of the DIP Lenders (as defined in the DIP Order)[7] or any of them, the DIP Agent (at the direction of the DIP Requisite Lenders (as defined in the DIP Order)) shall be allowed, to the maximum extent permitted by section 363(k) of the Bankruptcy Code, to "credit bid" up to the full amount of all of the Debtors' DIP Obligations (as defined in the DIP Order). In addition, any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates and the right under applicable nonbankruptcy law to credit bid claims secured by such liens, which, for the avoidance of doubt, includes the Prepetition Super Senior Lenders and the Prepetition First Lien Lenders (each as defined in the DIP Order), shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured. For the avoidance of doubt, the foregoing acknowledgment is without prejudice to any rights of the Creditors' Committee to object to any Credit Bid on any grounds.

### Failure to Receive Qualified Bids Other Than Stalking Horse Bid

If no Qualified Bid (other than the Stalking Horse Bid, if any, which, for the avoidance of doubt, has been designated by the Debtors with the prior written consent of the Secured Parties and in consultation with the UCC) is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held. The Debtors shall also publish such notice on the website of their claims and noticing agent, Prime Clerk LLC (https://cases.primeclerk.com/fusionconnect).

### Auction Procedures

If the Debtors receive two or more Qualified Bids, the Debtors shall conduct the Auction on **September 13, 2019, beginning at 10:00 a.m. (prevailing Eastern Time) at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, or such other later date as may be determined by the Debtors in consultation with the Consultation Parties**. Only a Qualified Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith and in consultation with the Consultation Parties. In addition, professionals and/or other representatives of the Debtors and the Consultation Parties shall be permitted to attend and observe the Auction. Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

The following auction rules shall apply to the Auction to promote a spirited and robust auction (the "**Auction Rules**"). All bids in the Auction will be made and received on an open basis, and all other

---

[7] The "**DIP Order**" means a final order approving the *Motion of Debtors for (I) Authorization (A) To Obtain Postpetition Financing, (B) To Use Cash Collateral, (C) To Grant Liens and Provide Superpriority Administrative Expense Status, (D) To Grant Adequate Protection, (E) To Modify the Automatic Stay; (F) To Schedule a Final Hearing and (II) Related Relief* (ECF No. 17).

WEIL:\97057305\5\47019.0003

bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders. Each Qualified Bidder will be permitted what the Debtors, in consultation with the Consultation Parties, reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded.

Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction for a particular asset or business, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such asset or business; provided, that the Debtors may, in consultation with the Consultation Parties, utilize Auction procedures other than the foregoing procedure for any round of bidding.  To the extent the Debtors conduct multiple auctions for different subgroupings of the Debtors' assets/businesses (each, a "**Sub-Auction**") at any Auction and a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of assets/businesses that may include specific assets/businesses which were the subject of an earlier Sub-Auction.

Pursuant to 18 U.S.C. §§ 156 and 157, bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. Each bidder participating in an Auction will be required to confirm in writing and on the record at an Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) its bid represents a binding, good faith, and bona fide offer to purchase the Assets identified in such bid if selected as the Successful Bidder.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; provided, that parties may speak with clients or parties necessary to place their bid or increase it so long as such individuals are advised of the confidentiality restriction.

If no Qualified Bid exists for acquiring only the U.S. Business or only the Canadian Business, the Debtors shall conduct an Auction for the Debtors' U.S. Business and Canadian Business on a consolidated basis pursuant to the Auction Rules. The Debtors may, in the exercise of their reasonable business judgment, in consultation with the UCC and with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, identify the highest or otherwise best Qualified Bid as the successful bid (a "**Successful Bid**" and the bidder submitting such bid, a "**Successful Bidder**"); provided, however, that the Debtors may identify a Successful Bid without the prior written consent of the Secured Parties if the Successful Bid contemplates cash consideration greater than the Cash Consideration Amount.  The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid as a back-up bid (a "**Back-Up Bid**" and the bidder submitting such bid, a "**Back-Up Bidder**").

If one or more Qualified Bid(s) exist for acquiring only the U.S. Business or only the Canadian Business, then the Debtors shall first conduct a Sub-Auction for each of these businesses that has at least one Qualified Bid pursuant to the Auctions Rules. The Debtors may, in the exercise of their reasonable business judgment, in consultation with the UCC and with the prior written consent of the Secured Parties, which may be

WEIL:\97057305\5\47019.0003

withheld in their sole discretion, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "**Reserve Sub-Auction Bid**" and the bidder submitting such bid, a "**Reserve Sub-Auction Bidder**"). The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction as a back-up bid (each, a "**Back-Up Sub-Auction Bid**" and the bidder submitting such bid, a "**Back-Up Sub-Auction Bidder**"). After the designation of any Reserve Sub-Auction Bid, the Debtors shall conduct an Auction for the Debtors' U.S. Business and Canadian Business on a consolidated basis pursuant to the Auction Rules. If, upon the completion of such Auction, the Debtors, in the exercise of their reasonable business judgment, determine that pursuing a Sale Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result in higher or otherwise better value of the Debtors' businesses than pursuing a Sale Transaction pursuant to the highest or otherwise best Bid received in the Auction of the Debtors' U.S. Business and Canadian Business on a consolidated basis, then the Debtors may, in the exercise of their reasonable business judgment, in consultation with the UCC and with the prior written consent of the Secured Parties, which may be withheld in their sole discretion, declare the Reserve Sub-Auction Bid(s) as Successful Bid(s) (and the Reserve Sub-Auction Bidder(s) as Successful Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)). In the event that the Debtors pursue a Sale Transaction based on a Reserve Sub-Auction Bid the Debtors declared as the Successful Bid that contemplates the Successful Bidder's purchase of only the Debtors' Canadian Business, then the Debtors may reorganize around the U.S. Business pursuant to a plan of reorganization.

Within one (1) business day after the Auction, each Successful Bidder shall submit to the Debtors and the Secured Parties fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted. A Successful Bid may not be assigned to any party without the consent of the Debtors and in consultation with the Consultation Parties.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors, in consultation with the Consultation Parties, reserve the right to and may reject such Qualified Bid(s) if such Qualified Bid(s), in the Debtors' reasonable business judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Debtors and their estates.

### Post-Auction Process

Within one (1) business day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Bankruptcy Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

Within seven (7) business days after the Auction, the Debtors shall direct the Escrow Agent to return the deposit of any bidder, together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder. Within five (5) business days after the Back-Up Bid Expiration Date, the Debtors shall direct the Escrow Agent to return the deposit of each Back-Up Bidder, together with interest accrued thereon (if any). Upon the authorized return of any such deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

Each Successful Bidder's deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of a Sale Transaction.

In addition to the foregoing, the deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected

14

as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate a Sale Transaction according to these Bidding Procedures.

<u>**Notices Regarding Assumption and Assignment**</u>

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

<u>**Sale Objections and Hearing**</u>

Objections to the Sale Transaction (each, a "**Sale Objection**"), shall (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties (as defined in the in the Bidding Procedures Order) by **September 23, 2019 at 4:00 p.m.** (the "**Sale Objection Deadline**"); provided, that the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment and in consultation with the Consultation Parties. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.

Each Successful Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed transaction.

Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Sale Transaction contemplated by a purchase or investment agreement between the Debtors and each Successful Bidder, including the transfer of assets to such Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 1141(c) of the Bankruptcy Code.

For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in these Bidding Procedures shall, or shall be construed to, in any way amend, impair, prejudice, alter or otherwise modify the terms of any DIP Document or the rights of the DIP Agent or any DIP Lender thereunder (each as defined in the DIP Order).

<u>**Consent to Jurisdiction and Authority as Condition to Bidding**</u>

All bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures,

WEIL:\97057305\5\47019.0003

the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

16

**<u>Exhibit 2</u>**

**Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                                                  :
In re                                             :    **Chapter 11**
                                                  :
**FUSION CONNECT, INC.,** *et al.***,**            :    **Case No. 19-11811 (SMB)**
                                                  :
                    Debtors.[1]                   :    **(Jointly Administered)**
                                                  :
-----------------------------------------------------------------X

## NOTICE OF SALE, BIDDING
## PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On June 4, 2019, Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. 36) (the "**Motion**") for the entry of (i) an order (the "**Bidding Procedures Order**")[2] (a) approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**; (ii) authorizing the Debtors to designate a stalking horse bidder ("**Stalking Horse Bidder**," and such bidder's bid, a "**Stalking Horse Bid**") and offer such bidder certain bid protections identified in the Motion (the "**Stalking Horse Bid Protections**"); (iii) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' business (the "**Bid Deadline**"), scheduling an auction (the "**Auction**"), and scheduling the hearing with respect to the approval of the sale (the "**Sale Hearing**"); (iv) authorizing and approving the form and manner of the Sale Notice; (v) authorizing and approving the Cure Notice to the Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and assignment

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corp. (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568);  Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The chief executive office of the Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable.  Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (vii) granting related relief.

On _____, 2019, the Bankruptcy Court entered the Bidding Procedures Order (ECF No. ___).

## Important Dates and Deadlines

- **Non-Binding Indication of Interest Deadline**. Any person or entity interested in participating in the Auction is encouraged to submit a Non-Binding Indication of Interest on or **before July 16, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Non-Binding Indication of Interest Deadline**").

- **Bid Deadline**. Any person or entity interested in participating in the Auction must submit a Qualified Bid on or **before September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

- **Auction**. An Auction has been scheduled for **September 13, 2019 at 10:00 a.m. (prevailing Eastern Time)**.

- **Sale Objection Deadlines**. Objections to the Sale Transaction, including any objection to the sale of the Debtors' business free and clear of all claims and interests pursuant to section 1141(c) of the Bankruptcy Code must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties by no later than **September 23, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- ***Sale Hearing***. A hearing to approve the Sale Transaction shall be held before the Bankruptcy Court before the Honorable Stuart M. Bernstein on **October 1, 2019 at 10:00 a.m. (prevailing Eastern Time)** (the "**Sale Hearing**").

## Additional Information

Any party interested in submitting a bid should contact the Debtors' investment banker, PJT Partners, Inc., 280 Park Avenue, New York, New York 10017 (Attn: Michael O'Hara (ohara@pjtpartners.com), John Singh (singhj@pjtpartners.com), Brent Herlihy (herlihy@pjtpartners.com), Meera Satiani (satiani@pjtpartners.com), and Joel Hanson (hanson@pjtpartners.com)).

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC, located at https://restructuring.primeclerk.com/fusion.

## Reservation of Rights

Except as otherwise set forth herein and in the Bidding Procedures, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the UCC and the Secured Parties, to modify the Bidding Procedures; waive terms and conditions set forth therein with respect to all Potential

Bidders; extend the deadlines set forth therein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth therein; provided that the Debtors shall not be authorized to make material modifications of the Bidding Procedures without further order of the Court.  The Debtors may, in consultation with the Consultation Parties, provide reasonable accommodations to any potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with the Bidding Procedures and the Bidding Procedures Order.  All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline). All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis to assert that the Debtors have violated the Bidding Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTION, THE PROPOSED SALE TRANSACTION, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE AGREEMENT OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated _____, 2019

_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Proposed Attorneys for Debtors and Debtors in Possession*

**<u>Exhibit 3</u>**

**Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                        :
In re                                   :    **Chapter 11**
                                        :
**FUSION CONNECT, INC.**, *et al.*,     :    **Case No. 19-11811 (SMB)**
                                        :
        **Debtors.**[1]                 :    **(Jointly Administered)**
                                        :
-------------------------------------------------------------X

## NOTICE OF CURE COSTS AND POTENTIAL
## ASSUMPTION AND ASSIGNMENT OF EXECUTORY
## <u>CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On June 4, 2019, Fusion Connect, Inc. and its debtor affiliates, , as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. 36) (the "**Motion**")[2] (a) approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order (the "**Bidding Procedures Order**")[2] (a) approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **<u>Exhibit 1</u>**; (ii) authorizing the Debtors to designate a stalking horse bidder ("**Stalking Horse Bidder**," and such bidder's bid, a "**Stalking Horse Bid**") and offer such bidder certain bid protections identified in the Motion (the "**Stalking Horse Bid Protections**"); (iii) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' business (the "**Bid Deadline**"), scheduling the auction (the "**Auction**"), and scheduling the hearing with respect to the approval of the sale (the "**Sale Hearing**"); (iv) authorizing and approving the form and manner of the Sale Notice; (v) authorizing and approving the Cure Notice to the Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and assignment

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corp. (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568);  Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The chief executive office of the Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

[2]  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable.  Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (vii) granting related relief.

Each of the Assigned Contracts that may be assumed and assigned in connection with a Sale Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

The inclusion of any contract or lease on **Exhibit A** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Notwithstanding the inclusion of any lease or contract on **Exhibit A**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease at any time prior to the consummation of a Sale Transaction.

## Objections

### A.  Cure Objections.

Any objection to the proposed assumption, assignment, or potential designation of an Assigned Contract identified on **Exhibit A**, the subject of which objection is the Debtors' proposed Cure Costs must:

(a)    be in writing;

(b)    state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

(c)    state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d)    conform to the Bankruptcy Rules and the Local Rules;

(e)    be filed with the Court together with proof of service either (i) electronically or (ii) conventionally, as noted below:

    (i)    *Electronic Filing*:  The filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov).

    (ii)    *Conventional Filing*:  The filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, One Bowling Green, New York, NY 10004; the hard copy of the response or

objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF).

(iii)   *All filers:* Those filing electronically as well as those filing conventionally – must provide Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and

(f)   be served upon the Objection Notice Parties listed below so as to be received no later than [_____] **at 4:00 p.m. (prevailing Eastern Time)**:

i.   The Debtors, Fusion Connect, Inc., 420 Lexington Avenue, Suite 1718, New York, New York 10170 (Attn: James P. Prenetta, Jr. Executive vice President and General Counsel);

ii.   Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. and Sunny Singh, Esq.);

iii.   William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Richard Morrissey, Esq. and Susan Arbeit, Esq.);

iv.   Counsel to Wilmington Trust, N.A., as the DIP Agent, Prepetition Super Senior Agent and Prepetition First Lien Agent, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois, 60602 (Attn: Michael D. Messersmith, Esq.);

v.   Counsel to the First Lien Ad Hoc Group, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible and Adam L. Shpeen);

vi.   Counsel to the Ad Hoc Group of Tranche A/Revolving Lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attn: Sandeep Qusba, Esq., Soogy Lee, Esq. and Edward R. Linden, Esq.);

vii.   GLAS Americas LLC and GLAS USA LLC, as Prepetition Second Lien Successor Agent, 3 Second Street, Suite 206, Jersey City, NJ 07311 (Attn: Michael Amato); and

viii.   Cooley LLP, 55 Hudson Yards, New York, New York 1001-2157 (Attn: Cathy Hershcopf and Robert Winning).

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION,**

**THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE ASSIGNED CONTRACT. THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE ASSIGNED CONTRACT UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B. Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of any Assigned Contracts identified on **Exhibit A** to a Successful Bidder must be filed in accordance with the preceding paragraph by **[_____] at 4:00 p.m. (prevailing Eastern Time)**.

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE ASSIGNED CONTRACT. THE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE ASSIGNED CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT OR ANY OTHER DOCUMENT.**

### <u>Sale Hearing</u>

The Debtors will seek to assume and assign the Assigned Contracts at a hearing to approve the Sale Transaction (the "**Sale Hearing**") that is scheduled to commence on **October 1, 2019 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Stuart M. Bernstein, in Room 723 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004. Objections, if any, that cannot otherwise be resolved by the parties, will be heard at a hearing scheduled prior to any scheduled closing of the Sale Transaction, as determined by the Debtors in accordance with the Bidding Procedures Order.

## Additional Information

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, located at https://restructuring.primeclerk.com/fusion.

Dated _____, 2019

           _____

           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York 10153
           Telephone:  (212) 310-8000
           Facsimile:  (212) 310-8007
           Gary T. Holtzer
           Sunny Singh

           *Proposed Attorneys for Debtors and Debtors in Possession*