WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                                            :
In re                                       :    **Chapter 11**
                                            :
**FUSION CONNECT, INC.,** *et al.*,         :    **Case No. 19-11811 (SMB)**
                                            :
             **Debtors.**[1]                :    **(Jointly Administered)**
                                            :
-------------------------------------------------------------X

### NOTICE OF HEARING ON MOTION OF DEBTORS PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE TO EXTEND EXCLUSIVE PERIODS

**PLEASE TAKE NOTICE** that a hearing on the annexed Motion (the "**Motion**")

of Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to

section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), extending the

Debtors' exclusive periods in which to file a chapter 11 plan and solicit acceptances thereof, all as

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568);  Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The principal executive office of the Debtors is located at 210 Interstate North Parkway, Suite 300, Atlanta, Georgia 30339.

more fully set forth in the Motion, will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 723, One Bowling Green, New York New York, 10004 (the "**Bankruptcy Court**") on **September 17, 2019 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399, so as to be filed and received no later than **September 10, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

*[Remainder of Page Intentionally Left Blank]*

2

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: September 3, 2019
     New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

3

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                          :
In re                                     :       **Chapter 11**
                                          :
**FUSION CONNECT, INC., *et al.*,**       :       **Case No. 19-11811 (SMB)**
                                          :
               **Debtors.**[1]            :       **(Jointly Administered)**
                                          :
-------------------------------------------------------------X

## MOTION OF DEBTORS PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE TO EXTEND EXCLUSIVE PERIODS

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") file this motion (the "**Motion**") for entry of an order extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma, LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478). The Debtors' principal offices are located at 210 Interstate North Parkway, Suite 300, Atlanta, Georgia 30339.

acceptances thereof (the "**Exclusive Solicitation Period**" and together with the Exclusive Filing Period, the "**Exclusive Periods**") by 90 days through and including December 30, 2019 and February 28, 2020, respectively.  In support of the Motion, the Debtors respectfully represent as follows:

### Preliminary Statement

1.      In the short period since the Debtors filed their chapter 11 cases on June 3, 2019 (the "**Commencement Date**"), the Debtors have made substantial progress towards the confirmation and consummation of a consensual chapter 11 plan.  Notably, weeks of negotiations have resulted in a consensual global settlement (the "**Global Settlement**") with the First Lien Lender Group[2] and the official committee of unsecured creditors (the "**Creditors'
Committee**") resolving all potential objections of the Creditors' Committee and providing potential cash recoveries to the holders of Allowed General Unsecured Claims.

2.      Contemporaneously herewith, the Debtors filed the *Amended Joint Chapter 11 Plan of Fusion Connect, Inc., and its Subsidiary Debtors* (the "**Amended Plan**") which incorporates the terms of the Global Settlement.  The hearing to consider approval of the Debtors' Disclosure Statement is currently scheduled for September 17, 2019, and if the Disclosure Statement is approved, the solicitation of the Amended Plan is expected to commence shortly thereafter.  The Debtors intend to request that the hearing to confirm the Amended Plan (the "**Confirmation Hearing**") be scheduled for the end of October 2019.[3]  Pursuant to that

---

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Amended Plan or the First Day Declaration (as defined below), as applicable.

[3]     In accordance with the requirements of section 1121(c) of the Bankruptcy Code, the Amended Plan was filed within one-hundred and twenty (120) days of the Commencement Date.  As such, a party in interest should be precluded from filing a competing chapter 11 plan.  Nonetheless, as the Amended Plan has not yet been accepted nor confirmed, the Debtors seek an extension of the Exclusive Periods out of an abundance of caution to facilitate confirmation of the Amended Plan in the near future and to avoid unnecessary cost and disruption to their chapter 11 cases should the Confirmation Hearing be extended.

2

certain Restructuring Support Agreement, dated as of June 3, 2019 (as amended, restated, supplemented, or otherwise modified from time to time, the "**RSA**"), the Amended Plan currently has the support of approximately 85% of holders of First Lien Claims, and the support of the Creditors' Committee, and consequently the Debtors have a confirmable plan in hand.

3.     Additionally, in the three months since the Commencement Date, the Debtors ran a court-approved marketing process (the "**Marketing Process**")[4] to determine whether they will proceed with the Reorganization Transaction or the Sale Transaction, all with the goal of maximizing value for their creditors and stakeholders.  On August 27, 2019, the Debtors filed the *Notice of Election to Pursue Reorganization Transaction and Termination of U.S. Sale Process* (ECF No. 352) (the "**Notice of Election**").  In the Notice of Election, the Debtors stated that (a) the Debtors and their advisors have evaluated the indications of interest received pursuant to the Marketing Process and communicated with numerous potential bidders; (b) based on this analysis, and with the support of each of the Consultation Parties (as defined in the Bidding Procedures Order), the Debtors have decided to terminate the sale process with respect to their U.S. business; (c) the Debtors intend to pursue the Reorganization Transaction; and (d) pursuant to the RSA, the Requisite First Lien Lenders (as defined in the RSA) consent to the Debtors' decision to terminate the Debtors' sale and marketing process for the Debtors' U.S. business and pursue the Reorganization Transaction.

4.     Simultaneously, in the three months since the Commencement Date, the Debtors have also been running an active marketing process for exit financing in connection with

---

[4]     On July 3, 2019, the Court entered the *Order (I) Approving (A) Bidding Procedures and (B) Assumption and Assignment Procedures and (II) Granting Related Relief* (ECF No. 164) (the "**Bidding Procedures Order**") authorizing the Debtors to solicit bids for the Debtors' U.S. and Canadian businesses pursuant to certain procedures set forth in the Bidding Procedures Order.

the Reorganization Transaction (the "**Exit Financing Marketing Process**").  The Debtors intend to continue and conclude the Exit Financing Marketing Process in the coming month.

5.  In addition to gaining the support of approximately 85% of the holders of First Lien Claims and achieving the Global Settlement, the Debtors have worked diligently since the Commencement Date to accommodate and communicate regularly with the Creditors' Committee, the office of the U.S. Trustee (as defined below), regulatory authorities, vendors, landlords, customers, and individual creditors—all while running a complex and heavily regulated business in chapter 11.

6.  The requested 90-day extension of the Exclusive Periods will permit the Debtors and their supporting constituents to solicit and confirm the Amended Plan without the interruption of a competing plan, will not prejudice any parties in interest, and will continue to promote the Debtors' ability to maximize value and successfully emerge from chapter 11.

## Background

7.  On the Commencement Date, each Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 18, 2019, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed the Creditors' Committee.  No trustee or examiner has been appointed in these chapter 11 cases.

8.  An order was entered granting joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

WEIL:\97171679\1\47019.0005

9.      The Debtors commenced these chapter 11 cases on a prearranged basis with the support of in excess of 66 $^2/_3$ % of their prepetition first lien lenders, who have committed to effectuate a restructuring on the terms set forth in the RSA.    The RSA contemplates a debt-to-equity recapitalization transaction and provides for the simultaneous marketing of all or substantially all of the Debtors' assets to the extent such sale represents a higher or better value than the recapitalization transaction.  On July 1, 2019, consistent with their obligations under the RSA, the Debtors filed the *Joint Chapter 11 Plan of Fusion Connect, Inc., and Its Subsidiary Debtors* (ECF No. 146) and contemporaneously herewith the Debtors have filed the Amended Plan.  The Amended Plan currently has the support of approximately 85% of holders of First Lien Claims.

10.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Keith Soldan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (ECF No. 2) (the "**First Day Declaration**"), sworn to and filed on the Commencement Date.

## Jurisdiction

11.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

12.      By this Motion, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors request a 90-day extension of (a) the Exclusive Filing Period through and including December 30, 2019, and (b) the Exclusive Solicitation Period through and including February

5

28, 2020, in each case, without prejudice to the Debtors' right to seek additional extensions of such periods.[5]

13.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

## Basis for Relief

14.      The Exclusive Periods established by Congress were incorporated in the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a chapter 11 plan and enable solicitation of acceptances of the plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans.

15.      Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."). However, the 120-day period "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [petition] date." *Id*. §§ 1121(d)(2)(A), (B).

16.      The primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan. The Debtors have made substantial progress towards this objective through the Global Settlement reached with the First Lien Lender Group and the Creditors' Committee. Following months of negotiation—including numerous consensual extensions to the Debtors' timeline—the estates are now the beneficiary of the Global Settlement, which provides for potential recoveries to otherwise out-of-the-money

---

[5]      The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on October 1, 2019, and November 30, 2019, respectively.

General Unsecured Claims. Terminating the Exclusive Periods at this time would place the Global Settlement and these chapter 11 cases in jeopardy and defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, affording a debtor the full and fair opportunity to formulate and prosecute its proposed chapter 11 plan.

17.     As stated, section 1121(d) of the Bankruptcy Code empowers a Bankruptcy Court to extend the Exclusive Periods "for cause." The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension. The legislative history of section 1121 indicates that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

18.     In exercising its broad discretion to determine whether "cause" exists, the Court should be guided by a variety of factors. *See In re Borders Grp., Inc.*, 460 B.R. 818, 821−22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity). Those factors include, without limitation:

    i.   the size and complexity of the debtor's case;

7

  ii. the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

  iii. the existence of good faith progress towards reorganization;

  iv. the fact that the debtor is paying its bills as they become due;

  v. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

  vi. whether the debtor has made progress in negotiations with its creditors;

  vii. the amount of time which has elapsed in the case;

  viii. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

  ix. whether an unresolved contingency exists.

*Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *see also Borders*, 460 B.R. at 822 (evaluating the nine factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity); *accord In re Express One*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying all of the nine factors as relevant in determining whether cause exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed cause to extend exclusive period based upon certain of the nine factors). The above factors are not the exclusive bases for the exercise of the Court's discretion to extend the Exclusive Periods. *See Adelphia Commc'ns*, 352 B.R. at 586-87.

  19. Application of these standards to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the Debtors' requested extensions of the Exclusive Periods. The extensions are necessary and appropriate for the Debtors to ensure their efforts to promptly emerge from bankruptcy stay on track.

A. **These Chapter 11 Cases Are Large and Complex**

20.      It is well-established that the size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods.  *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.") (citing *Gaines v. Perkins* (*In re Perkins*), 71 B.R. 294, 298 (W.D. Tenn. 1987); *In re Pine Run Trust*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986); *In re United Press International, Inc.*, 60 B.R. 265, 270 (Bankr. D.C. 1986); *In re American Federation of Television and Radio Artists*, 30 B.R. 772, 774 (Bankr. S.D.N.Y. 1983)).

21.      The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.  Moreover, "[t]he large size of a debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." *Texaco*, 76 B.R. at 326.

22.      The size and complexity of these chapter 11 cases, as well as the breadth and depth of regulatory, financial, and legal issues involved therein, warrant the requested extension of the Exclusive Periods.  The Debtors continue to run a service-intensive, complex, and heavily regulated business in chapter 11 to, among other things, preserve the option for a

9

Reorganization Transaction.[6]  These chapter 11 cases are indisputably of the size and complexity

that Congress and courts recognized warranting extensions of the Exclusive Periods as requested.

**B.   The Debtors Require Additional Time To Solicit and Prosecute the Amended Plan**

23.    This is the Debtors' first motion requesting an extension of the Exclusive

Periods.  Notwithstanding the short duration of these cases, the Debtors have made substantial

progress to date.  During the first few months of these chapter 11 cases, the Debtors' primary

focus has been to:  (a) stabilize their business; (b) pursue the Marketing Process to determine if

the Debtors can sell their business as a going concern or should pivot to a Reorganization

Transaction; (c) pursue the Exit Financing Marketing Process; and (d) if possible, seek out and

achieve consensus among their key constituents, including the Creditors' Committee.

24.    To stabilize their business, among other things, the Debtors obtained (and

are effectively implementing) certain relief with respect to their cash management system,

employee compensation and benefit programs, insurance programs, utility providers, taxes, and

critical vendors.  All of these efforts have enabled the Debtors to substantially maintain business

as usual and minimize the disruption often associated with the commencement of chapter 11

cases of this magnitude.

25.    Now, with the Global Settlement, the decision to pursue the

Reorganization Transaction (supported by the First Lien Lender Group and the Creditors'

Committee), the continued Exit Financing Marketing Process, and the anticipated solicitation of

the Amended Plan, the Debtors have demonstrated that they have worked diligently and pursued

all avenues to achieve consensus among their key constituents and prosecute a confirmable

---

[6]    In the past three months, the Debtors have been actively communicating and coordinating with the Federal
Communications Commission on various regulatory issues related to these chapter 11 cases and the
Reorganization Transaction contemplated by the Amended Plan.

WEIL:\97171679\1\47019.0005

chapter 11 plan.  The Debtors will continue to work with all of their stakeholders to the end of achieving a consensual confirmation of the Amended Plan.

26.    In addition to the foregoing, during the first three months of these chapter 11 cases, the Debtors have:

- Established a constructive relationship with the Creditors' Committee and their respective professionals;

- Engaged in good-faith negotiations with the Creditors' Committee, which resulted in the Global Settlement;

- Sought and obtained relief approving up to $59.5 million in debtor-in-possession financing (ECF No. 160);

- Implemented their critical vendor protocol as approved by the Court (ECF No. 134);

- Together with FTI Consulting, Inc., undertaken a comprehensive evaluation of the Debtors' assets and liabilities to evaluate restructuring strategies;

- Filed their respective schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statements of financial affairs, and monthly operating reports;

- Worked with the office of the U.S. Trustee to comply with the U.S. Trustee's operating guidelines and to provide information to the U.S. Trustee's office; and

- Responded to numerous customer, vendor, landlord, and other inquiries related to the status of these cases, specific contract counterparty demands, and other matters related to ongoing operations and the administration of these cases.

27.    Notwithstanding the significant progress made to date, as a precautionary measure, the Debtors seek the relief set out herein to ensure that such considerable progress is not impeded due to a loss of exclusivity.  Under these circumstances, the requested extensions of the Exclusive Periods are necessary and appropriate to afford the Debtors the opportunity to achieve the objectives of chapter 11 as contemplated by section 1121 of the Bankruptcy Code.

WEIL:\97171679\1\47019.0005

**C.  The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands**

28.     Courts may consider practical factors in determining that "cause" exists to extend the Exclusive Periods. *See In re Borders Group, Inc.*, 460 B.R. at 827-28 (noting that it was important for the Court to consider practical factors in refusing to terminate exclusivity). Refusing to grant this Motion and extend the Exclusive Periods at this stage would adversely affect the Debtors' administration of these chapter 11 cases and undo the hard won Global Settlement, thereby extinguishing the economic recovery achieved for the otherwise out-of-the-money General Unsecured Creditors.

29.     The Debtors' relationship with their stakeholders and respective professionals, is transparent, cooperative, and constructive.  The Debtors' conduct in these chapter 11 cases, in particular, and the support of their key stakeholders, demonstrates that the Debtors are acting in a prudent and transparent manner and are not seeking these extensions to delay artificially the administration of these chapter 11 cases.  The Debtors have engaged extensively with the foregoing parties and will continue to do so in an attempt to achieve a fully consensual chapter 11 plan.  The request for extending the Exclusive Periods is not a negotiation tactic.

30.     Finally, this Motion is without prejudice to any party seeking to shorten the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.  See 11 U.S.C. § 1121(d).  As such, no party in interest will be prejudiced if the requested extensions are approved.  Even though the Debtors have achieved the Global Settlement, they are still committed to working constructively with all other constituents to seek a consensual confirmation of the Amended Plan.

WEIL:\97171679\1\47019.0005

### D.  Important Contingencies Must be Resolved by the Debtors

31.     Courts have recognized the need to resolve important contingencies as justification for extending the Exclusive Periods.  *See, e.g., Borders*, 460 B.R. at 826; *Adelphia Commc'ns*, 352 B.R. at 587.  Notwithstanding the significant progress made by the Debtors to date, certain open issues still remain—primarily, the solicitation and prosecution of the Amended Plan and the conclusion of the Exit Financing Marketing Process.

32.     The requested extension of the Exclusive Periods will not prejudice any party in interest, but rather will afford the Debtors a realistic opportunity to consummate a chapter 11 plan—one that incorporates the Global Settlement.  Alternatively, failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to propose a confirmable chapter 11 plan.

### E.  The Debtors Are Making Required Postpetition Administrative Expense Payments

33.     Courts considering an extension of exclusivity also may assess a debtor's liquidity and ability to pay costs and expenses of administration.  *Adelphia Commc'ns*, 352 B.R. at 587; *Texaco*, 76 B.R. at 322.  Here, the Debtors have obtained the liquidity necessary to maintain their business throughout these chapter 11 cases and are paying their administrative expenses as they come due, and will continue to do so.

### F.  Relatively Little Time Has Elapsed Since These Chapter 11 Cases Were Commenced

34.     This is the Debtors' first request for an extension of the Exclusive Periods. Courts in this District have routinely granted requests by debtors to extend their exclusive period to file and solicit a chapter 11 plan.  *See In re Ditech Holding Corp., et al.*, No. 19-10412 (Bankr. S.D.N.Y. June 10, 2019) (ECF No. 685); *In re Tops Holding II Corp., et al.*, No. 18-22279

(Bankr. S.D.N.Y. Oct. 24, 2018) (ECF No. 715) (extending the exclusive period by 120-days); *In re Avaya Inc., et al.*, No. 17-10089 (ECF No. 673) (Bankr. S.D.N.Y. May 5, 2017) (same); *In re Breitburn Energy Partners LP, et al.*, No. 16-11390 (Bankr. S.D.N.Y. Dec. 14, 2016) (ECF No. 844) (same); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007 (Bankr. S.D.N.Y. Nov. 13, 2015) (ECF No. 1838) (same). For all of the reasons set forth above, the facts and circumstances of this case demonstrate that sufficient cause exists to grant the requested relief at this time.

## Conclusion

35. For all of the reasons stated above, the requested extension of the Exclusive Periods is warranted and necessary to afford the Debtors a meaningful opportunity to finalize the chapter 11 reorganization process and build a consensus among their economic stakeholders, all as contemplated by section 1121 of the Bankruptcy Code. Accordingly, the Debtors should be afforded a full, fair, and reasonable opportunity to propose, file, and solicit acceptances of their Amended Plan, and the Exclusive Periods should be extended as requested.

## Notice

36. Notice of this Motion will be provided in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 120) (the "**Case Management Order**"). The Debtors respectfully submit that no further notice is required.

37. No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WEIL:\97171679\1\47019.0005

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: September 3, 2019
      New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\97171679\1\47019.0005

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                     :

In re                            :       **Chapter 11**

                                       :

**FUSION CONNECT, INC.,** *et al.*,   :       **Case No. 19-11811 (SMB)**

                                       :

              **Debtors.**[1]     :       **(Jointly Administered)**

                                       :

-------------------------------------------------------------X

## ORDER PURSUANT TO SECTION 1121(d) OF THE
## BANKRUPTCY CODE EXTENDING THE EXCLUSIVE PERIODS

Upon the motion, dated September 3, 2019 (the "**Motion**")[2] of Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order extending the Debtors' exclusive periods in which to file a chapter 11 plan (the "**Exclusive Filing Period**") and solicit acceptances thereof (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**"), all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma, LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The Debtors' principal offices are located at 210 Interstate North Parkway, Suite 300, Atlanta, Georgia 30339.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties in accordance with the Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

<b>IT IS HEREBY ORDERED THAT:</b>

1.      The Motion is granted to the extent set forth herein.

2.      Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Filing Period in which to file a chapter 11 plan is extended through and including December 30, 2019.

3.      Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Solicitation Period in which to solicit acceptances of their chapter 11 plan is extended through and including February 28, 2020.

4.      The extensions of the Exclusive Periods granted herein are without prejudice to such further requests that may be made pursuant to section 1121(d) of the Bankruptcy Code by the Debtors or any party in interest, for cause shown, upon notice and a hearing.

WEIL:\97171679\1\47019.0005

5.      Nothing herein shall create, nor is intended to create, any rights in favor of or to enhance the status of any claim held by any party.

6.      The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order.

7.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
        New York, New York

_____
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\97171679\1\47019.0005