WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re                                                       :    **Chapter 11**
                                                            :
**FUSION CONNECT, INC.,** *et al.*,                         :    **Case No. 19-11811 (SMB)**
                                                            :
           **Debtors.**[1]                                  :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------X

### NOTICE OF HEARING ON DEBTORS' MOTION FOR (I) APPROVAL OF (A) ENTRY INTO SETTLEMENT AGREEMENT WITH ZAYO GROUP, LLC, (B) ASSUMPTION AND ASSIGNMENT OF BUILDING ACCESS AGREEMENTS, (C) REJECTION OF SPECIFIED DARK FIBER SERVICES AND ASSOCIATED SERVICE ORDER FORMS, (D) TRANSFER OF CERTAIN EQUIPMENT, AND (II) RELATED RELIEF

   **PLEASE TAKE NOTICE** that a hearing on the annexed Motion (the "**Motion**")

of Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma , LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478).  The Debtors' principal offices are located at 210 Interstate North Parkway, Suite 300, Atlanta, Georgia 30339.

sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"),

Rules 6006 and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

**Rules**"), for approval of a settlement agreement (the "**Settlement Agreement**") that resolves

matters relating to certain prepetition agreements between Zayo Group LLC ("**Zayo**") and the

following Debtors: Fusion Communications, LLC (f/k/a Cbeyond Communications, LLC), Fusion

Cloud Company LLC (f/k/a MegaPath Cloud Company LLC), Fusion LLC (f/k/a Network Billing

Systems, LLC), Fusion Cloud Services, LLC (f/k/a Birch Communications, LLC), and Fusion

Connect, Inc., will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy

Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom

723, One Bowling Green, New York New York, 10004 (the "**Bankruptcy Court**") on **December**

**17, 2019 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be

heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections

(the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,

shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court,

including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399

(which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-

ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to

Chambers), in accordance with the customary practices of the Bankruptcy Court and General

Order M-399, to the extent applicable, and shall be served in accordance with General Order M-

399, so as to be filed and received no later than **December 10, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

    **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

    **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: November 25, 2019
   New York, New York

    /s/ Sunny Singh
    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Gary T. Holtzer
    Sunny Singh

    *Attorneys for Debtors*
    *and Debtors in Possession*

WEIL:\97280095\1\47019.0005

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X
                                             :
**In re**                                    :    **Chapter 11**
                                             :
**FUSION CONNECT, INC.,** *et al.*,          :    **Case No. 19-11811 (SMB)**
                                             :
             **Debtors.**[1]                 :    **(Jointly Administered)**
                                             :
--------------------------------------------------------------X

**DEBTORS' MOTION FOR (I) APPROVAL OF (A) ENTRY INTO
SETTLEMENT AGREEMENT WITH ZAYO GROUP, LLC, (B) ASSUMPTION
AND ASSIGNMENT OF BUILDING ACCESS AGREEMENTS, (C) REJECTION OF
SPECIFIED DARK FIBER SERVICES AND ASSOCIATED SERVICE ORDER FORMS,
(D) TRANSFER OF CERTAIN EQUIPMENT, AND (II) RELATED RELIEF**

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

         Fusion Connect, Inc. and its debtor subsidiaries, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully

represent as follows in support of this motion (the "**Motion**"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma, LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478). The principal executive office of the Debtors is located at 210 Interstate North Parkway, Suite 300, Atlanta, Georgia 30339.

### Preliminary Statement[2]

1.      By this Motion, the Debtors seek approval of a settlement (the "**Settlement**") that resolves all matters relating to certain prepetition agreements between Zayo Group LLC ("**Zayo**") and the following Debtors:  Fusion Communications, LLC (f/k/a Cbeyond Communications, LLC) ("**Fusion Communications**"), Fusion Cloud Company LLC (f/k/a MegaPath Cloud Company LLC), Fusion LLC (f/k/a Network Billing Systems, LLC), Fusion Cloud Services, LLC (f/k/a Birch Communications, LLC), and Fusion Connect, Inc. ("**Fusion Connect**") (collectively with Zayo, the "**Parties**").

2.      Specifically, the Settlement pertains to (i) the Master Service Agreement for Dark Fiber Lease, dated September 4, 2007 (the "**Dark Fiber Lease MSA**") pursuant to which Zayo provides Fusion Communications with certain leased fiber services (the "**Leased Fiber Services**"); and (ii) the Indefeasible Right of Use and Master Service Agreement Dark Fibers, dated as of September 4, 2007 (the "**Dark Fiber IRU MSA**," and together with the Dark Fiber Lease MSA, the "**Dark Fiber MSAs**"), pursuant to which Zayo provides Fusion Communications with certain dark fiber services on an indefeasible right of use basis (the "**Dark Fiber IRU Services**" and together with the Leased Fiber Services, the "**Dark Fiber Services**"). In addition to the Dark Fiber MSAs, certain of the Debtors and Zayo are party to a number of other prepetition agreements[3] pursuant to which Zayo provides, among other things,

---

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Settlement Agreement or Third Amended Plan (each as defined herein), as applicable.

[3]    Such agreements include the following:  (i) Master Service Agreement, dated as of April 19, 2013; (ii) Master Service Agreement, dated as of July 12, 2017; (iii) Master Service Agreement, dated as of November 12, 2009; (iv) Master Services Agreement, dated as of April 5, 2005; (v) Master Services Agreement, dated January 23, 2006; (vi) Master Services Agreement, dated as of April 12, 2005; (v) Zayo's standard Master Services Agreement in effect on March 29, 2013; and (vi) Zayo's standard Master Service Agreement, dated as of February 1, 2019.

telecommunications and related infrastructure services, including colocation and interconnect services (collectively, and together with the Dark Fiber MSAs, the "**Fusion MSAs**").

3.      The Settlement Agreement, dated as of November 21, 2019, a copy of which is attached hereto as **Exhibit B** (the "**Settlement Agreement**") is composed of several interdependent parts, including, among other things, (i) the Debtors' rejection of specified services ordered under the Dark Fiber MSAs; (ii) the Debtors' rejection of certain service contracts for the customers specified in Schedule 8 to the Settlement Agreement (the "**Noticed-End User Customers**"); (iii) the transfer of certain equipment and spare parts (the "**Lateral Equipment**") associated with the Dark Fiber Services being terminated that are used to support  end-user customers at 624 locations (the "**Locations**"); (iv) the assumption and assignment of certain building access agreements (the "**BAA's**") used to access and service the Lateral Equipment and provide the rejected Dark Fiber Services to end-user customers; (v) the entry by certain of the Debtors into new service order forms with Zayo for the provision of dark fiber and Ethernet services; and (vi) mutual releases among the Parties.   Importantly, the Settlement resolves certain amounts owed by the Debtors to Zayo under the Fusion MSAs for services provided thereunder by Zayo as of the Commencement Date in the amount of approximately $2.8 million (the "**Bankruptcy Claims**").   In full satisfaction of the Bankruptcy Claims, the Debtors will remit $350,000 (the "**Settlement Payment**") to Zayo within seven (7) calendar days of the Effective Date.[4]  In addition, within seven (7) calendar days of the Effective Date, the Debtors will remit to Zayo the balance, if any, owed to Zayo under the Fusion MSAs for services rendered by Zayo from the Commencement Date (as defined below) through and including the Effective Date (the "**Administrative Claim Payment**").   Finally, Zayo will be

---

[4]     The Settlement Agreement defines "**Effective Date**" as the date upon which the Bankruptcy Court enters a final order approving the Settlement Agreement.

permitted to submit an unsecured claim on account of any damages associated with the rejection of the Dark Fiber Services in an amount not to exceed $5.0 million, which will remain subject to review and reconciliation. For the avoidance of doubt, nothing contained in this Motion or the Settlement Agreement shall prejudice or preclude the right of the Debtors or Litigation Trust, as applicable, to challenge Zayo's asserted rejection damages claim.

4.     As further described herein, the Settlement is a comprehensive solution that will substantially improve the Debtors' overall business operations and liquidity profile, and will also (i) facilitate the Debtors' emergence from chapter 11 by eliminating the Debtors' exposure to burdensome long-term obligations in connection with Dark Fiber Services; (ii) permit the Reorganized Debtors to maintain a critical vendor relationship with Zayo on a go-forward basis, and (iii) provide an alternative solution enabling the Debtors to continue to provide on-going services to existing end-user customers. Accordingly, the Debtors respectfully submit that the relief requested herein should be approved.

5.     This Motion and supporting documentation has been shared with both the First Lien Lender Group and the Creditors' Committee, and the Debtors and their advisors have coordinated with both groups to address questions relating to the relief requested herein. As noted below, the Settlement is supported by the First Lien Lender Group, the ultimate owners of the Reorganized Debtors.

## Relief Requested

6.     Pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6006 and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of New York, the Debtors request (i) authority to (a) enter into and perform under the Settlement Agreement, (b) assume and assign the BAA's to Zayo, (c) reject the Dark

4

Fiber Services as of the Effective Date; (d) reject the specified customer contracts at the locations included in Schedule 8 to the Settlement Agreement; (e) transfer title to the Lateral Equipment to Zayo; and (ii) grant related relief.

7.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

### Jurisdiction

8.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).   This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

9.      On June 3, 2019 (the "**Commencement Date**"), each Debtor commenced with this Court a voluntary case under the Bankruptcy Code.   The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in these chapter 11 cases.   On June 18, 2019, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code (ECF No. 98) (the "**Creditors' Committee**").

10.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

11.      The Debtors commenced these chapter 11 cases on a prearranged basis with the support of more than 66 $^2/_3$% of their prepetition first lien lenders, who have committed to effectuate a restructuring on the terms set forth in that certain Restructuring Support

5

Agreement, dated as of June 3, 2019 (as may be amended, restated, supplemented, or modified from time to time, the "**RSA**").  On November 8, 2019, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Fusion Connect, Inc. and Its Subsidiary Debtors* (ECF No. 557), which currently has the support of approximately eighty-five percent (85%) of holders of First Lien Claims, one hundred percent (100%) of holders of Second Lien Claims, and the Creditors' Committee.

12.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Keith Soldan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (ECF No. 2), sworn to and filed on the Commencement Date.

### Overview of the Settlement and the Compromises Embodied Therein

**A.     Rejection of Dark Fiber Services and Entry Into New Service Order Forms**

13.     In September 2007, Fusion Communications entered into the Dark Fiber MSAs with Zayo, pursuant to which Zayo agreed to provide Fusion Communications with the Leased Fiber Services and the Dark Fiber IRU Services for an initial term of twenty (20) years. In accordance with the Settlement Agreement, Fusion Communications has agreed to, among other things, reject each of the service order forms associated with the Dark Fiber IRU Services and the Leased Fiber Services and subsequently enter into new service order forms with Zayo that replace the services provided thereunder with shorter-term services (either five (5) years or thirty six (36) months depending on the replacement service).  Specifically, on the Effective Date, the Debtors and Zayo will execute the (i) service order form attached to  Schedule 6 of the Settlement Agreement for dark fiber services (the "**New Leased Dark Fiber Services**") and (ii) service order form attached to the  Schedule 7 of the Settlement Agreement for Ethernet services (the "**New Ethernet Services**").

6

14.     Unlike the original orders placed by Fusion Communications for the Dark Fiber IRU Services and the Leased Fiber Services, each of which had an initial term of twenty (20) years, the New Leased Dark Fiber Services will have an initial term of sixty (60) months and the New Ethernet Services will have an initial term of thirty-six (36) months.  In connection with the Debtors' rejection of the Dark Fiber Services, the Debtors provided discontinuance of service notices to the one-hundred two (102) end-user customers listed in Schedule 8 of the Settlement Agreement.[5]  As of December 5, 2019, these customers will no longer be receiving services from the Reorganized Debtors, and will be free to seek replacement services from the Reorganized Debtors or from a new third-party provider.

**B.      Assumption and Assignment of BAA's and Transfer of Lateral Equipment**

15.     Fusion Communications currently utilizes the Lateral Equipment to provide various services to end-user customers at the Locations.  The underlying right to house the Lateral Equipment—and to access, repair, and replace the Lateral Equipment as necessary— is governed by the BAA's listed in Schedule 5 of the Settlement Agreement.  The original purchase price of the Lateral Equipment was approximately $2.0 million.[6]  Based upon the Debtors' extensive review of its existing agreements with Zayo (including the services offered thereunder), the Debtors have determined that the Lateral Equipment is currently significantly under-utilized.  The Lateral Equipment, which consists primarily of BTI 7060 chassis with PVX12/2 cards, are specialized assets serving a number of markets, and, therefore, have immediate value to Zayo as an established communications provider with bandwidth

---

[5]   The Debtors notified such end-user customers of the discontinued services on October 1, 2019.  The Debtors will also provide these end-user customers with notice of this Motion, and a notice of rejection in the form attached as Exhibit D.

[6]   The Debtors purchased the Lateral Equipment approximately four years prior to the date of filing this Motion, and the net book value of the Lateral Equipment is de Minimis.

infrastructure services across the United States.    When title to the Lateral Equipment is transferred to Zayo, it will have the immediate right to operate the Lateral Equipment and, under the terms of the Settlement Agreement, is obligated to use the Lateral Equipment to deliver the New Ethernet Services to end-user customers of Fusion Communications.

16.    In connection with the transfer of the Lateral Equipment, Zayo requires authorized access to the buildings that house the Lateral Equipment to access and repair the Lateral Equipment as necessary.    To facilitate such access, the Debtors seek authority to assume and assign 624 BAA's to Zayo on the Effective Date.[7]    Transfer of title to the Lateral Equipment will be effective as of the Effective Date.

17.    The following table summarizes the key terms of the Settlement Agreement.

| SUMMARY OF MATERIAL TERMS OF SETTLEMENT AGREEMENT[8] | |
| --- | --- |
| **Building Access Agreements (Section 7)** | ▪ On the Effective Date, FCL shall, at its sole cost and expense, cause each of the BAAs listed in <u>Schedule 5</u> of the Settlement Agreement to be assigned to Zayo pursuant to section 365 of the Bankruptcy Code. Zayo has paid approximately $10,000 associated with the BAA's listed on <u>Schedule 5</u> for FCL and FCL agrees to reimburse Zayo for any such amounts within thirty (30) days of the Effective Date. Customer represents that the monthly recurring charge for the BAA's listed on <u>Schedule 5</u> is $52,304.00. Customer shall be responsible for all amounts due and owing under the BAA's until 11:59 p.m. on the day prior to the Effective Date. Zayo shall be responsible for all costs arising under the BAA's from 12:01 a.m. on the Effective Date. For the avoidance of doubt, any costs, liabilities, losses |

---

[7]    The Cure Amounts (as defined in the Plan) owed under the BAA's are nominal.  Under the terms of the Settlement Agreement, counterparties will not be required to assert proposed Cure Amounts, as the Reorganized Debtors will either pay any pre-Effective Date amounts owed under the BAA's in the ordinary course, or reimburse Zayo for any pre-closing amounts it may have paid on the Debtors' behalf.

[8]    Capitalized terms used in this chart but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.  To the extent there is an inconsistency between this summary and the Settlement Agreement, the Settlement Agreement shall govern.

8

| | |
|---|---|
| | and expenses (including reasonable attorneys' fees and costs) arising from a monetary or non-monetary default under any of the BAA's listed on <u>Schedule 5</u>, whether known or unknown, matured or unmatured, existing on or prior to the Effective Date, shall be the sole and exclusive responsibility of the bankruptcy estate of FCL and FCL shall indemnify, defend, and hold Zayo harmless from and against any such costs, liabilities, losses, expenses, or damages. FCL represents and warrants that it has made available to Zayo executed copies of the BAA's and any attachments, amendments, or supplements thereto that are in its possession. If, after the Effective Date, Zayo is invoiced or otherwise held liable for any costs relating to the BAA's in excess of $55,000.00 per month, other than the monthly recurring revenue increases specifically contemplated by the BAA's that may take effect after the Effective Date, Customer shall work with Zayo to resolve such costs and, to the extent such costs are not barred by the Chapter 11 Cases, shall, during the original term of the BAA reimburse Zayo for such costs within thirty (30) days of receipt of an invoice detailing such amounts. |
| **Rejection of Dark Fiber MSA (Section 4)** | ▪ On the Effective Date, the Debtors shall reject all existing Dark Fiber Services and shall enter into new service agreements with Zayo for the New Leased Dark Fiber Services and the New Ethernet Services on terms of sixty (60) months and thirty-six (36) month, respectively. |
| **Lateral Equipment (Section 6)** | ▪ On the Effective Date, FCL shall execute and deliver to Zayo a Bill of Sale, substantially in the form attached to the Settlement Agreement as <u>Exhibit A</u>, transferring all of its right, title and interest in the Lateral Equipment to Zayo. Other than the costs contemplated by the BAA's listed in <u>Schedule 5</u> of the Settlement Agreement, Zayo's obligations to secure maintenance support for the Lateral Equipment, and any taxes that may arise in connection with the transfer of the Lateral Equipment to Zayo, Zayo will not incur any costs by accepting title to the Lateral Equipment. Customer acknowledges that except for the BAAs listed on <u>Schedule 5</u> of the Settlement Agreement, Zayo is not assuming from Customer any contracts or agreements related to maintaining, supporting, |

9

| | |
|---|---|
| | accessing or otherwise continuing to operate the Lateral Equipment. Customer agrees to indemnify, defend, and hold Zayo harmless from any and all third party claims, demands, costs, liabilities, losses, expenses, and damages (including reasonable attorneys' fees and costs arising out of, or in connection with, any claim related to the Lateral Equipment arising prior to the Effective Date. In addition, if, after the Effective Date, Zayo is invoiced or otherwise held liable for any costs relating to installation, housing and/or support of the Lateral Equipment that relate to contractual commitments made by Customer prior to the Effective Date, Customer shall work with Zayo to resolve such costs and, to the extent such costs are not barred by the Chapter 11 Cases, shall reimburse Zayo for such costs within thirty (30) days of receipt of an invoice detailing such amounts. |
| **New Leased Dark Fiber Services (Section 5(a))** | ▪ On the Effective Date, the service order form attached to <u>Schedule 6</u> of the Settlement Agreement shall come into force and effect and the sixty (60) month service term contemplated thereby shall automatically commence and the associated service order shall thereafter automatically renew for additional one (1) year periods until terminated by Zayo or Customer upon written notice to the other Party at least ninety (90) days prior to the end of the then current service term. The monthly recurring charge ("**MRC**") for such services shall be $95,000.00 (exclusive of taxes, fees and surcharges). |
| **New Ethernet Services (Section 5(b))** | ▪ On the Effective Date, the service order form attached to <u>Schedule 7</u> of the Settlement Agreement shall come into force and effect and the thirty-six (36) month service term contemplated thereby shall automatically commence and the associated service order shall thereafter automatically renew for additional one (1) year periods until terminated by Zayo or Customer upon written notice to the other Party at least ninety (90) days prior to the end of the then current service term. The MRC for the New Ethernet Services shall be $252,086.00 (exclusive of taxes, fees and surcharges). |
| **Discontinuance of Service for Noticed End-User Customers** | ▪ On October 1, 2019, the Debtors provided Notice that existing services would be discontinued to the |

10

WEIL:\97175478\10\47019.0003

| | |
|---|---|
| | Noticed End-User Customers. Should the Effective Date occur prior to December 5, 2019, Zayo agrees that it will not take any action to terminate the services provided to any of the Noticed End-User Customers prior to the earlier of (i) 11:59 p.m. on December 5, 2019, (ii) the date that Customer notifies Zayo in writing (which notice may be by email) that the Debtors are no longer providing services to the Noticed End-User Customer, or (iii) an order for new Ethernet Service is made with Zayo that replaces the service provided to the Noticed End-User Customer. |
| **Assumed Services (Section 12)** | ▪ The services listed on Schedule 9 to the Settlement Agreement as well as the related agreement, supplements, modification, addenda or amendments thereto, shall be assumed by Customer pursuant to section 365 of the Bankruptcy Code. |
| **Mutual Releases (Section 14)** | ▪ Zayo and the Customer will enter into mutual releases (the "**Mutual Releases**") that release and discharge any claims, causes of action, or obligations arising from or relating to the Fusion MSAs, the rejection of the Dark Fiber Services and the Restructuring. Notwithstanding the foregoing, neither Customer nor Zayo is releasing the other for any claims that it may have against the Canadian subsidiaries of the other party. |
| **Settlement Payment (Section 2)** | ▪ Within seven (7) calendar days of the Effective Date, Customer shall wire transfer to Zayo the sum of $350,000.00. The Settlement Payment shall be in immediately available funds. The Settlement Payment, together with the Rejection Damages Claim, shall be in full satisfaction of all amounts owed by Customer to Zayo under the Fusion MSAs. |
| **Administrative Claim Payment (Section 3)** | ▪ Within seven (7) calendar days of the Effective Date, the Debtors shall wire transfer to Zayo a sum equal to the unpaid balance, if any, owed by Fusion to Zayo under the Fusion MSA from the Commencement Date through and including the Effective Date. The Administrative Claim Payment shall be in immediately available funds and shall be in full satisfaction of all unpaid amounts owed by Customer to Zayo under the Fusion MSAs during the Chapter 11 Cases. |
| **Rejection Damages Claim (Section 13)** | ▪ Nothing in the Settlement Agreement shall prejudice Zayo's rights to seek damages related to rejection of specified services under the Dark Fiber MSA, |

11

|  | including, but not limited to, the right to file a proof of claim for damages associated with such rejection (the "**Rejection Damages Claim**") within thirty (30) days after entry of an order approving the Settlement Agreement.  To the extent the Rejection Damages claim is allowed, Zayo agrees that the amount of the allowed Rejection Damages Claim shall in no circumstances exceed $5.0 million.<br><br>If the Rejection Damages Claim results in a recovery of any amounts, Zayo will provide Fusion with a credit of $.50 for every $1.00 of recovery, not to exceed an aggregate credit of $100,000.00.  This credit can be used by Fusion as a credit against any early termination liability billed by Zayo under the Fusion MSAs and will not have any other monetary value nor can Fusion use it to offset any other amounts due under the Fusion MSAs. |
|---|---|

## Relief Requested Should Be Granted

**A.    The Settlement Should Be Approved Pursuant to Bankruptcy Rule 9019**

18.    Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. R. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Id.*; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

19.    Compromises are "a normal part of the process of reorganization." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Compromises may be effected separately during the reorganization proceedings or in the body of

12

the plan itself. *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. at 758. The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). Such discretion may be exercised "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and in the best interest of the [debtor's] estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted). A bankruptcy court must apprise itself "of all relevant facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

20.     Courts typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iv) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; (v) the competence and experience of counsel who support the settlement; (vi) the relative benefits to be received by members of any affected class; (vii) the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and (viii) the debtor's informed judgment that the settlement is fair and reasonable. *See id.*; *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. at 50.

21.     While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

WEIL:\97175478\10\47019.0003

need not conduct a "mini-trial" of the merits of the claims being settled, *Cosoff v. Rodman (In re*

*W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), or conduct a full independent investigation.

*Drexel Burnham Lambert Group*, 134 B.R. at 496.    Moreover, in reviewing a global

compromise, a court need not be aware of or decide the particulars of each individual claim

resolved by the settlement or "assess the minutia of each and every claim"; rather, a court "need

only canvass the issues and see whether the settlement falls 'below the lowest point in the range

of reasonableness.'"    *Shugrue*, 165 B.R. at 123.    As one court explained in assessing a global

settlement of claims, "[t]he appropriate inquiry is whether the Second Settlement Agreement *in*

*its entirety* is appropriate for the . . . estate."    *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank &*

*Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600

(2d Cir. 1993) (emphasis added).    As demonstrated herein, the Settlement is fair and equitable,

falls above the lowest point in the range of reasonableness, and provides the best path forward in

these chapter 11 cases for the benefit of all creditors.

22.     First, entry into the Settlement Agreement represents an important

operational achievement for the Debtors.    The Debtors are currently parties to a host  of

agreements with Zayo that are being restructured under the Settlement Agreement to provide

more favorable terms to the Reorganized Debtors.    Under the Settlement Agreement, the Debtors

will continue to service over 900 existing customers, and will do so under preferable business

terms.    Further, the Debtors are also able to avoid the costs associated with potentially rejecting

the Zayo agreements in full (and losing the related customer revenue) or assuming the Zayo

agreements as-is on their current unfavorable terms.

23.     Relatedly, entry into the Settlement Agreement allows the Debtors to

satisfy all prepetition claims held by Zayo in relation to the Fusion MSAs by making a

14

$350,000.00 payment.   The Settlement Payment represents a substantial discount to the approximately $2.8 million that the Debtors estimate is owed under the Fusion MSAs as of the Commencement Date.  Without the Settlement Agreement, the Debtors would owe a materially higher prepetition claim on account of the Fusion MSAs, and could choose between only two options: (i) assume the Dark Fiber MSAs and associated service orders, maintain its present long-term commitments with Zayo, and pay the prepetition amount owed in full, or (ii) reject its agreements with Zayo, lose a crucial vendor relationship and lose the revenue derived from an additional 900  customers as well as incur incremental costs to find a replacement services provider.  Importantly, entry into the Settlement Agreement also maintains a critical relationship with a key vendor and provides significant future cost savings through the elimination of long-term commitments.   Under these circumstances, entering into a restructured agreement with Zayo and paying only a small portion of the prepetition outstanding amount serves the "paramount interests of creditors."

24.     In connection with its negotiation of the Settlement, the Debtors were also able to secure Zayo's agreement to limit its maximum allowable rejection damage claim against the Litigation Trust to no more than $5.0 million.   This cap on Zayo's potential rejection damages claim represents a substantial cost savings for the Debtors based on their preliminary reconciliation of potential amounts owed under the long-term Dark Fiber IRU's.

25.     The Settlement is also supported by key stakeholders in these chapter 11 cases.  Specifically, the Settlement is supported by the First Lien Lender Group—the ultimate owners of the Reorganized Debtors—who stand to benefit from the continued relationship with Zayo on a go-forward basis and the significant cost-savings achieved through rejecting the burdensome terms associated with the Dark Fiber Services.

WEIL:\97175478\10\47019.0003

26.    The Settlement is the product of good faith, arm's length negotiations among the Debtors and Zayo, and each of their respective advisors. The Debtors' business representatives and legal advisors participated in numerous conference calls with Zayo and its advisors over the course of the last two months to discuss the various issues associated with the proposed Settlement Agreement, including, among other things, (i) reconciling the amount of the Bankruptcy Claims; (ii) establishing the pricing and the terms under which the New Leased Dark Fiber Services and New Ethernet Services would be provided; and (iii) finalizing the extensive diligence with respect to the various schedules attached to the Settlement Agreement. At all times during such negotiations, the Parties were represented by skilled legal and financial advisors, which further supports approval of the Settlement.

27.    For the reasons stated herein, the Debtors believe that the Settlement falls well above the lowest point in the range of reasonableness and should be approved pursuant to Bankruptcy Rule 9019(a).

**B.    The Debtors Should Be Authorized to Reject the Dark Fiber Services and Associated Service Order Forms**

28.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 365(a). The purpose behind section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting Second Circuit decision); *see also In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization"); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11

16

reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

29.    The standard to be applied by courts in determining whether an executory contract or unexpired lease should be rejected is the "business judgment" test, which is premised upon the debtor's business judgment that rejection would be beneficial to its estate.  *See NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *see also In re Caribbean Petrol. Corp.*, 444 B.R. 263, 269-70 (Bankr. D. Del. 2010) (applying business judgment standard in evaluating the rejection of an executory contract, and holding that debtor's reliance on advisors' expert advice was sufficient to discharge that burden).

30.    The "business judgment" standard is not a strict standard and requires only a showing that either assumption or rejection of an executory contract will benefit the debtor's estate. *See In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 1996) ("To meet the business judgment test, the debtor in possession must 'establish that rejection will benefit the estate.'") (citation omitted); *see also In re Balco Equities, Inc.*, 323 B.R. 85, 99 (Bankr. S.D.N.Y. 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most part must only determine that the rejection will likely benefit the estate.") (citation omitted).  Further, under the business judgment standard, "[a] debtor's decision to reject…must be summarily affirmed unless it is the product of bad faith, or whim or caprice." *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (quotation omitted).

31.    The Debtors' rejection of the Dark Fiber Services and associated service orders as of the Effective Date is a critical component of the Settlement, and is an important step

17

forward as the Debtors emerge from bankruptcy with realizable cost-savings.  Upon rejecting the

Dark Fiber Services, the Debtors will enter into new service order forms with substantially

shorter terms and favorable pricing commitments, thus allowing the Debtors to shed substantial

costs.  Based on the foregoing, the Debtors have determined, in their reasonable business

judgment, that rejection of the Dark Fiber Services and associated service order forms is

appropriate under the circumstances.

## C.    Assumption and Assignment of BAA's Should Be Approved

32.    Section 365(b)(1) of the Bankruptcy Code establishes certain conditions

that must be satisfied prior to the assumption of an executory contract or unexpired lease:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the
> debtor, the trustee may not assume such contract or lease unless, at the time of
> assumption of such contract or lease, the trustee—
>
> > (A) cures, or provides adequate assurance that the trustee will promptly
> > cure, such default . . .
> >
> > (B) compensates, or provides adequate assurance that the trustee will
> > promptly compensate, a party other than the debtor to such contract or
> > lease, for any actual pecuniary loss to such party resulting from such
> > default; and
> >
> > (C) provides adequate assurance of future performance under such
> > contract or lease.

33.    As stated above, the standard to be applied by courts in determining

whether an executory contract should be assumed and assigned is the "business judgment" test,

which is premised upon the debtor's business judgment that assumption would be beneficial to

its estate.  *See In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (finding that a

debtor's decision to assume an executory contract or lease will stand so long as "a reasonable

business person would make a similar decision under similar circumstances").  The business

judgment test "requires only that the trustee [or debtor-in-possession] demonstrate that

18

[assumption or] rejection of the executory contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (first alteration in original).

34.    Section 365(f) of the Bankruptcy Code provides that a debtor may assign an executory contract only if adequate assurance of future performance by the assignee is provided, whether or not there has been a default under the contract. *See* 11 U.S.C. § 365(f)(2). Under section 365(f)(2), the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (explaining that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent).   Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Wills Motors, Inc.*, 133 B.R. 297, 298, 302 (Bankr. S.D.N.Y. 1991) (noting debtor had provided adequate assurance of future performance where assignee was financially and professionally competent to perform obligations under sales and franchise agreements); *In re Bygraph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; the chief determinant of adequate assurance is whether rent will be paid); *In re Bronx-Westchester Mack Corp.*, 20 B.R. 139, 143 (Bankr. S.D.N.Y. 1982) (concluding that assignee's superior financial status and satisfactory ability to continue performance, together

19

with its assumption of the debtor's ongoing obligations, constituted adequate assurance of future performance).

35. Assumption and assignment of the BAA's are well within the Debtors' exercise of their sound business judgment. The assignment of the BAA's to Zayo is an essential component of the Settlement as such assignment will allow Zayo to access and service the Lateral Equipment in connection with providing the New Leased Dark Fiber Services and the New Ethernet Services. Without the BAA's, Zayo would be precluded from accessing or repairing the Lateral Equipment, which would result in substantial disruption to the services provided to approximately 1,000 end-user customers. Moreover, the Debtors believe that there is adequate assurance of future performance under the BAA's in light of the substantial financial resources of Zayo, and the critical importance of maintaining the BAA's in the context of the Settlement as a whole. Zayo is a large, publicly traded, multi-national provider of communications and bandwidth infrastructure. Further, the obligations under the BAA's are de minimis, representing an aggregate monthly expense of approximately $53,000. This relatively small commitment is immaterial for a company as large as Zayo, which currently reports nearly $10 billion in assets and $638 million in quarterly revenue.[9] Additionally, Zayo has informed the Debtors that it has the financial ability to perform under the BAA's. As such, the counterparties to the BAA's have received "adequate assurance of future performance" within the meaning of section 365(f) of the Bankruptcy Code.

36. Based on the foregoing, the Debtors have determined, in their reasonable business judgment, that assumption and assignment of the BAA's to Zayo is appropriate under the circumstances.

---

[9] *See* Quarterly Report (Form 10-Q) of Zayo Group, Inc. at 1-2 (November 6, 2019).

WEIL:\97175478\10\47019.0003

**D.      Waiver of Bankruptcy Rule 6006(f)(6) Is Warranted**

37.      Under Bankruptcy Rule 6006(e) and subject to Bankruptcy Rule 6006(f), a debtor may join requests for authority to assume multiple executory contracts in one motion. Bankruptcy Rule 6006(f) sets forth six (6) procedural requirements that motions to assume or reject multiple executory contracts must satisfy, including the requirement that the number of contracts included in any such motion "be limited to no more than 100 executory contracts or unexpired leases." Fed. R. Bankr. P. 6006(f)(6).

38.      Courts may waive the requirements of Bankruptcy Rule 6006(f)(6) for cause. *See, e.g., Old Carco LLC*, 406 B.R. at 207–10 ("Specifically, the 2007 Advisory Committee Notes to Rule 6006 states that '[a]n omnibus motion to assume, assign, or reject multiple executory contracts and unexpired leases must comply with the procedural requirements set forth in subdivision (f) of the rule, unless the court orders otherwise . . . .'"). Bankruptcy Rule 6006(f)(6) is intended to ensure that lease or contract counterparties can easily locate their information in a debtor's omnibus motion. *See* 10 Collier on Bankruptcy ¶ 6006.05 (16th ed.).

39.      The Debtors respectfully submit that cause exists here to waive the requirements of Bankruptcy Rule 6006(f)(6). Here, the assumption and assignment of the BAA's is being effectuated pursuant to a settlement comprised of several interdependent parts, and the proposed assumption and assignment of all of the BAA's is an essential component of the Settlement as a whole. Seeking to reject the hundreds of BAA's in multiple motions in strict compliance with Bankruptcy Rule 6006(f)(6) would create confusion among the interested parties and could delay approval of the Settlement Agreement. The Debtors intend to serve this Motion, including the Settlement Agreement annexed hereto as Exhibit B, upon each of the counterparties to the BAA's in accordance with the applicable procedural requirements of

21

Bankruptcy Rule 6006(f)(1)-(5).  In view of the foregoing, the Debtors respectfully request that the Court waive the requirements of Bankruptcy Rule 6006(f)(6).

### E.    The Transfer of Lateral Equipment and Entry Into New Order Forms Should be Approved Pursuant to Section 363

40.    Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  If a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a sound exercise of the debtor's reasonable business judgment, such use should be approved.  *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring an "articulated business justification"); *see also In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("A debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *In re MF Glob. Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference.").

41.    Once a debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Moreover, there is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. Of Subordinated*

22

*Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y.

1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

   42. The Debtors' decision to transfer title to the Lateral Equipment to Zayo

reflects a sound exercise of their business judgment.  As a substantive matter, it should be noted

that the Lateral Equipment, which consists primarily of BTI 7060 chassis with PVX 12/2 cards

(and BTI 718 chassis in the Houston market), are highly specialized assets, and, therefore, Zayo

is the natural purchaser for such assets.  The Debtors believe that the possibility of a potential

purchaser for the Lateral Equipment emerging in the near future is remote—let alone a potential

purchaser that could provide the Debtors with the holistic solution arising from the Settlement.

Without the Lateral Equipment, Zayo would be unable to seamlessly provide the New Leased

Dark Fiber Services and the New Ethernet Services at the Locations.  As such, the transfer of the

Lateral Equipment to Zayo is a critical component of the Settlement.

   43. The Debtors' proposed execution of new service order forms for the New

Leased Dark Fiber Services and the New Ethernet Services also reflects a sound exercise of their

business judgment.  As noted above, the execution of these new service order forms, in

conjunction with the requested rejection of the Dark Fiber Services, will effectively replace the

Debtors' existing twenty (20)-year commitments with shorter-term service agreements.  By

entering into these new service orders, the Debtors will reduce long-term operating costs

associated with the Dark Fiber Services while maintaining their ability to provide services to

end-user customers at the various Locations and maintain an important business relationship with

Zayo.  Further, the Settlement provides that both the New Leased Dark Fiber Services and the

New Ethernet Services will come into full force and effect automatically upon the Effective

Date, ensuring that end-user customers, other than those listed in <u>Schedule 8</u> to the Settlement

23

Agreement who have been advised that their services are being discontinued, will not experience an interruption in services. Accordingly, entry into the service order forms for the New Leased Dark Fiber Services and the New Ethernet Services as provided for in Section 5 of the Settlement Agreement represents a sound exercise of the Debtors' business judgment.

**F.      The Mutual Releases Should be Approved**

44.     As stated, Bankruptcy Rule 9019 allows the Court to approve a compromise or settlement if it falls above the lowest point in the range of reasonableness. *See* Fed. R. Bankr. Proc. 9019. The Mutual Releases should be approved pursuant to Bankruptcy Rule 9019 because they are supported by valid consideration and are entirely consensual. In order to facilitate the Settlement, the Debtors have agreed to assume and assign the BAA's to Zayo and transfer the Lateral Equipment as contemplated in the Settlement Agreement. Moreover, Zayo has agreed to accept a significantly reduced payment in full satisfaction of the Bankruptcy Claims, which results in the preservation of the Debtors' resources, and have also agreed to limit its maximum allowable rejection damages claim against the Litigation Trust to no more than $5.0 million, benefits the Debtors' general unsecured creditors by capping a substantial claim that would dilute potential recoveries. The Mutual Releases are entirely consensual and are part of the bargained-for consideration between the parties necessary to facilitate the Settlement. For the reasons herein, the Mutual Releases should be approved.

<u>**Request for Waiver of Bankruptcy Rule 6004(h) and 6006(d)**</u>

45.     Bankruptcy Rule 6004(h) provides that "an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the

24

order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d). Given the nature of the relief requested herein and the importance of the Settlement to a speedy and efficient resolution of these chapter 11 cases, the Debtors respectfully request that the Court waive the 14-day stay period otherwise fixed by Bankruptcy Rules 6004(h) and 6006(d) to allow the Debtors to consummate the Settlement contemplated by the Motion. The relief requested herein is essential to allow the Debtors to immediately consummate the Settlement and avoid any potential delay in emerging from chapter 11. Accordingly, the Debtors believe that, to the extent Bankruptcy Rules 6004(h) and 6006(d) apply, ample cause exists to justify a waiver of the 14-day stays provided for therein.

## Notice

46.    Notice of this Motion will be provided in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* (ECF No. 120) (the "**Case Management Order**"). In addition, the Debtors will also mail an assumption and assignment notice substantially in the form attached hereto as **Exhibit C** to the counterparties to the BAA's. The Debtors will also mail each of the Noticed End-User Customers a notice of rejection substantially in the form attached hereto as **Exhibit D**. The Debtors respectfully submit that no further notice is required.

47.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

25

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 25, 2019
        New York, New York

                                    /s/ Sunny Singh
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York  10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:   (212) 310-8007
                                    Gary T. Holtzer
                                    Sunny Singh

                                    *Attorneys for Debtors*
                                    *and Debtors in Possession*

26